**STATE OF RHODE ISLAND**      **SUPERIOR COURT**
**KENT, SC**

_____

|  |  |
|---|---|
| **REVITY EPC, LLC;** | : |
| **SOLAR ENERGY EPC, LLC,** | : |
|  | : |
|   *Plaintiffs,* | : |
|  | : |
|   **v.** | :   **C.A. No. KC-** 2021-0144 |
|  | : |
| **COLONY INSURANCE COMPANY,** | : |
|  | : |
|   *Defendant.* | : |

_____

## COMPLAINT

  Plaintiffs, Revity EPC, LLC ("Revity EPC") and Solar Energy EPC, LLC ("Solar EPC") hereby file this Complaint against Defendant, Colony Insurance Company ("CIC" or "Defendant") and allege as follows:

## INTRODUCTION

  1.  This action for declaratory judgment, breach of contract and violation of Rhode Island's bad faith insurance practices statute arises out of Plaintiffs' claim for insurance coverage under a commercial general liability policy sold to Plaintiffs by CIC.

  2.  Commercial general liability policies cover costs and damages incurred by a policyholder as a result of property damage and bodily injury.

  3.  Revity EPC is in the engineering, procurement and construction business and, through 2019 and 2020, served as the general contractor to Southern Sky Renewable Energy RI-Alton Rd-Hopkinton, LLC ("Southern Sky") to provide design, engineering, procurement, installation and related services for an approximately 17.55 MWdc (megawatt direct current) fixed

tilt, ground mounted solar photovoltaic electric generation facility located in Hopkinton, Rhode Island.

4.     Prior to Revity EPC, in 2019, Solar EPC served as the general contractor for Southern Sky to provide those same design, engineering, procurement, installation and related services for the Hopkinton facility until Solar EPC assigned its duties and responsibilities to Revity EPC.

5.     During the relevant period of time, the Plaintiffs maintained a General Liability Bodily Injury and Property Damage Policy with CIC which provides coverage for sums that the insureds become legally obligated to pay as damages due to "bodily injury or property damage that takes place during the policy period and is caused by an occurrence in the coverage territory." (Emphasis omitted).

6.     An electrical subcontractor, Mass. Electric Construction Co. ("MECC"), was engaged by the Plaintiffs to, *inter alia*, construct, install and test the solar panels and supporting equipment to be used in Southern Sky's solar photovoltaic electric generation facility.

7.     Following MECC's work, Plaintiffs discovered that a significant portion of the panels had sustained backside scratches causing damage to the solar cells, lower panel output and hot spots, significant safety hazard, and risk serious long-term issues like ground faults. The damage is estimated to cost at least $3.1 million to repair, not including third party fees in connection with Plaintiffs' investigation of the damage.

8.     On September 21, 2020, Plaintiffs, through their insurance brokers, filed a claim with CIC for coverage under its commercial general liability policy with CIC. In response, CIC has issued two reservation of rights letters citing numerous exclusions that it believes may apply to bar coverage for the claim.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 3 of 136 PageID #: 8

## PARTIES AND JURISDICTION

9.      Revity EPC is a limited liability company organized under the laws of Rhode Island with its principal place of business located at 117 Metro Center Blvd., Suite 1007 in Warwick, Rhode Island.

10.     Solar EPC is a limited liability company organized under the laws of Rhode Island with its principal place of business located at 117 Metro Center Blvd., Suite 1007 in Warwick, Rhode Island.

11.     Colony Insurance Company is a corporation organized under the laws of Virginia with its principal place of business at 8720 Stony Point Parkway, Suite 400 in Richmond, Virginia.

12.     This Court has jurisdiction over this action because Revity EPC is incorporated under the laws of Rhode Island, with its principal place of business in Rhode Island, and because, pursuant to Rhode Island General Laws § 8-2-14, the amount in controversy exceeds the sum of ten thousand dollars ($10,000).

13.     Venue is proper in this Court, pursuant to Rhode Island General Laws § 9-4-4, because Plaintiffs are located in Kent County.

14.     All conditions precedent to coverage and recovery by Plaintiffs have been performed and/or occurred.

## FACTS

15.     Southern Sky is a Rhode Island limited liability company in the business of owning and operating renewable energy (more specifically, solar energy) generation facilities located in Rhode Island. To that end, Southern Sky, in May of 2019, engaged Solar EPC to serve as a general contractor to provide design, engineering, procurement, installation and related services for the construction of an approximately 17.55 MWdc fixed tilt, ground mounted solar photovoltaic

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 4 of 136 PageID #: 9

electric generation facility on a parcel of land on Alton Bradford Road in Hopkinton, Rhode Island (the "Project Site").

16.     On March 1, 2019, Solar EPC and Southern Sky executed the Solar System Engineering, Procurement and Construction Agreement ("EPC Agreement").

17.     On May 29, 2019, Solar EPC executed a Purchase Order for 43,650 solar panel modules to be manufactured and delivered to the Project Site by LG Electronics USA. The Purchase Order Sum was $9,192,690.

18.     Under the EPC Agreement, ownership of and title to the solar panels transferred immediately to Southern Sky.

19.     On June 12, 2019, Solar Energy executed a Solar System Electrical Installation Subcontract with MECC pursuant to which MECC was obligated to perform, *inter alia*, "the construction, installation and testing" of the solar panel modules at the Project Site as well as the supporting equipment to be used in Southern Sky's solar photovoltaic electric generation facility.

20.     Delivery of the solar panel modules to the Project Site began in the late summer of 2019 and MECC completed its installation in December of 2019.

21.     On November 12, 2019, Revity EPC and Southern Sky executed an Amended and Restated Solar System Engineering, Procurement and Construction Agreement ("Amended EPC Agreement") pursuant to which Revity EPC took over as the general contractor.

22.     The Amended EPC Agreement contained the following indemnification provision:

**<u>Contractor's Indemnity</u>**. Contractor shall fully indemnify, save, hold harmless and defend Owner, the Financing Parties and Landlord from and against any and all costs, claims, and expenses ("<u>Indemnity Claims</u>") incurred by Owner, the Financing Parties, or Landlord in connection with or arising from any claim by a Third Party for physical damage to or physical destruction of property, or death of or bodily injury to any Person, but only to the extent directly caused by the negligence or willful misconduct of Contractor or its agents, Subcontractors, or employees or others under Contractor's control; <u>provided</u>, <u>however</u>, that

4

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 5 of 136 PageID #: 10

Contractor's obligations shall not extend to Indemnity Claims, demands, lawsuits or actions for liability to the extent attributable to the negligence or willful misconduct of Owner, the Financing Parties or Landlord. Notwithstanding the foregoing, the maximum aggregate liability of Contractor for the payment of claims for indemnification made pursuant to this <u>Section 14.1</u> shall be limited to fifty percent (50%) of the Contract Price.

Amended EPC Agreement at § 14.1 (emphases in original).

23.      On November 12, 2019, Revity EPC and Solar EPC executed an Assignment and Assumption Agreement which contained the following indemnification provision:

Assignee shall indemnify, defend, and hold Assignor harmless from any and all costs, claims, demands, liabilities, damages, and actions arising from or related to the EPC Agreement, or the failure of Assignee to comply with the terms and conditions thereof, from the Effective Date and at any time thereafter. Assignor shall indemnify, defend, and hold Assignee harmless from any and all costs, claims, demands, liabilities, and actions arising from or related to the EPC Agreement, or the failure of Assignor to comply with the terms and conditions thereof, prior to the Effective Date.

Assignment and Assumption Agreement at § 2.4.

24.      In late January of 2020, representatives of Southern Sky discovered issues with the solar module panels to include punctures and scratching in the backside of the panels appears as follows:



25.      On January 23, 2020, Acuity Power Group, Inc. ("Acuity") headquartered in Lawrence, Massachusetts, delivered an Issue Log Report, observing that "PV [photovoltaic]

modules found exhibiting a 'snail trail' type phenomenon on front side; and with some modules this correlated with significant scratch on backsheet" which "seems to indicate cracked or broken cells from backsheet scratch * * *."

26.     In February of 2020, Southern Sky gave notice to the panel manufacturer (LG Electronics USA) of the panel damages and LG Electronics USA began investigating the damage.

27.     On July 7, 2020, LG Electronics USA issued a 44-page Report which concluded that the majority of the damage had occurred during the installation process.

28.     LG's Report explained that the microcracks occurred in modules with different pallet identification numbers and different production dates which LG Electronics USA opined indicated that the microcracks were not caused by an error occurring during any particular production run but rather the installation process.

29.     Acuity proceeded through a more exhaustive analysis of the panel field and, on September 3, 2020, issued a 108 page report ("Acuity Report") which concluded that 23.1% of the sampled modules had backside scratches which created microcracks on the panels and 14% had backside scratches that had resulted in cracked solar cells and posed significant risk of panel degradation and safety hazard.

30.     Acuity sampled 962 modules from each array in the field (A1, A2, B1, B2, C1 and C2) to determine the quantity and classification of the modules damaged by backside scratches and punctures and "to provide a rough frequency of occurrence and severity" of the damage.

31.     Acuity also analyzed several batches of the spare modules on Project Site that were not taken out of the box or handled. They discovered no scratches on any of those modules.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 7 of 136 PageID #: 12

32.     Based on Acuity's conclusion that 23.1% of the panels studied have structural maladies, and extrapolating that figure across the 43,342 panels installed by MECC at the Project Site, the number of damaged panels may be approximately 10,012 panels.

33.     Each panel costs $212.19 with labor costs per panel estimated at $100 and so the costs associated with replacing the damaged panels approximately $3,125,646.28.

34.     On December 29, 2020, Acuity issued a supplemental correspondence regarding the implications of the solar panel module backsheet scratches for solar system safety and performance.

35.     In that correspondence, Acuity stated that "PV module backsheet scratches and cracks, as well as any associated PV cell cracks where impacts may have occurred, have the potential to cause both safety and energy performance issues, and the likelihood of experiencing these potential issues may increase over time."

36.     Acuity continued that "[s]ignificant penetration through the backsheet from a scratch may compromise the insulating effects of the backsheet, and allow electrical leakage to the module frame which could result in a safety hazard, particularly in wet conditions which occur frequently in New England" and "moisture ingress through compromised backsheets may also likely allow vapor inside the PV module, which can accumulate and cause leakage current to reach the module frame."

37.     Acuity further opined that "[i]n addition to safety hazards, inverter fault detection may also trip, causing downtime and energy production loss" and "[m]oisture ingress inside the PV module may have a corrosive effect in the metallic components within the module, such as the solder on the silver busbars and other metallic components."

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 8 of 136 PageID #: 13

38.     Southern Sky issued a formal, written demand notice to Revity EPC citing Revity EPC's contractual and common law indemnity obligations on January 25, 2021.

39.     Revity EPC issued a formal, written demand notice to Solar EPC citing Solar EPC's contractual and common law indemnity obligations on January 25, 2021.

40.     CIC issued Energy EPC, LLC the EnviroPACE Environmental Pollution & Casualty Exposures Policy (Policy No. PACE306698) with an effective period from February 1, 2019 to February 1, 2020 (the "Policy" and attached hereto as **Exhibit A**).

41.     Solar EPC and Revity EPC are listed as Named Insureds on the Policy.

42.     Coverage Part 1A of the Policy (titled "General Liability Bodily Injury and Property Damage") provides that CIC "will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** that takes place during the **policy period** and is caused by an occurrence in the **coverage territory**." (Emphases in original).

43.     With respect to Coverage Part 1, the Policy defines "Property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured" and defines "coverage territory" to include the United States of America.

44.     Plaintiffs, through their insurance broker, made a claim on the Policy on September 21, 2020 by transmitting written notice to CIC representatives.

45.     On October 29, 2020, Jesse Russell, CIC's senior technical claims specialist, transmitted a correspondence to Plaintiffs stating that CIC was reserving its rights under the Policy pending further investigation (the "Russell Correspondence" and attached hereto as **Exhibit B**).

46.     In his correspondence, Mr. Russell cited a number of exclusions that CIC believed

may apply to exclude coverage under the Policy for the damage to the solar panel modules.

47.     More specifically, Mr. Russell cited Exclusions (g), (h), (i) and (n).

48.     Exclusions (g), (h), (i), and (n) to Coverage Part 1 provide as follows:

The following exclusions apply to all Part 1 Coverages except where indicated. Part
1 Coverages do not apply to:

* * *

**g. Damage to Property**
    Property damage or environmental damage to:

(1) Property you own, rent, occupy, including any costs or expenses incurred
    by you, or any other person, organization or entity, for repair,
    replacement, enhancement, restoration or maintenance of such property
    for any reason, including prevention of injury to a person or damage to
    another's property;
(2) Premises you sell, give away or abandon, if the **property damage** or
    **environmental damage** arises out of any part of those premises;
(3) Property loaned to you;
(4) Personal property in the care, custody or control of the insured;
(5) That particular part of any real property on which you or any contractors
    or subcontractors, whether working directly or indirectly on your behalf,
    are performing operations, if the **property damage** or **environmental
    damage** arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or
    replaced because **your work** was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this Exclusions do not apply to **property damage**
(other than damage by fire) to premises, including the contents of such premises,
rented to you for a period of 7 or fewer consecutive days. A separate limit of
insurance applies to Damage to Premises Rented to You as described in section
XXI. LIMITS OF LIABILITY AND DEDUCTIBLE.

Paragraph (2) of this Exclusion does not apply if the premises are **your work** and
were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this Exclusion do not apply to liability assumed
under a sidetrack agreement.

Paragraph (6) of this Exclusion does not apply to **property damage** or
**environmental damage** included in the **products-completed operations hazard.**

9

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

CV-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 10 of 136 PageID #: 15

**h. Damage to Your Product**
    **Property damage** or **environmental damage** to **your product**, arising or any part of it.

**i. Damage to Your Work**
    **Property damage** or **environmental damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This Exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

n. Internal Expenses
    Any costs, charges or expenses incurred by any insured for goods supplied or services performed by any **temporary workers, voluntary workers**, staff or salaried **employees** of the insured, its parent, subsidiary or affiliate.

**Exhibit A** (EPACE001-0415) at pp. 12-17 (emphases in original).

49.    The Russell Correspondence stated that "CIC must reserve its right to restrict or disclaim coverage to the extent that the facts do not satisfy the Insuring Agreement that 'property damage' was caused by an 'occurrence'" and "[t]o the extent that the Energy EPC was performing operations on the damaged solar panels at issue, CIC must reserve its rights to disclaim coverage for such costs." **Exhibit B** at p. 4.

50.    The Russell Correspondence continued that "[t]o the extent the damaged solar panels are determined to be the Insured's product, CIC must reserve its rights to disclaim coverage for such costs" and CIC "reserve[d] the right to file a declaratory relief action to determine its rights and duties under the Policy." **Exhibit B** at p. 5.

51.    On December 1, 2020, Plaintiffs' representatives and CIC's representatives conducted a conference call to discuss the status of the claim investigation. During this call, CIC suggested that CIC would continue its investigation to determine the extent of coverage.

52.     On December 23, 2020, Attorney William L. Boesch of Sugarman, Rogers, Barshak & Cohen, P.C. transmitted a correspondence, on behalf of CIC, to the Plaintiffs "to provide an updated explanation of Colony's assessment of the matter, and to request that [Plaintiffs] provide additional information needed to complete the coverage analysis" (the "Sugarman Correspondence" and attached hereto as **Exhibit C**).

53.     The Sugarman Correspondence stated that "the policy's coverage would apply to a claim for damage to the solar panels only if the damage was caused by an 'occurrence'—that is, an accident" and that "[i]t is widely recognized in insurance law that 'a claim for faulty workmanship . . . is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the *fortuity* required to constitute an accident." **Exhibit C** at p. 4 (emphasis supplied).

54.     Attorney Boesch continued that "the policy makes clear that it does not apply to property damage 'for which the insured is obligated to pay damages by reason of the obligation to perform under, or the assumption of liability in, a contract or agreement'" and "[i]n the event Southern Sky Alton Road were to assert a claim that an insured was liable under the EPC agreement for the Alton Bradford Road facility for damage to the solar panels, there would be no coverage." **Exhibit C** at p. 4.

55.     The Sugarman Correspondence further stated that "[t]he policy also makes clear that it affords no coverage for property damage to an insured's own 'product.'—including any product that the insured 'distributed,' 'sold,' or 'handled'" and "[t]o the extent an insured was involved in procurement of the solar panels for the Alton Bradford Road project, this exclusion could bar coverage." **Exhibit C** at p. 5.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-CV-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 12 of 136 PageID #: 17

56.    The Sugarman Correspondence also emphasized that "[p]rocurement and installation of the solar panels on the Alton Bradford Road project appears to have been part of an insured's 'work' within the meaning of the policy, which defines 'your work' as 'works or operations performed by you or on your behalf'" and "[t]hus, any claim involving an alleged deficiency in the handling and/or installation of the panels would appear likely to fall outside the policy's coverage." **Exhibit C** at p. 5.

57.    Plaintiffs responded to the Russell Correspondence and the Sugarman Correspondence on January 28, 2021 refuting the exclusions cited in each, providing documents as requested by the Sugarman Correspondence, and requesting confirmation of coverage within fourteen (14) days of the correspondence. (January 28, 2021 correspondence attached hereto as **Exhibit D**).

58.    Plaintiffs' January 28 letter advised CIC that there are "safety hazards posed by the backside scratches include[ing] an increased risk of personal injury to personnel working at the Property" and that the Plaintiffs "have advised all such personnel of the issue and are undertaking a safety taping regime (as recommended by the engineers) to limit any risk; however, Colony's continued refusal to replace these panels increases the risk of a serious personal injury at the Property."

59.    The Plaintiffs' letter explained that "Coverage 1A of the Policy entitled 'General Liability Bodily Injury and Property Damage' provides coverage for losses for which the insured becomes legally obligated to pay in connection with property damage caused by an occurrence" and that third party analysis concluded that "a significant portion of the panels installed at the Property in 2019 have microcracks resulting from backside scratches caused during the installation of the panels by MECC."

60.     The Plaintiffs further stated that the "damage to the solar panels is property damage that occurred on premises that the insureds do not own or rent and, moreover, Revity EPC's work had been completed when the products were damaged during MEC's installation" and further, the "solar panels are not products that were manufactured, sold, handled, distributed, altered or repaired by the insureds or 'others trading in' the insureds' name" and thus the exclusions cited in the Russell Correspondence and the Sugarman Correspondence do not apply.

61.     CIC has not confirmed coverage as requested.

## CAUSES OF ACTION

## COUNT I
## DECLARATORY JUDGMENT

62.     Revity EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Count, as if fully set forth herein.

63.     Pursuant to Rule 57 of the Rhode Island Superior Court Rules of Civil Procedure and the Rhode Island Uniform Declaratory Judgment Act (Rhode Island General Laws § 9-30-1, *et seq.*), a person with an interest in a written contract whose rights, status or other legal relations are affected may seek relief from the Superior Court to have determined any question of construction or validity arising under the contract and obtain a declaration of rights, status and other legal relations thereunder.

64.     An actual and justiciable controversy has arisen between Revity EPC and CIC regarding the availability of coverage under the Policy for Revity EPC's claim.

65.     Accordingly, Revity EPC seeks a declaration from the Court that:

a.   Revity EPC is an Insured under the Policy;

b.   The various coverage provisions identified herein are triggered by Revity EPC's claim;

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 14 of 136 PageID #: 19

    c.    No Policy exclusion applies to bar or limit coverage for Revity EPC's claim; and

    d.    The Policy covers Revity EPC's claim.

## COUNT II
## BREACH OF CONTRACT

66.    Revity EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Court, as if fully set forth herein.

67.    The Policy is a valid and enforceable contract between Revity EPC and CIC.

68.    In the Policy, CIC agreed to cover sums that Revity EPC becomes legally obligated to pay as damages because of bodily injury or property damage that takes place during the policy period and is caused by an occurrence within the coverage territory.

69.    Southern Sky has notified Revity EPC that Revity EPC is legally obligated to pay damages as a result of backside scratches to the solar panels at the Project Site.

70.    No exclusions apply to bar coverage.

71.    Revity EPC complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

72.    Nonetheless, CIC has unjustifiably refused to indemnify Revity EPC for Revity EPC's legal obligation in connection with damages to the solar panels at the Project Site.

73.    Revity EPC has suffered and continues to suffer damages as a result of CIC's breach of the Policy.

74.    Revity EPC is entitled to damages as a result of CIC's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 15 of 136 PageID #: 20

## COUNT III
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

75.     Revity EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Count, as if fully set forth herein.

76.     CIC has denied Revity EPC's claim for coverage under the Policy relating the losses associated with the damage to the solar panel modules.

77.     CIC failed to conduct a reasonable investigation of Revity EPC's claim under the Policy and, therefore, CIC's basis for its denial is unreasonable.

78.     CIC knew or was actually or implicitly aware of the lack of any reasonable basis to deny coverage.

79.     CIC acted with reckless disregard as to the unreasonableness of its denial.

80.     CIC breached its duty of good faith and fair dealing by failing to reasonably investigate Revity EPC's claim and provide coverage.

81.     CIC's denial of coverage constitutes bad faith.

82.     As a direct and proximate result of CIC's bad faith, Revity EPC has suffered and continues to suffer damages.

83.     Revity EPC is entitled to an award of damages as a result of CIC's bad faith in an amount to be determined at trial, including attorney's fees, pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## COUNT IV
## DECLARATORY JUDGMENT

84.     As an alternative to Count I, Solar EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Count, as if fully set forth herein.

85.     Pursuant to Rule 57 of the Rhode Island Superior Court Rules of Civil Procedure and the Rhode Island Uniform Declaratory Judgment Act (Rhode Island General Laws § 9-30-1, *et seq.*), a person with an interest in a written contract whose rights, status or other legal relations are affected may seek relief from the Superior Court to have determined any question of construction or validity arising under the contract and obtain a declaration of rights, status and other legal relations thereunder.

86.     An actual and justiciable controversy has arisen between Solar EPC and CIC regarding the availability of coverage under the Policy for Solar EPC's claim.

87.     Accordingly, as an alternative to Count I, Solar EPC seeks a declaration from the Court that:

    a.  Solar EPC is an Insured under the Policy;

    b.  The various coverage provisions identified herein are triggered by Solar EPC's claim;

    c.  No Policy exclusion applies to bar or limit coverage for Solar EPC's claim; and

    d.  The Policy covers Solar EPC's claim.

## COUNT V
## BREACH OF CONTRACT

88.     As an alternative to Count II, Solar EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Court, as if fully set forth herein.

89.     The Policy is a valid and enforceable contract between Solar EPC and CIC.

90.     In the Policy, CIC agreed to cover sums that Solar EPC becomes legally obligated to pay as damages because of bodily injury or property damage that takes place during the policy period and is caused by an occurrence in the coverage territory.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-CV-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 17 of 136 PageID #: 22

91.     Southern Sky has notified Solar EPC that it is legally obligated to pay damages as a result of backside scratches to the solar panels at the Project Site.

92.     No exclusions apply to bar coverage.

93.     Solar EPC complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

94.     Nonetheless, CIC has unjustifiably refused to indemnify Solar EPC for its legal obligation in connection to damages to the solar panels at the Project Site.

95.     Solar EPC has suffered and continues to suffer damages as a result of CIC's breach of the Policy.

96.     As an alternative to Count II, Solar EPC is entitled to damages as a result of CIC's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

**COUNT VI**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

97.     As an alternative to Count III, Solar EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Count, as if fully set forth herein.

98.     CIC has denied Solar EPC's claim for coverage under the Policy relating the losses associated with the damage to the solar panel modules.

99.     CIC failed to conduct a reasonable investigation of Solar EPC's claim under the Policy and, therefore, CIC's basis for its denial is unreasonable.

100.    CIC knew or was actually or implicitly aware of the lack of any reasonable basis to deny coverage.

101.    CIC acted with reckless disregard as to the unreasonableness of its denial.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 18 of 136 PageID #: 23

102.    CIC breached its duty of good faith and fair dealing by failing to reasonably investigate Revity's claim and provide coverage.

103.    CIC's denial of coverage constitutes bad faith.

104.    As a direct and proximate result of CIC's bad faith, Solar EPC has suffered and continues to suffer damages.

105.    As an alternative to Count III, Solar EPC is entitled to an award of damages as a result of CIC's bad faith in an amount to be determined at trial, including attorney's fees, pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## COUNT VII
## R.I. GEN. LAWS § 9-1-33

106.    Plaintiffs repeat and re-allege each and every allegation in this Complaint and incorporate each allegation in this Court, as if fully set forth herein.

107.    The acts and omissions of CIC as complained in this Complaint, and also yet to be discovered in this matter, constitute bad faith under R.I. Gen. Laws § 9-1-33.

108.    Plaintiffs have sustained damages due to the legal obligations to pay for losses associated with the backside scratches for which CIC has failed to comply with its contractual obligation and has failed to compensate Plaintiffs for their claims.

109.    Plaintiffs are entitled to compensatory damages and punitive damages as a result of CIC's bad faith.

110.    Plaintiffs have been required to retain the services of attorneys to commence this action and are further entitled to attorneys' fees and costs.

## REQUESTS FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against CIC as follows:

18

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 19 of 136 PageID #: 24

1.      A declaration from the Court that:

    a.  The various coverage provisions identified herein are triggered by Plaintiffs' claim;

    b.  No Policy exclusion applies to bar or limit coverage for Plaintiffs' claim; and

    c.  The Policy covers Plaintiffs' claim.

2.      An award for special and consequential damages against CIC in an amount to be proved at trial, in excess of $10,000;

3.      An award of pre- and post-judgment interest, as provided by law;

4.      An award of attorneys' fees and costs of suit incurred; and

5.      For other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

Respectfully Submitted,

**REVITY EPC, LLC; SOLAR EPC, LLC**

*/s/ William M. Dolan III*
William M. Dolan III (#4524)
Nicholas L. Nybo (#9038)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Tel: (401) 274-7200
Fax: (401) 751-0604
wdolan@apslaw.com
nnybo@apslaw.com

19

1051315.v1

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 20 of 136 PageID #: 25

# **EXHIBIT A**

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.





Environmental Pollution & Casualty Exposures

## POLICY DECLARATIONS

**COLONY INSURANCE COMPANY**
**PO BOX 85122**
**RICHMOND, VA 23285**

**POLICY NUMBER:**
PACE306698

**1.   NAMED INSURED(S) AND MAILING ADDRESS:**

ENERGY EPC, LLC
117 METRO CENTER BLVD #2007
WARWICK, RI 02886

**PRODUCER:**  18003

CRC INSURANCE SERVICES, INC. - ME,
SCARBOROUGH
25 SPRING STREET, SUITE 100
SCARBOROUGH, ME 04074

**2.   POLICY PERIOD:**      Inception Date:   02/01/2020            Expiration Date:   02/01/2021

At 12:01 A.M. Standard Time at the mailing address shown above.

**3.   COVERAGES, COVERAGE LIMITS, DEDUCTIBLES AND RETROACTIVE DATES:**

In return for your payment of the premium, and in reliance upon the statements and representations in the insured(s) application(s) for this insurance, we agree with you to provide insurance subject to the terms of the policy.

This policy consists of the following coverage parts for which a limit is indicated.  If no limit is shown and the words "Not Purchased" appear for a Coverage, then that Coverage does not apply.

Other limits of liability may be indicated on attached coverage forms or endorsements.  Coverages may have separate deductibles.  Please review any applicable endorsements for specific deductible application.

| Part 1 Coverages | |
|---|---|
| **General Aggregate Limit** | $2,000,000 |
| **General Aggregate Cap** | Unlimited |
| **Products-Completed Operations Aggregate Limit** | $2,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Coverage 1A - General Liability Bodily Injury and Property Damage......................................... | Included |
| Coverage 1D - Products Pollution Liability................................................................. | Not Purchased |
| Coverage 1E- Hostile Fire and Building Equipment..................................................... | Included |
| Coverage 1B - Personal and Advertising Injury Limit................................................... | $1,000,000 |
| Coverage 1C - Medical Expense Limit - any one person........................................... | $5,000 |
| Coverage 1F - Employee Benefits Administration Limit - any one employee............................ | $1,000,000 |
| Coverage 1G - Crisis Management Costs Limit............................................................ | $25,000 |
| Damage to Premises Rented to You Limit - any one premises.................................... | $300,000 |

|  |  |  |
|---|---|---|
| Deductible - Part 1 (Other than Coverages 1D, 1F): | $5,000 | Each Occurrence |
| Deductible - Coverage Part 1D: | Not Purchased | Each Pollution Condition |
| Deductible - Coverage Part 1F: | $1,000 | Each Wrongful Act |

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 22 of 136 PageID #: 27

## Part 2 - Special Pollution Coverages
## Coverages 2C and 2D are Claims Made and Reported

**Pollution Liability Aggregate Limit**                                           SEE EPACE 110

Each Pollution Condition Limit                                                    $1,000,000

**Coverages 2A - 2E are subject to the above Each Pollution Condition Limit**

Coverage 2A - Contracting Services Pollution Coverage........................................ Included

Coverage 2B - Transportation Pollution Liability................................................... Included

Coverage 2C - Pollution Liability for Waste Disposal Facilities and Scheduled Non-Owned
  Locations………................................................................................................... Included

Coverage 2D - Pollution Liability for Your Sites

    a. Bodily Injury and Property Damage - Scheduled Sites........................... Not Purchased

    b. On-Site Cleanup Costs - Scheduled Sites............................................. Not Purchased

    c. Off-Site Cleanup Costs - Scheduled Sites............................................. Not Purchased

    d. Emergency Expenses - Scheduled Sites............................................... Not Purchased

    e. Time-Element Pollution Conditions - Unscheduled Sites....................... Not Purchased

Coverage 2E - Environmental Crisis Management Costs....................................... Not Purchased

Part 2 Deductible: The applicable Deductible shown below applies to Each Pollution Condition

| Deductible - 2A: | $5,000 | |
|---|---|---|
| Deductible - 2B: | $5,000 | NOTICE |
| Deductible - 2C: | $5,000 | |
| Deductible - 2D a: | Not Purchased | THIS INSURANCE CONTRACT HAS BEEN PLACED WITH AN INSURER NOT LICENSED TO DO BUSINESS IN THE STATE OF RHODE ISLAND BUT APPROVED AS A SURPLUS LINES INSURER. THE INSURER IS NOT A MEMBER OF THE RHODE ISLAND INSURERS INSOLVENCY FUND. SHOULD THE INSURER BECOME INSOLVENT, THE PROTECTION AND BENEFITS OF THE RHODE ISLAND INSURANCE INSOLVENCY FUND ARE NOT AVAILABLE. |
| Deductible - 2D b: | Not Purchased | |
| Deductible - 2D c: | Not Purchased | |
| Deductible - 2D d: | Not Purchased | |
| Deductible - 2D e: | Not Purchased | |

Retroactive Date - Coverage 2C:        02/01/2017

Retroactive Date - Coverage 2D:        N/A

## Coverage 3 - Professional Liability - Claims Made and Reported

**Professional Liability Aggregate Limit**                                          SEE EPACE 110

Each Wrongful Act Limit                                                           $1,000,000

Deductible - Coverage 3:      $5,000          Each Wrongful Act

Retroactive Date - Coverage 3:      02/01/2017

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**4.  PREMIUM:**                                                                                $  15,131.00

☐  Premium Charge for Certified Acts of Terrorism Coverage                    $  N/A
    (Per Policyholder Disclosure TRIA2002Notice attached); or

☒  Coverage for Certified Acts of Terrorism Rejected; Exclusion attached
    (Per Policyholder Disclosure TRIA2002Notice attached)

**Total Annual Premium** - Payable at Inception                                    $  15,131.00

**5.  FORMS APPLICABLE TO ALL COVERAGES:**

See Form U001-Schedule of Forms and Endorsements


THESE DECLARATIONS TOGETHER WITH THE INSURANCE COVERAGE FORM, AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.


COUNTERSIGNED:                          BY:

                     Date                          Authorized representative or countersignature, whichever applies

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 24 of 136 PageID #: 29



# Privacy Policy

Argo Group US, Inc. ("Argo Group") recognizes the importance of maintaining the privacy of our customers and the confidentiality of each individual's nonpublic personal information, including Social Security numbers.  We take seriously the responsibility that accompanies our collection of nonpublic personal information, including Social Security numbers.  Accordingly, Argo's corporate policy is to protect the privacy and confidentiality of our consumers and their nonpublic personal information as required by law.

## Information Collection and Use

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use Social Security numbers and other nonpublic personal information.  As such, this policy does not prohibit the collection or use of Social Security numbers and nonpublic personal information where legally authorized and/or required.  This policy complies with the requirements of the Gramm-Leach-Bliley Act (GLBA) and applicable federal and state laws and regulations implementing the act.  Such laws impose certain obligations upon third persons and organizations with which we share nonpublic personal information of our consumers, customers, former customers, or claimants. Accordingly, we prohibit the unauthorized disclosure of Social Security numbers and other protected nonpublic personal information, except as legally required or authorized.

## Information Sharing and Disclosure

Argo Group does not rent, sell or share your personally identifiable information with nonaffiliated third parties. Argo Group may, however, share personally identifiable information with third-party contractors. These third-party contractors are prohibited from using the information for purposes other than performing services for Argo Group.  Argo Group may disclose your information to third parties when obligated to do so by law and to investigate, prevent, or take action regarding suspected or actual prohibited activities, including but not limited to fraud and situations involving the security of our operations and employees.

Finally, Argo Group may transfer information, including any personally identifiable information, to a successor entity in connection with a corporate merger, consolidation, sale of all or a portion of its assets, bankruptcy, or other corporate change.

## Security

In order to protect your nonpublic personal information, we limit access to nonpublic personal information by only allowing authorized personnel to have access to such information. Furthermore, we maintain physical, electronic and procedural security protections to safeguard the nonpublic personal information in our records.  Documents that contain an individual's protected information are destroyed before disposal; this destruction process includes the shredding of print and disposable media and deletion of electronic media.  Argo Group has security measures in place to protect the loss, misuse and alteration of the information under our control. Our hardware infrastructure is housed in a controlled access facility that restricts access to authorized individuals. The network infrastructure is protected by a firewall and traffic is monitored and logged both on the firewall and servers. Sensitive administrative activities are carried out over secure, encrypted links between our offices and hosting facility. Administrative

access is limited not only to authorized employees but also to specific remote administration protocols and IP addresses. All employees with access to personally identifiable information have been advised of Argo Group's security policies and practices. Argo Group will continue to conduct internal audits of its security systems and make all necessary enhancements to ensure the safety of the website and its users. No method of transmission over the Internet or method of electronic storage is 100% secure; therefore, while Argo Group uses commercially acceptable means to protect your information, we cannot guarantee absolute security.

Any Argo Group employee who becomes aware of the inappropriate use or disclosure of Social Security numbers and other protected nonpublic personal information is expected to immediately report such behavior to the General Counsel for further action.

**Corrected/Updated Information**

This policy applies to certain insureds of Argo Group, including but not limited to worker's compensation claimants.  If you have any questions about this Privacy Policy, please contact:

General Counsel
Argo Group US, Inc.
P.O. Box 469011
San Antonio, Texas 78246
(210) 321-8400

*Note: Argo Group is the parent of Argonaut Insurance Company; Argonaut-Southwest Insurance Company; Argonaut-Midwest Insurance Company; Argonaut Great Central Insurance Company; Argonaut Limited Risk Insurance Company; ARIS Title Insurance Corporation; Select Markets Insurance Company; Colony Insurance Company; Colony Specialty Insurance Company; Peleus Insurance Company (fka Colony National Insurance Company); Rockwood Casualty Insurance Company; Somerset Casualty Insurance Company; Grocers Insurance Agency, Inc.; Central Insurance Management, Inc.; Alteris Insurance Services, Inc.; Trident Insurance Services, LLC; Commercial Deposit Insurance Agency, Inc.; Sonoma Risk Management, LLC; John Sutak Insurance Brokers, Inc.; Colony Management Services, Inc.; Argonaut Management Services, Inc.; and Argonaut Claims Management, LLC.  This Privacy Policy applies to all companies and business produced or underwritten within Argo Group.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 26 of 136 PageID #: 31

# SIGNATURE PAGE

IN WITNESS WHEREOF, the company issuing this policy has caused this policy to be signed by its President and its Secretary and countersigned (if required) on the Declarations page by a duly authorized representative of the company. This endorsement is executed by the company stated in the Declarations.

Colony Insurance Company

**President**                    **Secretary**

SIGCIC 0817                    Argo Group                    Page 1 of 1

Insured:ENERGY EPC, LLC                                                            U001 (10/04)
Policy Number:PACE306698

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|---|---|
| FORMS APPLICABLE - | ENVIRONMENTAL POLLUTION & CASUALTY EXPOSURES (ENVIROPACE) POLICY DECLARATIONS |
| | |
| ENVCNR-0916 | CANCELLATION |
| ENVNOTICE-0615 | IMPORTANT POLICYHOLDER INFORMATION |
| EPACE001-0415 | ENVIROPACE INSURANCE POLICY |
| EPACE104-0714 | NAMED INSURED ENDORSEMENT |
| EPACE108-0714 | MINIMUM EARNED PREMIUM ENDORSEMENT |
| EPACE110-0714 | AMENDED GENERAL AGGREGATE ENDORSEMENT |
| EPACE115-0714 | HIRED AUTO AND NON-OWNED AUTO LIABILITY INSURANCE |
| EPACE119NY-0715 | ACTION OVER EXCLUSION - NEW YORK |
| EPACE186-0616 | EXCLUSION - UNMANNED AIRCRAFT |
| EPACE196-1016 | EXCLUSION-RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW |
| EPACE205-0318 | EXCLUSION - CYBER INJURY |
| EV165B-0115 | CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION |
| ILP001-0104 | U.S. TREASURY DEPT'S "OFAC" ADVISORY NOTICE TO POLICYHOLDERS |
| PRIVACYNOTICE-0415 | PRIVACY NOTICE |
| SIGCIC-0817 | SIGNATURE PAGE |
| TRIANOTICEENV-0115 | POLICYHOLDER DISCLOSURE-NOTICE OF TERRORISM INSURANCE COVERAGE |
| U094-0415 | SERVICE OF SUIT |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

If service of process is to be made upon the Company by way of hand delivery or courier service, delivery should be made to the Company's principal place of business:

Claims Manager
  Colony Insurance Company,
  Colony Specialty Insurance Company, or
  Peleus Insurance Company
  8720 Stony Point Parkway, Suite 400
  Richmond, Virginia 23235

If service of process is to be made upon the Company by way of the U.S. Postal Service, the following mailing address should be used:

General Counsel
  Colony Insurance Company,
  Colony Specialty Insurance Company, or
  Peleus Insurance Company
  P.O. Box 469011
  San Antonio, Texas 78246

Where required by statute, regulation, or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.





Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 31 of 136 PageID #: 36

# Table of Contents

**I.     COVERAGES**                                                                          **7**

Declarations:  Coverages 1A, 1B, 1C, 1D, 1E, 1F and 1G are referred to as the Part 1
Coverages.  Coverages 2A, 2B, 2C, 2D and 2E are referred to as the Part 2 Coverages.
Coverage 3 is Professional Liability coverage.

**II.    COVERAGE 1A – GENERAL LIABILITY BODILY INJURY AND PROPERTY DAMAGE**   **7**
  1.    Insuring Agreement
  2.    Specific Exclusions
    a.    Personal and Advertising Injury
    b.    Pollution

**III.   COVERAGE 1B – PERSONAL AND ADVERTISING INJURY LIABILITY**             **8**
  1.    Insuring Agreement
  2.    Specific Exclusions
    a.    Breach of Contract
    b.    Contractual Liability
    c.    Criminal Acts
    d.    Electronic Chat Rooms or Bulletin Boards
    e.    Infringement of Copyright, Patent, Trademark or Trade Secret
    f.    Insureds in Media and Internet Type Businesses
    g.    Knowing Violation of Rights of Another
    h.    Material Published Prior to Policy Period
    i.    Material Published with Knowledge of Falsity
    j.    Pollution
    k.    Quality, Performance or Conformance Failure
    l.    Unauthorized Use of Another's Name or Product
    m.    Wrong Description of Prices

**IV.    COVERAGE 1C – MEDICAL PAYMENTS**                                       **9**
  1.    Insuring Agreement
  2.    Specific Exclusions
    a.    Any Insured
    b.    Athletics Activities
    c.    Hired Person
    d.    Injury on Normally Occupied Premises
    e.    Products-Completed Operations Hazard
    f.    Workers' Compensation and Similar Laws

**V.     COVERAGE 1D – PRODUCTS POLLUTION LIABILITY**                          **10**

**VI.    COVERAGE 1E – HOSTILE FIRE AND BUILDING EQUIPMENT**                   **10**

**VII.   COVERAGE 1F – EMPLOYEE BENEFITS ADMINISTRATION LIABILITY**           **10**
  1.    Insuring Agreement
  2.    Specific Exclusions
    a.    Available Benefits
    b.    Bodily Injury, Property Damage or Personal and Advertising Injury

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 32 of 136 PageID #: 37

       c.     Dishonest, Fraudulent, Criminal or Malicious Act
       d.     ERISA
       e.     Failure to Perform a Contract
       f.     Inadequate Investment Performance/Advise Given with Respect to Participation
       g.     Insufficiency of Funds
       h.     Known Wrongful Act
       i.     Taxes, Fines or Penalties
       j.     Workers Compensation and Similar Laws

**VIII.  COVERAGE 1G – CRISIS MANAGEMENT COSTS        12**
     1.     Insuring Agreement
     2.     Specific Exclusions
       a.     Covered Under Coverage 2E

**IX.  COMMON EXCLUSIONS – PART 1 COVERAGES        12**
       a.     Aircraft, Auto or Watercraft
       b.     Asbestos or Lead
       c.     Contractual Liability
       d.     Covered by Project-Specific Insurance
       e.     Covered Under Part 2 Coverages
       f.     Damage to Impaired Property or Property not Physically Injured
       g.     Damage to Property
       h.     Damage to your Product
       i.     Damage to Your Work
       j.     Electronic Data
       k.     Employer's Liability
       l.     Employment Related Practices
       m.     Expected or Intended Injury or Damage
       n.     Internal Expenses
       o.     Known Injury or Damage
       p.     Liquor Liability
       q.     Mobile Equipment
       r.     Nuclear Material
       s.     Professional Liability
       t.     Recall of Products, Work or Impaired Property
       u.     Recording and Distribution of Material in Violation of Statutes
       v.     War
       w.     Waste Disposal Facilities
       x.     Workers' Compensation and Similar Laws

**X.  DEFENSE AND SUPPLEMENTARY PAYMENTS – PART 1 COVERAGES        19**
     1.     Defense
     2.     Supplementary Payments

**XI.  PART 2 COVERAGES – SPECIAL POLLUTION COVERAGES        21**

**XII.  COVERAGE 2A - CONTRACTING SERVICES POLLUTION LIABILITY        22**
     1.     Insuring Agreements
       a.     Third-Party Claims
       b.     Emergency Expenses
     2.     Specific Exclusions
       a.     Damage to Your Work

**XIII.  COVERAGE 2B - TRANSPORTATION POLLUTION LIABILITY        22**
     1.     Insuring Agreements
       a.     Third-Party Claims
       b.     Emergency Expenses

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 33 of 136 PageID #: 38

2.   Specific Exclusions
     a.   Property Damage to a Conveyance

**XIV.   COVERAGE 2C - POLLUTION LIABILITY FOR WASTE DISPOSAL FACILITIES AND SCHEDULED NON-OWNED LOCATIONS - CLAIMS MADE AND REPORTED** ............ **23**
     1.   Insuring Agreement
     2.   Specific Exclusions
          a.   Claims Brought by Waste Disposal Facility Owner or Operator

**XV.   COVERAGE 2D - POLLUTION LIABILITY FOR YOUR SITES - CLAIMS MADE AND REPORTED** ............ **23**
     1.   Insuring Agreements
          a.   Bodily Injury and Property Damage - Scheduled Sites
          b.   On-Site Cleanup Costs - Scheduled Sites
          c.   Off-Site Cleanup Costs - Scheduled Sites
          d.   Emergency Expenses - Scheduled Sites
          e.   Time-Element Pollution Bodily Injury and Property Damage-Unscheduled Sites
          f.   Related Claims
     2.   Specific Exclusions
          a.   Asbestos and Lead-Based Paint
          b.   Facility Inspections or Maintenance; Facility Upgrades and Improvements
          c.   Insured Versus Insured
          d.   Material Change in Use
          e.   Pollution Conditions After a Site is Divested
          f.   Underground Storage Tanks

**XVI.   COVERAGE 2E - ENVIRONMENTAL CRISIS MANAGEMENT COSTS** ............ **26**
     1.   Insuring Agreement
     2.   Specific Exclusions
          a.   Covered Under Coverage 1G

**XVII.   COMMON EXCLUSIONS - PART 2 - SPECIAL POLLUTION COVERAGES** ............ **27**
          a.   Contractual Liability
          b.   Covered by Project-Specific Insurance
          c.   Covered Under Part 1 Coverage
          d.   Criminal Fines, Penalties or Assessments
          e.   Damage to Your Product
          f.   Employer's Liability
          g.   Expected or Intended Injury or Damage
          h.   Failure to Comply
          i.   Intentional Acts
          j.   Internal Expenses
          k.   Known Pollution Condition, Injury or Damage
          l.   Nuclear Material
          m.   Transportation Activities
          n.   Your Product
          o.   War
          p.   Waste Disposal Facilities
          q.   Workers' Compensation and Similar Laws

**XVIII.   DEFENSE - SPECIAL POLLUTION COVERAGES** ............ **30**

**XIX.   COVERAGE 3 - PROFESSIONAL LIABILITY - CLAIMS MADE AND REPORTED** ............ **30**
     1.   Insuring Agreement
     2.   Specific Exclusions
          a.   Aircraft, Auto or Watercraft
          b.   Bankruptcy
          c.   Contractual Liability

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 34 of 136 PageID #: 39

d.    Covered by Project-Specific Insurance
e.    Discrimination
f.    Dishonest or Fraudulent Act
g.    Disputed Fees
h.    Employer's Liability
i.    Failure to Comply
j.    Failure to Maintain
k.    Faulty Workmanship
l.    Fiduciary Liability of Non-Named Insured
m.    Fines, Penalties and Assessments
n.    Insured versus Insured
o.    Intellectual Property
p.    Internal Expenses
q.    Known Wrongful Act
r.    Nuclear Material
s.    Owned Facilities
t.    Personal and Advertising Injury
u.    Previoiusly Reported Claims
v.    Project Delays or Cost Overruns
w.    War
x.    Workers' Compensation and Similar Laws
y.    Warranties
z.    Your Product
3.    Defense - Coverage 3 -- Professional Liability

**XX.   WHO IS AN INSURED**    **34**
1.    Applicable to Coverage Part 1 and Part 2:
2.    Applicable to Coverage 3 – Professional Liability

**XXI.   LIMITS OF LIABILITY AND DEDUCTIBLE**    **37**
1.    Limits Applicable to Part 1 Coverages
    a.    General Aggregate Limit and General Aggregate Cap
    b.    Products-Completed Operations Aggregate Limit
    c.    Each Occurrence Limit
    d.    Personal and Advertising Injury Limit
    e.    Employee Benefits Administration Limit
    f.    Crisis Management Costs Limit - Coverage 1G
    g.    Damage to Premises Rented to You Limit
    h.    Medical Expense Limit
2.    Limits Applicable to Part 2 - Special Pollution Coverages
    a.    Pollution Liability Aggregate Limit
    b.    Individual Coverage Limits
    c.    Each Pollution Condition Limit
3.    Limits Applicable to Coverage 3 - Professional Liability
    a.    Professional Liability Aggregate Limit
    b.    Each Wrongful Act Limit
4.    Multiple Coverage Sections
5.    Multiple Policies or Policy Periods
6.    Extension of Policy Period
7.    Deductible

**XXII.   NOTICE, RIGHTS AND DUTIES**    **41**
1.    Your Duties in the Event of an Occurrence, Offense, or Wrongful Act
2.    Your Duties in the Event of a Pollution Condition
3.    Our Rights in the Event of a Pollution Condition
4.    Your Duties in the Event of a Claim or Suit
5.    Your Duties with Respect to Emergency Expenses
6.    Knowledge of an Occurrence

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-CV-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 35 of 136 PageID #: 40

7.     Mistaken Notice

**XXIII. CONDITIONS**                                                      **42**

1.     Action Against Company
2.     Appeals
3.     Bankruptcy
4.     Cancellation
5.     Changes and Assignment
6.     Consent
7.     Cooperation
8.     Currency
9.     Declarations and Representations
10.    Economic and Trade Sanctions
11.    Headings
12.    Independent Counsel
13.    Inspection and Audit
14.    Other Insurance
       a.     Primary Insurance
       b.     Excess Insurance
       c.     Method of Sharing
15.    Separation of Insureds
16.    Sole Agent
17.    Subrogation
18.    Voluntary Payments

**XXIV. EXTENDED REPORTING PERIODS**                                       **47**

**XXV.  DEFINITIONS**                                                      **49**

1.     Administration
2.     Advertisement
3.     Auto
4.     Bodily Injury
5.     Cargo
6.     Claim
7.     Cleanup Costs
8.     Conveyance
9.     Coverage Territory
10.    Crisis Management Consultant
11.    Crisis Management Costs
12.    Crisis Management Event
13.    Emergency Expenses
14.    Employee
15.    Employee Benefit Program
16.    Environmental Damage
17.    Environmental Laws
18.    Environmental Professional
19.    Executive Officer
20.    First Named Insured
21.    Hostile Fire
22.    Illicit Abandonment
23.    Impaired Property
24.    Inception Date
25.    Insured Contract
26.    Job Site
27.    Legal Defense Costs
28.    Leased Worker
29.    Loading or Unloading
30.    Location

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

2:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 36 of 136 PageID #: 41

31.  Loss
32.  Low-Level Radioactive Waste
33.  Microbial Matter
34.  Mixed Waste
35.  Mobile Equipment
36.  Natural Resource Damage
37.  Non-Owned Location
38.  Occurrence
39.  Our Affiliate
40.  Personal and Advertising Injury
41.  Policy Period
42.  Pollutant
43.  Pollution Condition
44.  Products-Completed Operations Hazard
45.  Professional Services
46.  Property Damage
47.  Responsible Insured
48.  Restoration Costs
49.  Retroactive Date
50.  Scheduled Site
51.  Suit
52.  Temporary Worker
53.  Transportation
54.  Underground Storage Tank
55.  Unscheduled Site
56.  Volunteer Worker
57.  Waste
58.  Waste Disposal Facility
59.  Wrongful Act
60.  Your Product
61.  Your Work

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-CV-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 37 of 136 PageID #: 42

# Colony Specialty EnviroPACE Insurance Policy

This Policy provides certain insurance coverages on an occurrence, claims-made and reported, or discovery basis. Various provisions in this Policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words and phrases that appear in bold have special meaning and are defined in section XXV. DEFINITIONS. The terms "we", "us", "our" and "insurer" refer to the Company providing this insurance. The terms "you" and "your" refer to the Named Insured shown in the Declarations and any other person or entity that qualifies as a Named Insured under this Policy.

In consideration of the payment of the premium and any deductible, when due, and in reliance upon all the statements made in the Application, made part of this Policy, including any other supplemental materials and information submitted in connection with the Application, and subject to all the terms of this Policy, the Company agrees to provide insurance coverage as described herein:

## I. COVERAGES

Each of the following coverages applies only if shown as purchased in the Declarations. Coverages 1A, 1B, 1C, 1D, 1E, 1F and 1G are referred to as the Part 1 Coverages. Coverages 2A, 2B, 2C, 2D and 2E are referred to as the Part 2 Coverages. Coverage 3 is Professional Liability coverage.

## II. COVERAGE 1A – GENERAL LIABILITY BODILY INJURY AND PROPERTY DAMAGE

1. **Insuring Agreement**
   We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** that takes place during the **policy period** and is caused by an **occurrence** in the **coverage territory**.

2. **Specific Exclusions**
   In addition to the exclusions in section IX. COMMON EXCLUSIONS – PART 1 COVERAGES, Coverage 1A does not apply to:

   a. **Personal and Advertising Injury**
      **Bodily injury** arising out of **personal and advertising injury**.

   b. **Pollution**

      1. **Bodily injury, property damage,** or any loss, cost, or expense arising out of any **pollution condition**; or

      2. Any costs, charges or expense arising out of any:

         (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remediate, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutant** or a **pollution condition**; or

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 38 of 136 PageID #: 43

(b)  **Claim** or **suit** by or on behalf of a governmental authority for damages because of testing for, investigating, monitoring, cleaning up, remediation, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, any **pollutant** or **pollution condition.**

## III.   COVERAGE 1B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1.   Insuring Agreement

We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal and advertising injury** caused by an offense that arises out of your business and was committed during the **policy period** in the **coverage territory**.

### 2.   Specific Exclusions

In addition to the exclusions in section IX. COMMON EXCLUSIONS – PART 1 COVERAGES, Coverage 1B does not apply to **personal and advertising injury**:

**a.   Breach of Contract**
Arising out of a breach of contract, except an implied contract to use another's advertising idea in your **advertisement**.

**b.   Contractual Liability**
Arising out of a contract or agreement.  This Exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**c.   Criminal Acts**
Arising out of a criminal act committed by or at the direction of the insured.

**d.   Electronic Chat Rooms or Bulletin Boards**
Arising out of an electronic chat room or bulletin board the insured hosts, owns, or over which the insured exercises any degree of control.

**e.   Infringement of Copyright, Patent, Trademark or Trade Secret**
Arising out of infringement of copyright, patent, trade secret or other intellectual property rights.  Under this Exclusion, such other intellectual property rights do not include use of another's advertising idea in your **advertisement**.

However, this Exclusion does not apply to infringement, in your **advertisement**, of any copyright, trade dress or slogan.

**f.   Insureds in Media and Internet Type Businesses**
Committed by an insured whose business is: (i) advertising, broadcasting, publishing, telecasting; (ii) designing or determining content of web-sites for others; or (iii) an internet search, access, content or service provider.

This Exclusion does not apply to subparagraphs **a.** through **c.** of the definition of **personal and advertising injury** in section XXV. DEFINITIONS.

For the purposes of this Exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 39 of 136 PageID #: 44

g. **Knowing Violation of Rights of Another**
Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury**.

h. **Material Published Prior to Policy Period**
Arising out of oral or written publication of material whose first publication took place before the beginning of the **policy period**.

i. **Material Published with Knowledge of Falsity**
Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

j. **Pollution**
Arising out of any **pollution condition**, or any loss, cost or expense arising out of any **pollution condition**.

k. **Quality, Performance or Conformance Failure**
Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **advertisement**.

l. **Unauthorized Use of Another's Name or Product**
Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other tactics which are alleged to mislead another's potential customers.

m. **Wrong Description of Prices**
Arising out of the wrong description of the price of goods, products or services stated in your **advertisement**.

## IV.   COVERAGE 1C – MEDICAL PAYMENTS

1. **Insuring Agreement**
We will pay medical expenses for **bodily injury** caused by an accident on premises you own or rent, or on ways next to such premises, or because of your operations, provided: (i) the accident takes place during the **policy period** and in the **coverage territory**, (ii) the medical expenses are incurred and reported to us within one year of the date of the accident, and (iii) the injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

We will make these payments, regardless of fault.  We will pay reasonable expenses for: (i) first aid administered at the time of an accident; (ii) necessary medical, surgical, x-ray and dental services, including prosthetic devices; and (iii) necessary ambulance, hospital, professional nursing and funeral services.

2. **Specific Exclusions**
In addition to the exclusions in section IX. COMMON EXCLUSIONS – PART 1 COVERAGES, Coverage 1C does not apply to **bodily injury**:

a. **Any Insured**
To any insured, except **volunteer workers**.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 40 of 136 PageID #: 45

**b.  Athletics Activities**
To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic activities or contests.

**c.  Hired Person**
To any person hired to do work for or on behalf of any insured or a tenant of any insured.

**d.  Injury on Normally Occupied Premises**
To any person injured on that part of premises you own or rent that the person normally occupies, including common areas related to such premises.

**e.  Products-Completed Operations Hazard**
Included within the **products-completed operations hazard**.

**f.  Workers' Compensation and Similar Laws**
To a person, whether or not an **employee** of any insured, if benefits for the **bodily injury** are payable or must be provided under a workers' compensation or disability benefits law or a similar law, irrespective of whether such benefits are actually paid to or recoverable by such person.

## V.  COVERAGE 1D – PRODUCTS POLLUTION LIABILITY

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**, **property damage** or **environmental damage** that takes place during the **policy period** and results from a **pollution condition** in the **coverage territory**, provided the **pollution condition** is caused by **your product**, and the **bodily injury**, **property damage** or **environmental damage** is included in the **products-completed operations hazard**.

## VI.  COVERAGE 1E – HOSTILE FIRE AND BUILDING EQUIPMENT

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**, **property damage** or **environmental damage** that takes place during the **policy period** and is caused by an **occurrence** in the **coverage territory**, provided:

**1.**  The **bodily injury, property damage** or **environmental damage** arises out of heat, smoke, fumes, vapor or soot from a **hostile fire**; or

**2.**  The **bodily injury** is sustained within a building and arises out of heat, smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or that is used to heat water for personal use by the building's occupants or their guests.

## VII.  COVERAGE 1F – EMPLOYEE BENEFITS ADMINISTRATION LIABILITY

**1.  Insuring Agreement**
We will pay those sums that the insured becomes legally obligated to pay as damages because of a **wrongful act** in the **administration** of your **employee benefits program**,

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 41 of 136 PageID #: 46

provided:

**a.** the **wrongful act** takes place in the **coverage territory** and during the **policy period**; and

**b.** your **employee** or a dependant or beneficiary of your **employee** makes a **claim** for damages resulting from such **wrongful act**.

**2. Specific Exclusions**
In addition to the exclusions in section IX. COMMON EXCLUSIONS — PART 1 COVERAGES, Coverage 1F does not apply to:

**a. Available Benefits**
Any **claim** for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued in your **employee benefits program**, or other collectible insurance.

**b. Bodily Injury, Property Damage or Personal and Advertising Injury**
**Bodily injury**, **property damage** or **personal and advertising injury**.

**c. Dishonest, Fraudulent, Criminal or Malicious Act**
Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission committed by any insured, including the willful or reckless violation of any statute.

**d. ERISA**
Damages for which any insured is liable because of the liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**e. Failure to Perform a Contract**
Damages arising out of failure of performance of a contract by any insurer.

**f. Inadequate Investment Performance/Advice Given with Respect to Participation**
Any **claim** arising out of:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not in any plan included in the **employee benefits program**.

**g. Insufficiency of Funds**
Damages arising out of an insufficiency of funds to meet any obligation under any plan included in the **employee benefits program**.

**h. Known Wrongful Act**
Any **wrongful act** known, prior to the **inception date**, by a **responsible insured** to have taken place in whole or in part.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**i.**      **Taxes, Fines or Penalties**
Taxes, fines or penalties, including those imposed under ERISA, the Internal Revenue Code or any similar state or local law.

**j.**      **Workers Compensation and Similar Laws**
Any **claim** arising out of your failure to comply with the mandatory provisions of any workers' compensation unemployment compensation insurance, social security or disability benefits law or any similar law.

## VIII.   COVERAGE 1G – CRISIS MANAGEMENT COSTS

**1.**      **Insuring Agreement**
We will pay the **crisis management costs** that result from a **crisis management event, providing** the **crisis management event**:

     **a**.      arises directly from **your product**, or a **pollution condition,** that has resulted, or is reasonably likely to result, in damages covered under Coverage 1D or 1E;

     **b**.      commences during the **policy period**; and

     **c**.      first becomes known to a **responsible insured** during the **policy period** and reported to us in writing as soon as possible, but in any event during the **policy period** or within thirty (30) days after the end of the **policy period**.

We will pay those **crisis management costs** you incur even if coverage hereunder is still to be confirmed by us but such payments shall cease as soon as it becomes evident, to either you or us, that this insurance does not apply.  **Crisis management costs** are not subject to any retention or deductible.

**2.**      **Specific Exclusions**
In addition to the exclusions in section IX. COMMON EXCLUSIONS – PART 1 COVERAGES, Coverage 1G does not apply to:

     **a.**      **Covered Under Coverage 2E**
**Crisis management costs** to which Coverage 2E (Environmental Crisis Management Costs) applies or is held to apply.

## IX.   COMMON EXCLUSIONS – PART 1 COVERAGES

**1.**      The following exclusions apply to all Part 1 Coverages except where indicated.  Part 1 Coverages do not apply to:

     **a.**      **Aircraft, Auto or Watercraft**
**Bodily injury, property damage** or **environmental damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and **loading or unloading**.

This Exclusion applies even if the **claims** against an insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the **occurrence** which caused the **bodily injury, property damage** or **environmental damage** involved the ownership,

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 43 of 136 PageID #: 48

maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any insured.

Solely with respect to Coverage 1A, this Exclusion does not apply to:

    (1)    a watercraft while ashore on premises you own or rent;

    (2)    a watercraft you do not own that is:

        (a)  less than 26 feet long; and

        (b)  not being used to carry persons or property for a charge;

    (3)    parking an **auto** on, or on the ways next to, premises you own or rent, provided the **auto** is not owned by or rented or loaned to you or the insured;

    (4)    liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft;

    (5)    **bodily injury** or **property damage** arising out of:

        (a)  the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

        (b)  the operation of any of the machinery or equipment listed in subparagraph f. (2) or (3) of the definition of **mobile equipment**;

    (6)    the delivery of any solid or liquid product into a wrong receptacle or to a wrong address; or

    (7)    the erroneous delivery of one solid or liquid product for another by an **auto**.

          Paragraphs (6) and (7) of this exclusion only apply if the **bodily injury** or **property damage** occurs after such operations have been completed or abandoned at the site of such delivery.

          Operations which may require further service, maintenance, correction, repair or replacement at the wrong address or because of any error, defect or deficiency, but which are otherwise completed, will be deemed completed.

**b.    Asbestos or Lead**
**Bodily injury, property damage** or **environmental damage** arising out of the presence, ingestion or inhalation of, or exposure to, asbestos or lead in any form.

**c**.    **Contractual Liability**
**Bodily injury, property damage**, **environmental damage** or a **wrongful act** for which the insured is obligated to pay damages by reason of the obligation to

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 44 of 136 PageID #: 49

perform under, or the assumption of liability in a contract or agreement.  This Exclusion does not apply to liability for damages:

(1)   That the insured would have in the absence of the contract or agreement; or

(2)   Assumed in an **insured contract**, provided the **bodily injury, property damage, environmental damage** or **wrongful act** occurs subsequent to the execution of the **insured contract**.  Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of **bodily injury, property damage, environmental damage** or **wrongful act**, provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Regardless of how **legal defense costs** are treated elsewhere in this Policy, any coverage afforded under subparagraph (b) for reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured shall reduce the applicable limits of liability in section XXI. LIMITS OF LIABILITY AND DEDUCTIBLE.

This Exclusion does not apply to Coverage 1B (Personal and Advertising Injury Liability), which is subject to its own Contractual Liability exclusion.

**d.    Covered by Project-Specific Insurance**
**Your work** if the **loss** is covered by any project-specific insurance available to the insured.

**e.    Covered Under Part 2 Coverages**
**Bodily injury, property damage** or **environmental damage** to which any Part 2 Coverage applies or is held to apply.

**f.    Damage to Impaired Property or Property Not Physically Injured**
**Property damage** or **environmental damage** to **impaired property** or property that is not physically injured, arising out of:

(1)   a defect, deficiency, inadequacy or dangerous condition in **your product** or   **your work**; or

(2)   a delay or failure by anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This Exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 45 of 136 PageID #: 50

g.   **Damage to Property**
**Property damage** or **environmental damage** to:

(1)   Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2)   Premises you sell, give away or abandon, if the **property damage** or **environmental damage** arises out of any part of those premises;

(3)   Property loaned to you;

(4)   Personal property in the care, custody or control of the insured;

(5)   That particular part of any real property on which you or any contractors or subcontractors, whether working directly or indirectly on your behalf, are performing operations, if the **property damage** or **environmental damage** arises out of those operations; or

(6)   That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this Exclusion do not apply to **property damage** (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.  A separate limit of insurance applies to Damage To Premises Rented To You as described in section XXI. LIMITS OF LIABILITY AND DEDUCTIBLE.

Paragraph (2) of this Exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this Exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this Exclusion does not apply to **property damage** or **environmental damage** included in the **products-completed operations hazard**.

h.   **Damage to Your Product**
**Property damage** or **environmental damage** to **your product**, arising out of it or any part of it.

i.   **Damage to Your Work**
**Property damage** or **environmental damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This Exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 46 of 136 PageID #: 51

**j.    Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.  However, this Exclusion does not apply to liability for damages because of **bodily injury**.

As used in this Exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**k.    Employer's Liability**
**Bodily injury** to:

(1)    An **employee** of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2)    The spouse, child, parent, brother or sister of that **employee** as a consequence of paragraph (1) above.

This Exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This Exclusion does not apply to liability assumed by the insured under an **insured contract**.

**l.    Employment-Related Practices**
Any **claim** arising out of:

(1)    Dismissal, discharge or termination of employment, whether actual, constructive or retaliatory;

(2)    Failure or refusal to hire or promote;

(3)    Discipline, demotion, coercion or retaliatory treatment;

(4)    Failure to grant tenure;

(5)    Negligent employment evaluation;

(6)    Sexual or other workplace harassment, including quid pro quo and hostile work environment;

(7)    Employment discrimination;

(8)    Invasion of privacy, violation of employment related civil rights, employment related libel, slander or defamation;

(9)    Creating or enforcing or failing to create or enforce employment related policies or procedures; or

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 47 of 136 PageID #: 52

(10)   Actual or alleged violations of the Family and Medical Leave Act of 1993 or its amendments, or similar federal, state or local law.

**m.**   **Expected or Intended Injury or Damage**
**Bodily injury, property damage** or **environmental damage** expected or intended from the standpoint of any **responsible insured**. This Exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

**n.**   **Internal Expenses**
Any costs, charges or expenses incurred by any insured for goods supplied or services performed by any **temporary workers**, **volunteer workers**, staff or salaried **employees** of the insured, its parent, subsidiary or affiliate.

**o.**   **Known Injury or Damage**
**Bodily injury**, **property damage** or **environmental damage** that prior to the **inception date** was known by any **responsible insured**. Any continuation, change or resumption of such **bodily injury, property damage** or **environmental damage** during the **policy period** will be deemed to have been known prior to the **inception date**.

**Bodily injury**, **property damage** or **environmental damage** will be deemed known at the earliest time when a **responsible insured**: (i) reports all, or any part, of the **bodily injury**, **property damage** or **environmental damage** to us or any other insurer, (ii) receives a **claim** for damages because of the **bodily injury, property damage** or **environmental damage,** or (iii) becomes aware or reasonably should have been aware by any other means that **bodily injury, property damage** or **environmental damage** has occurred or has begun to occur.

This exclusion does not apply to any continuation, change or resumption of **environmental damage** caused by **your work** after the **inception date** of the **policy period**.

**p.**   **Liquor Liability**
**Bodily injury** or **property damage** for which any insured may be held liable by reason of:

(1)   causing or contributing to the intoxication of any person;

(2)   the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)   any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This Exclusion applies even if the **claims** against any insured allege negligence or other wrongdoing in:

(a)   The supervision, hiring, employment, training or monitoring of others by that insured; or

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 48 of 136 PageID #: 53

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol; if the **occurrence** which caused the **bodily injury** or **property damage** involved that which is described in Paragraph (1), (2) or (3) above.

However, this Exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this Exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

q. **Mobile Equipment**
**Bodily injury**, **property damage** or **environmental damage** arising out of:

(1) the transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any insured; or

(2) the use of **mobile equipment** in, or while in practice for, or while being prepared for, any racing, speed, demolition, or stunting activity.

r. **Nuclear Material**

(1) The radioactive, toxic or explosive properties of nuclear material and with respect to which:

(a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(2) The actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of any radioactive matter or material arising out of **your product**.

s. **Professional Liability**
**Bodily injury, property damage** or **environmental damage** arising out of the rendering of or failure to render any **professional services**. This Exclusion does not apply to the evaluation, consultation, or opinion given by you, or others for whom you are legally liable, in connection with **your product**.

t. **Recall of Products, Work or Impaired Property**
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of **your product**, **your work** or **impaired property**, if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 49 of 136 PageID #: 54

**u. Recording and Distribution of Material In Violation of Statutes**
**Bodily injury**, **property damage** or **environmental damage** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**v. War**

(1) War, including undeclared or civil war;

(2) War-like action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**w. Waste Disposal Facilities**
The disposal of any products or materials, including **waste**, that have been delivered to any location or facility that is not owned, operated, leased, rented or occupied by you for the purpose of treatment, storage, processing, recycling or disposal.

**x. Workers' Compensation and Similar Laws**
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**2.** Exclusions a., f., g., h., i., k., p., q., t., v., and x., do not apply to damage by fire to premises while rented to or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in section XXI. LIMITS OF LIABILITY AND DEDUCTIBLE.

## X.    DEFENSE AND SUPPLEMENTARY PAYMENTS – PART 1 COVERAGES

The following provisions apply to purchased Part 1 Coverages only.

**1. Defense**
We have the right and duty to defend the insured against any **suit** seeking damages to which this insurance applies. We have no duty to defend the insured against a **suit** seeking damages to which this insurance does not apply. Our duty to defend ends when

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 50 of 136 PageID #: 55

the applicable Limit of Liability is exhausted by the payment of judgments or settlements. We may, at our discretion, investigate any **occurrence,** offense, **pollution condition** or **wrongful act**, and settle any **claim** or **suit** that may result.

**2.    Supplementary Payments**

    **a.**    We will pay, with respect to any **claim** we investigate or settle, or any **suit** against an insured we defend, the following Supplementary Payments:

        (1)    All expenses we incur.

        (2)    Up to $1,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle resulting in **bodily injury** subject to coverage under this Policy. We have no obligation to furnish these bonds.

        (3)    The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Liability.  We have no obligation to furnish these bonds.

        (4)    All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the **claim** or **suit**, including actual loss of earnings up to $750 a day because of time off from work.

        (5)    All court costs taxed against the insured in the **suit**.  However, these payments do not include attorneys' fees or attorneys' expenses or sanctions taxed to, awarded against or imposed upon the insured.

        (6)    Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Liability, we will not pay any prejudgment interest based on that period of time after the offer.

        (7)    All interest on the full amount of any judgment within the applicable   Limit of Liability that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Liability.

        These payments do not reduce the Limits of Liability.

    **b.**    Except with respect to Coverage 1F – Employee Benefits Administration Liability, if we defend an insured against a **suit** and an indemnitee of the insured is also named as a party to the **suit**, we will defend that indemnitee if all of the following conditions are met:

        (1)    The **suit** against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in an **insured contract**;

        (2)    This insurance applies to such liability assumed by the insured;

        (3)    The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same **insured contract**;

        (4)    The allegations in the **suit** and the information we know about the

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 51 of 136 PageID #: 56

**occurrence**, offense or **pollution condition** are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

(5)    The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such **suit** and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(6)    The indemnitee:

    (a)    Agrees in writing to:

        (i)    Cooperate with us in the investigation, settlement or defense of the **suit**;

        (ii)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **suit**;

        (iii)    Notify any other insurer whose coverage is available to the indemnitee; and

        (iv)    Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

    (b)    Provides us with written authorization to:

        (i)    Obtain records and other information related to the **suit**; and

        (ii)    Conduct and control the defense of the indemnitee in such **suit**.

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us, and necessary litigation expenses incurred by the indemnitee at our request, will be paid as Supplementary Payments.  Notwithstanding the provisions of paragraph (2) of Exclusion c. Contractual Liability in section IX. COMMON EXCLUSIONS - PART 1 COVERAGES, such payments will not be deemed to be damages and will not reduce the limits of liability.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable Limit of Liability in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph (6) above are no longer met.

## XI.   PART 2 COVERAGES – SPECIAL POLLUTION COVERAGES

Coverages 2A through 2E apply only if shown as purchased in the Declarations.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 52 of 136 PageID #: 57

## XII.  COVERAGE 2A – CONTRACTING SERVICES POLLUTION LIABILITY

1.  **Insuring Agreements**

    a.  **Third-Party Claims**
    We will pay on behalf of the insured **loss** the insured becomes legally obligated to pay because of **bodily injury**, **property damage** or **environmental damage** that:  (i) takes place during the **policy period**, (ii) is caused by a **pollution condition** in the **coverage territory**, (iii) results from **your work** performed for a third party at a **job site,** and (iv) results in a **claim** for such **bodily injury**, **property damage** or **environmental damage**.

    b.  **Emergency Expenses**
    We will pay the **emergency expenses** you first incur during the **policy period** arising from a **pollution condition** in the **coverage territory** resulting from **your work** performed for a third party at a **job site.**

2.  **Specific Exclusions**
    In addition to the common exclusions in section XVII. COMMON EXCLUSIONS – PART 2 – SPECIAL POLLUTION COVERAGES, Coverage 2A does not apply to:

    a. **Damage To Your Work**
    **Property damage** or **environmental damage** to **your work**.  However, this Exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

## XIII.  COVERAGE 2B – TRANSPORTATION POLLUTION LIABILITY

1.  **Insuring Agreements**

    a.  **Third-Party Claims**
    We will pay on behalf of the insured **loss** the insured becomes legally obligated to pay because of **bodily injury**, **property damage** or **environmental damage** that:  (i) takes place during the **policy period**, (ii) is caused by a **pollution condition** in the **coverage territory**, (iii) results from **transportation**, and (iv) results in a **claim** for such **bodily injury**, **property damage** or **environmental damage**.

    b.  **Emergency Expenses**
    We will pay the **emergency expenses** you first incur during the **policy period** arising from a **pollution condition** in the **coverage territory** resulting from **transportation.**

2.  **Specific Exclusions**
    In addition the common exclusions in section XVII. COMMON EXCLUSIONS – PART 2 – SPECIAL POLLUTION COVERAGES, Coverage 2B does not apply to:

    a.  **Property Damage to a Conveyance**
    **Property damage** to a **conveyance** utilized by you or on your behalf during transportation.  However, this Exclusion does not apply to a **claim** brought a by third-party carrier alleging negligence on your part.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 53 of 136 PageID #: 58

## XIV.  COVERAGE 2C – POLLUTION LIABILITY FOR WASTE DISPOSAL FACILITIES AND SCHEDULED NON-OWNED LOCATIONS – CLAIMS MADE AND REPORTED

**1.  Insuring Agreement**

We will pay on behalf of the insured **loss** the insured becomes legally obligated to pay because of a **claim** for **bodily injury**, **property damage** or **cleanup costs** caused by a **pollution condition** in the **coverage territory**, provided:

    **a.**    the **pollution condition** is on, under or migrating from a **waste disposal facility** or **non-owned location**;

    **b.**    the **pollution condition** commenced on or after the **retroactive date**, if applicable, and before the end of the **policy period**; and

    **c.**    a **claim** is first made against an insured during the **policy period** and first reported to us, in writing, during the **policy period** or any applicable Extended Reporting Period.

        If a **claim** is first made against an insured and reported to us during this **policy period,** then, provided you have maintained coverage for Pollution Liability For Waste Disposal Facilities And Scheduled Non-Owned Locations with us or **our affiliate** on a continuous, uninterrupted basis, all **claims** first made against an insured and reported to us during a subsequent policy period that arise out of the same, related, continuous or repeated **pollution condition(s)** that gave rise to a **claim** first made against an insured and reported to us during this **policy period**, will be deemed to have been first made against the insured and reported to us during this **policy period**.  All such **claims** will be subject to the applicable limits, deductible, terms and conditions of this Policy.

**2.  Specific Exclusions**

In addition to the common exclusions in section XVII. COMMON EXCLUSIONS – PART 2 – SPECIAL POLLUTION COVERAGES, Coverage 2C does not apply to any **claim**:

    **a.**    **Claims Brought by Waste Disposal Facility Owner or Operator**

        Brought by or on behalf of an owner or operator of a **waste disposal facility**, including any parent, subsidiaries, affiliates, related companies, predecessors-in-interest or successors-in-interest or assignees of the owner or operator, for any **pollution condition** that commenced after your **waste** was delivered to the **waste disposal facility**.

## XV.  COVERAGE 2D – POLLUTION LIABILITY FOR YOUR SITES – CLAIMS MADE AND REPORTED

**1.  Insuring Agreements**

    **a.**    **Bodily Injury and Property Damage – Scheduled Sites**

        We will pay on behalf of the insured **loss** the insured becomes legally obligated to pay because of **bodily injury** or **property damage** caused by a **pollution condition** on, under or migrating from a **scheduled site**, provided:

        (1)    the **pollution condition** commenced on or after the **retroactive date**, if applicable, and before the end of the **policy period**;

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 54 of 136 PageID #: 59

(2)    a **claim** for damages is first made against an insured during the **policy period**; and

(3)    the **claim** is first reported to us, in writing, during the **policy period** or any applicable Extended Reporting Period.

**b.**    **On-Site Cleanup Costs – Scheduled Sites**
We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay for **cleanup costs** on or under a **scheduled site** resulting from a **pollution condition**, provided:

(1)    the **pollution condition** commenced on or after the **retroactive date**, if applicable, and before the end of the **policy period**; and

(2)    (a) a **claim** for **cleanup costs** is first made against an insured during the **policy period;** and

    (b) the **claim** is first reported to us, in writing, during the **policy period** or any applicable Extended Reporting Period; or

(3)    the **pollution condition** first becomes known to a **responsible insured** during the **policy period** and you report the **pollution condition** to us in writing as soon as practicable following discovery, and in any event during the **policy period**.

**c.**    **Off-Site Cleanup Costs – Scheduled Sites**
We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay for **cleanup costs** beyond the boundaries of a **scheduled site** caused by a **pollution condition** migrating from a **scheduled site**, provided:

(1)    the **pollution condition** commenced on or after the applicable **retroactive date** and before the end of the **policy period**; and

(2)    (a) a **claim** for **cleanup costs** is first made against an insured during the **policy period**, and

    (b) the **claim** is first reported to us, in writing, during the **policy period** or any applicable Extended Reporting Period.

**d.**    **Emergency Expenses – Scheduled Sites**
We will pay the **emergency expenses** you first incur during the **policy period** resulting from a **pollution condition** on, under or migrating from a **scheduled site**.

**e.**    **Time-Element Pollution Bodily Injury and Property Damage – Unscheduled Sites**
We will pay on behalf of the insured **loss** the insured becomes legally obligated to pay because of **bodily injury** or **property damage** caused by a **pollution condition** on, under or migrating from an **unscheduled site** in the **coverage territory**, provided the **pollution condition**:

(1)    first commences at an identifiable time and place during the **policy period**;

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-CV-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 55 of 136 PageID #: 60

 (2) first becomes known to a **responsible insured** within fifteen (15) days after it commenced; and

 (3) is reported to us, in writing, within thirty (30) days after you discover it.

**f.** **Related Claims**

With respect to Coverage 2D, if a **claim** is first made against an insured and reported to us during this **policy period,** then, provided you have maintained coverage for Pollution Liability For Your Sites with us or **our affiliate** on a continuous, uninterrupted basis, all **claims** first made against an insured and reported to us during a subsequent policy period that arise out of the same, related, continuous or repeated **pollution condition(s)** that gave rise to a **claim** first made against an insured and reported to us during this **policy period**, will be deemed to have been first made against the insured and reported to us during this **policy period**. All such **claims** will be subject to the applicable limits, deductible, terms and conditions of this Policy.

**2.** **Specific Exclusions**

In addition to the common exclusions in section XVII. COMMON EXCLUSIONS – PART 2 – SPECIAL POLLUTION COVERAGES, Coverage 2D does not apply to any **claim** or **loss** arising out of:

**a.** **Asbestos and Lead-Based Paint**

Asbestos, asbestos-containing materials or lead-based paint.  However, this Exclusion does not apply to:

 (1) **cleanup costs** for asbestos, asbestos-containing materials or lead-based paint in soil, groundwater, or any other body of water.

**b.** **Facility Inspections or Maintenance; Facility Upgrades and Improvements**

Any costs, charges or expense for the:

 (1) routine evaluation, inspection, maintenance, cleaning or repair of; or

 (2) maintenance, upgrade or improvement of, or installment of any control to, any building system, component, equipment or process on, at or under any **unscheduled** or **scheduled site**.

This Exclusion applies even if such costs, charges or expenses are:

 (1) required by any ordinance, code, regulation, or law, including **environmental law**; or

 (2) the result of or related to, **cleanup costs**, **emergency expenses**, or **loss** otherwise covered under this Policy.

**c.** **Insured versus Insured**

A **claim** made by or on behalf of an insured against any other insured.  This Exclusion does not apply to **claims** initiated by third parties or **claims** that arise out of an indemnification given by you to another insured in an **insured contract**.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 56 of 136 PageID #: 61

    **d.**   **Material Change in Use**
A change in use or operations during the **policy period** at an **unscheduled site** or **scheduled site**, which materially increases a risk covered under this Policy.

    **e.**   **Pollution Conditions After a Site is Divested**
A **pollution condition** that commences after the applicable **unscheduled site** or **scheduled site** is sold, given away or abandoned by you.

    **f.**   **Underground Storage Tanks**
Any **underground storage tank** at an **unscheduled site** or **scheduled site**. However, this Exclusion does not apply to those **underground storage tanks**:

    (1)   listed on a Schedule of Underground Storage Tank(s) endorsement attached to this Policy;

    (2)   removed or abandoned in-place prior to the **inception date**, provided any removal or abandonment in-place by you or on your behalf was conducted in compliance with all applicable federal, state, municipal or provincial regulations; or

    (3)   the existence of which is unknown to all **responsible insureds** as of the **inception date**.

## XVI.  COVERAGE 2E - ENVIRONMENTAL CRISIS MANAGEMENT COSTS

**1.**   **Insuring Agreement**
We will pay the **crisis management costs** you incur as a direct result of a **crisis management event** that:

    **a.**   arises directly from a **pollution condition** that has resulted, or is reasonably likely to result, in **loss** covered under Coverage 2A, 2B, 2C or 2D;

    **b.**   commences during the **policy period**; and

    **c.**   first becomes known to a **responsible insured** during the **policy period** and is reported to us in writing as soon as possible, but in any event during the **policy period** or within thirty (30) days after the end of the **policy period**.

We will pay those **crisis management costs** you incur even if coverage hereunder is still to be confirmed us but we will stop paying such fees as soon as it becomes evident, to either you or us, that this insurance does not apply. **Crisis management costs** are not subject to any retention or deductible.

**2.**   **Specific Exclusions**
In addition to the exclusions in section XVII. COMMON EXCLUSIONS – PART 2 – SPECIAL POLLUTION COVERAGES, Coverage 2E does not apply to:

    **a.**   **Covered Under Coverage 1G**

    **Crisis management costs** to which Coverage 1G (Crisis Management Costs) applies or is held to apply.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 57 of 136 PageID #: 62

# XVII. COMMON EXCLUSIONS – PART 2 – SPECIAL POLLUTION COVERAGES

The following exclusions apply to all Part 2 Coverages except where indicated.  Part 2 Coverages do not apply to **loss** arising out of:

**a.**   **Contractual Liability**
**Bodily injury, property damage**, **environmental damage** or a **wrongful act** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This Exclusion does not apply to liability for damages:

(1)   That the insured would have in the absence of the contract or agreement; or

(2)   Assumed in an **insured contract**, provided the **bodily injury, property damage, environmental damage** or **wrongful act** occurs subsequent to the execution of the **insured contract**.  Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of **bodily injury, property damage, environmental damage** or **wrongful act**, provided:

(a)   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

(b)   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Regardless of how **legal defense costs** are treated elsewhere in this Policy, any coverage afforded under subparagraph (b) for reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured shall reduce the applicable limits of liability in section XXI. LIMITS OF LIABILITY AND DEDUCTIBLE.

This Exclusion does not apply to Coverage 1B (Personal and Advertising Injury Liability), which is subject to its own Contractual Liability exclusion.

**b.**   **Covered by Project-Specific Insurance**
**Your work** if the **loss** is covered by any project-specific insurance available to the insured.

**c.**   **Covered Under Part 1 Coverage**
**Bodily injury**, **property damage**, **environmental damage**, **cleanup costs** or **emergency expenses** to which any Part 1 Coverage applies or is held to apply.

**d.**   **Criminal Fines, Penalties or Assessments**
Criminal fines, criminal penalties or criminal assessments.

**e.**   **Damage to Your Product**
**Property damage** or **environmental damage** to **your product**, arising out of it or any part of it.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 58 of 136 PageID #: 63

f. **Employer's Liability**
**Bodily injury** to:

    (1) An **employee** of the insured arising out of and in the course of:

        (a) Employment by the insured; or

        (b) Performing duties related to the conduct of the insured's business; or

    (2) The spouse, child, parent, brother or sister of that **employee** as a consequence of paragraph (1) above.

        This Exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

        This Exclusion does not apply to liability assumed by the insured under an **insured contract**.

g. **Expected or Intended Injury or Damage**
**Bodily injury, property damage** or **environmental damage** expected or intended from the standpoint of the insured.  This Exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

h. **Failure to Comply**
A **responsible insured's** knowingly, willful or deliberate failure to comply with, or disregard of, any  statute, regulation, ordinance, administrative complaint, notice of violation, directive, order, or instruction made by or on behalf of any governmental body or agency, including a failure to report any **pollution condition** to the appropriate governmental agency when required by law.

This exclusion does not apply to a **responsible insured's** non-compliance that is based upon good faith reliance on written advice of outside counsel received in advance of such non-compliance.

i. **Intentional Acts**
A **responsible insured's** dishonest, fraudulent, malicious, willful, deliberate or knowingly wrongful act.

j. **Internal Expenses**
Any costs, charges or expenses incurred by any insured for goods supplied or services performed by any **temporary workers**, **volunteer workers**, staff or salaried **employees** of the insured, its parent, subsidiary or affiliate, unless and until, our consent, such consent being within our sole discretion, to incur such costs, charges or expenses is provided in writing to you.

k. **Known Pollution Condition, Injury or Damage**
Any **pollution condition**, **bodily injury**, **property damage** or **environmental damage** that was known to any **responsible insured** as of the **inception date**. This Exclusion does not apply to **pollution conditions** listed in any Schedule of Known Pollution Condition Endorsement attached to this Policy.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 59 of 136 PageID #: 64

**l.    Nuclear Material**

    (1)    The radioactive, toxic or explosive properties of nuclear material and with respect to which:

        (a)    any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof;  or

        (b)    the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

    (2)    The actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of any radioactive matter or material arising out of **your product**.

**m.   Transportation Activities**
The ownership, maintenance, use, or entrustment to others of any **conveyance** beyond the legal boundaries of a **job site**, **waste disposal facility**, **non-owned location**, **unscheduled site** or **scheduled site**.  However, this Exclusion does not apply to Coverage 2B (Transportation Pollution Liability).

**n.    Your Product**
**Your product**.  However, this Exclusion does not apply to:

    (1)    **your products** that are still possessed or controlled by you or by others directly on your behalf, or

    (2)    **your products** that are installed as part of **your work** at a **job site**.

**o.    War**

    (1)    War, including undeclared or civil war;

    (2)    War-like action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3)    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p.    Waste Disposal Facilities**
The disposal of any products or materials, including **waste**, that have been delivered to any location or facility that is not owned, operated, leased, rented or occupied by you for the purpose of treatment, storage, processing, recycling or disposal. However, this Exclusion does not apply to Coverage 2C (Pollution Liability For Waste Disposal Facilities And Scheduled Non-Owned Locations).

**q.    Workers' Compensation and Similar Laws**
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 60 of 136 PageID #: 65

## XVIII.  DEFENSE – SPECIAL POLLUTION COVERAGES

The following applies to purchased Part 2 Coverages only.

We have the right and duty to defend the insured against a **suit** seeking damages to which this insurance applies.  We have no duty to defend the insured against any **claim** or **suit** seeking damages to which this insurance does not apply.  Our duty to defend ends when the applicable Limit of Liability has been exhausted by the payment of **loss**.  Solely with respect to Coverage 2D (Pollution Liability for Your Sites), **legal defense costs** are included in **loss** and reduce the applicable limits of liability.  We may, at our discretion, investigate any **pollution condition** and settle any **claim** or **suit** that may result.

## XIX.  COVERAGE 3 – PROFESSIONAL LIABILITY – CLAIMS MADE AND REPORTED

Coverage 3 - Professional Liability only applies if shown as purchased in the Declarations.

1.  **Insuring Agreement**
    We will pay on behalf of the insured **loss** that the insured becomes legally obligated to pay because of a **claim** for a **wrongful act** in the rendering of or failure to render **professional services**, provided:

    a.  The **wrongful act** was committed on or after the **retroactive date**, if applicable, and before the end of the **policy period**;

    b.  A **claim** is first made against an insured during the **policy period**; and

    c.  The **claim** is first reported to us, in writing, during the **policy period** or any applicable Extended Reporting Period.

    If a **claim** is first made against an insured and reported to us during this **policy period,** then, provided you have maintained Professional Liability coverage with us or **our affiliate** on a continuous, uninterrupted basis, all **claims** first made against an insured and reported to us during a subsequent policy period that arise out of the same, related, continuous or repeated **wrongful act(s)** that gave rise to a **claim** first made against an insured and reported to us during this **policy period**, will be deemed to have been first made against the insured and reported to us during this **policy period**.  All such **claims** will be subject to the applicable limits, deductible, terms and conditions of this Policy.

2.  **Specific Exclusions**
    The following exclusions apply to all Coverage 3 coverages except where indicated.
    Coverage 3 does not apply to any **claim** arising out of:

    a.  **Aircraft, Auto or Watercraft**
        The ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and **transportation**.

        This Exclusion applies even if the **claims** against an insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 61 of 136 PageID #: 66

**b.** **Bankruptcy**
The bankruptcy or insolvency of an insured or of any other person, firm or organization.

**c.** **Contractual Liability**
**Bodily injury** or **property damage** for which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement. However, this Exclusion does not apply to liability that the insured would have in absence of the contract or agreement.

**d.** **Covered by Project-Specific Insurance**
**Professional Services** if the **loss** is covered by any project-specific insurance available to the insured.

**e.** **Discrimination**
Discrimination by an insured on the basis of race, creed, national origin, disability, age, marital status, gender or sexual orientation.

**f.** **Dishonest or Fraudulent Act**
A dishonest, fraudulent, criminal or malicious act, error or omission committed by or at the direction of a **responsible insured**.

**g.** **Disputed Fees**
Disputes over the insured's fees or charges or **claims** for the return of fees or charges.

**h.** **Employer's Liability**
**Bodily injury** to:

(1) An **employee** of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that **employee** as a consequence of subparagraph (1) above.

This Exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**i.** **Failure to Comply**
Failure to comply with any applicable federal, state, local or provincial statute, regulation, ordinance, order or instruction, if such failure is a willful or deliberate act or omission of a **responsible insured.**

**j.** **Failure to Maintain**
The insured's requiring, obtaining, maintaining, advising or failing to require, obtain, maintain or advise of any bond, surety ship or any form of insurance or self-insurance.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**k.   Faulty Workmanship**
Cost to repair or replace faulty workmanship, assembly, construction, erection, fabrication, installation, or remediation if such work is performed in whole or in part by an insured or anyone for whom the insured is or is alleged to be legally responsible.

**l.   Fiduciary Liability of Non-Named Insured**

(1)   An insured's acting as a partner, officer, director, stockholder, employer or **employee** of an entity that is not a Named Insured; or

(2)   An insured's acting as a fiduciary under the Employee Retirement Income Security Act of 1974 and any amendments thereto, or any regulation or order issued pursuant thereto, or any other employee benefit plan.

**m.   Fines, Penalties and Assessments**
Civil, administrative or criminal fines or penalties imposed directly against an insured.

**n.   Insured versus Insured**
A **claim** brought by or on behalf of any insured against any other insured.

**o.   Intellectual Property**
Actual or alleged misappropriation of trade secrets of infringement of paten, copyright, trademark, service mark or any other intellectual property right.

**p.   Internal Expenses**
Any costs, charges or expenses incurred by any insured for goods supplied or services performed by any **temporary workers**, **volunteer workers**, staff or salaried **employees** of the insured, its parent, subsidiary or affiliate.

**q.   Known Wrongful Act**
A **wrongful act** known by a **responsible insured** prior to the **inception date** and which reasonably could be expected to give rise to **claim** under this Policy.

**r.   Nuclear Material**

(1)   The radioactive, toxic or explosive properties of nuclear material and with respect to which:

(a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(2)   The actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of any radioactive matter or material arising out of **your product**.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**s.** **Owned Facilities**

Any **location** or facility that is or was owned, occupied, operated by or rented or leased to you or any entity that: (i) has any ownership interest or operates, manages or otherwise controls you; or (ii) in which you have any ownership interest or which you operate, manage or otherwise control.

**t.** **Personal and Advertising Injury**

Personal and advertising injury.

**u.** **Previously Reported Claims**

The same, related, continuous or repeated **wrongful act(s)** that were the subject of a **claim** reported under any policy of insurance issued prior to this policy irrespective of whether of this policy is a renewal or replacement of such prior policy, and irrespective of whether or not such prior policy affords coverage for such **claim**.

**v.** **Project Delays or Cost Overruns**

Failure to complete any project on schedule or exceeding by any insured of any project cost estimate.

**w.** **War**

(1)   War, including undeclared or civil war;

(2)   War-like action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3)   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**x.** **Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**y.** **Warranties**

Express warranties or guarantees.  This Exclusion shall not apply if liability would have in the absence of such express warranties and guarantees.

**z.** **Your Product**

The design or manufacture of your product.

**3.** **Defense – Coverage 3 – Professional Liability**

We have the right and duty to defend the insured against a **suit** seeking damages to which this insurance applies.  We have no duty to defend the insured against any **suit** seeking damages to which this insurance does not apply.  Our right and duty to defend ends when we have used up the applicable Limit of Liability in the payment of **loss**. **Legal defense costs** are included in **loss** and reduce the applicable limits of liability. We may, at our discretion, investigate any **wrongful act** and settle any **claim** or **suit** that may result.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 64 of 136 PageID #: 69

**XX.  WHO IS AN INSURED**

**Applicable to Coverage Part 1 and Part 2:**

Each of the following is an insured under Coverage Part 1 and Part 2:

1.  If you are designated in the Declarations as:

    a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b.  A partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

    d.  An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your **executive officers** and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

    e.  A trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees.

2.  With respect to all coverages other than Coverage 1F (Employee Benefits Administration Liability), each of the following is also an insured:

    a.  Your **volunteer workers**, but only while performing duties related to the conduct of your business, or your **employees,** other than either your **executive officers** (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these **employees** or **volunteer workers** is an insured for:

        (1)  **Bodily injury** or **personal and advertising injury**:
            (a)  To you, to your partners or members (if you are a partnership or joint venture), or to your members (if you are a limited liability company);

            (b)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraph (1) (a) above; or

            (c)  Arising out of the providing or failure to provide professional health care services except incidental health care services provided by any physician, dentist, nurse, emergency medical technician or paramedic who is employed by you to provide such services and provided you are not engaged in the business of providing such services.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 65 of 136 PageID #: 70

      (2)   **Property damage** or **environmental damage** to property:
          (a)  Owned, occupied or used by; or

          (b)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your **employees**, **volunteer workers**, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your **employee** or **volunteer worker**), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

    (1)   With respect to liability arising out of the maintenance or use of that property; and

    (2)   Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Policy.

**3.** Any subsidiary, associated, affiliated or allied company or corporation, including subsidiaries thereof, of which you have more than 50% ownership interest as of the **inception date** is a Named Insured; however, such entities shall cease to be a Named Insured if you cease to maintain more than a 50% ownership interest.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the **policy period**, whichever is earlier;

**b.** Coverage under this Policy does not apply to any **bodily injury**, **property damage**, **environmental damage** or **pollution condition** that took place, or an offense or **wrongful act** committed, before you acquired or formed the organization.

**5.** Any person or organization with whom you agree to include as an insured pursuant to a written contract, written agreement or permit is an insured, but:  (i) only with respect to **bodily injury**, **property damage**, **personal  and advertising injury**, **environmental damage** or **clean-up costs** caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf and arising out of your operations, **your work**, equipment or premises leased, rented or owned by you, or **your products** which are distributed or sold in the regular course of a vendor's business; (ii) only for the lesser of the applicable limits of liability set forth in section XXI. LIMITS OF LIABILITY AND DEDUCTIBLE or the minimum limits of liability required by such written contract; (iii) the insurance afforded only applies to the extent permitted by law; (iv) the insurance afforded will not be broader than that which you are required by the contract or agreement to provide for such insured. However:

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 66 of 136 PageID #: 71

   **a.**   A vendor is not an insured as respects **bodily injury**, **property damage**, **environmental damage** or **clean-up costs** arising out of:

      (1)   Damages the vendor is obligated to pay by reason of the assumption of liability in a contract or agreement except for any damages that the vendor would have been obligated to pay in the absence of the contract or agreement;

      (2)   Any express warranty unauthorized by you;

      (3)   Any physical or chemical change in the product made intentionally by the vendor;

      (4)   Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from you, and then repackaged in the original container;

      (5)   Any failure to make inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

      (6)   Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's location in connection with the sale of the product;

      (7)   Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

      (8)   The sole negligence of the vendor for its own acts or omissions or those of its **employees** or anyone else acting on its behalf.  However, this subparagraph does not apply to:

          (a)  the exceptions contained in subparagraphs (4) or (6) above; or

          (b) such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**6.**   A manager or lessor of premises, a lessor of leased equipment, or a mortgagee, assignee, or receiver is not an insured as respects **bodily injury, property damage, environmental damage, personal and advertising injury** or **clean-up costs**:

      **a.**   Arising out of any **occurrence,** offense, **pollution condition**, or **wrongful act** that takes place after the equipment lease expires or you cease to be a tenant; or

      **b.**   Arising out of structural alterations, new construction or demolition operations performed by or on behalf of the manager or lesser of premises, or mortgagee, assignee, or receiver.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**7.** Solely with respect to Coverage 1F (Employee Benefits Administration Liability), each of the following is an insured:

    **a.** Each of your **employees** who is or was authorized to administer your **employee benefits program**.

    **b.** Any persons, organizations or **employees** having proper temporary authorization to administer your **employee benefits program** if you die, but only until your legal representative is appointed.

**8.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### Applicable to Coverage 3 – Professional Liability

The following person(s) or entity(ies) are an insured under Coverage 3 - Professional Liability:

**1.** the **first named insured** and other named insured(s) expressly added to Item 1 of the Declarations;

**2.** any of your current or former directors, officers, partners, members, **employees**, or shareholders, as applicable, while acting within the scope of his or her duties as such, but only while rendering **professional services** on behalf of a named insured; and

**3.** the estate, heirs, executors, administrators and legal representatives of each named insured in the event of death, incapacity or bankruptcy of such insured, but only with respect to liability arising out of **professional services** rendered by a named insured prior to such death, incapacity or bankruptcy, and only to the extent that coverage would have been provided under Coverage 3 - Professional Liability.

## XXI. LIMITS OF LIABILITY AND DEDUCTIBLE

Regardless of the number of **claims**, **suits**, claimants or insureds, the following limits of liability apply:

**1. Limits Applicable to Part 1 Coverages**

    **a. General Aggregate Limit and General Aggregate Cap**

        (1) The General Aggregate Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** under all Part 1 Coverages except: (i) damages because of **bodily injury**, **property damage** or **environmental damage** included in the **products-completed operations hazard**, and (ii) **crisis management costs** that result from a **crisis management event** arising directly from **your product**.

        (2) Subject to subparagraph (3) below, the General Aggregate Limit applies separately to:

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 1:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

    (a) **loss** covered under Coverages 1A and 1E arising from **occurrences** at any one **location** that you own or rent; and

    (b) **loss** covered under Coverages 1A and 1E arising from your on-going operations at any one **job site**.

(3)   Regardless of the number of **locations** or **job sites**, the General Aggregate Cap set forth in Item 3 of the Declarations is the most we will pay for all **loss** under all Part 1 Coverages except: (i) damages because of **bodily injury**, **property damage** or **environmental damage** included in the **products-completed operations hazard,** and (ii) **crisis management costs** that result from a **crisis management event** arising directly from **your product**.

.

**b.**   **Products–Completed Operations Aggregate Limit**
The Products-Completed Operations Aggregate Limit set forth in Item 3 of the Declarations is the most we will pay for all: (i) damages under Coverages 1A and 1D because of **bodily injury**, **property damage** or **environmental damage** included in the **products-completed operations hazard**, and (ii) **crisis management costs** that result from a **crisis management event** arising directly from **your product**.

**c.**   **Each Occurrence Limit**
Subject to Paragraph **1.a.** or **1.b.** above, whichever applies, the Each Occurrence Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** under Coverages 1A, 1C, 1D and 1E arising out of the same, related, continuous or repeated **occurrence(s)** or **pollution condition(s)**.

**d.**   **Personal and Advertising Injury Limit**
Subject to Paragraph **1.a.** above, the Personal and Advertising Injury Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** under Coverage 1B sustained by any one person or organization.

**e.**   **Employee Benefits Administration Limit**
Subject to Paragraph **1.a.** above, the Employee Benefits Administration Limit of Liability set forth in Item 3 of the Declarations is the most we will pay under Coverage 1F for all **loss** sustained by any one **employee**, including **loss** sustained by such **employee's** dependents and beneficiaries, arising out of the same, related, continuous or repeated **wrongful act(s)**.

However, the amount paid under this Policy shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the **employee benefits program**.

**f.**   **Crisis Management Costs Limit – Coverage 1G**
Subject to Paragraph **1.a.** or **1.b.** above, whichever applies, the Crisis Management Costs Limit set forth in Item 3 of the Declarations is the most we will pay for all **crisis management costs** under Coverage 1G.

**g.**   **Damage to Premises Rented to You Limit**
Subject to Paragraph **1.c.** above, the Damage to Premises Rented to You Limit set forth in Item 3 of the Declarations is the most we will pay under Coverage 1A for all **loss** because of **property damage** to any one premises, while rented to

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 69 of 136 PageID #: 74

you, or in the case of damage by fire while rented to you or temporarily occupied by you with permission of the owner.

    **h.**    **Medical Expense Limit**
        Subject to Paragraph **1.c.** above, the Medical Expense Limit set forth in Item 3 of the Declarations is the most we will pay under Coverage 1C for all **loss** because of **bodily injury** sustained by any one person.

**2.**    **Limits Applicable to Part 2 Coverages – Special Pollution Coverages**

    **a.**    **Pollution Liability Aggregate Limit**
        The Pollution Liability Aggregate Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** under all Part 2 Coverages (Special Pollution Coverages).

    **b.**    **Individual Coverage Limits**
        Subject to Paragraph **2.a.** above, the applicable Coverage Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** under the applicable Part 2 – Special Pollution Coverage.

    **c.**    **Each Pollution Condition Limit**
        Subject to Paragraphs **2.a.** and **2.b.** above, the Each Pollution Condition Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** arising out of the same, related, continuous or repeated **pollution condition(s).**

**3.**    **Limits Applicable to Coverage 3 – Professional Liability**

    **a.**    **Professional Liability Aggregate Limit**
        The Professional Liability Aggregate Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** under Coverage 3.

    **b.**    **Each Wrongful Act Limit**
        Subject to Paragraph **3.a.** above, the Each Wrongful Act Limit set forth in Item 3 of the Declarations is the most we will pay under Coverage 3 for all **loss** arising out of the same, related, continuous or repeated **wrongful act(s)**.

**4.**    **Multiple Coverage Sections**
    Subject to all applicable aggregate limits of liability, the highest applicable Each Occurrence Limit, Each Pollution Condition Limit or Each Wrongful Act Limit is the most we will pay under all Coverages arising out of any combination of the same, related, continuous or repeated **occurrences, pollution conditions** or **wrongful acts.**

**5.**    **Multiple Policies or Policy Periods**
    The following applies to all Part 1 and 2 Coverages except Coverages 2C and 2D:

    **a.**    All progressive or indivisible **bodily injury, property damage** or **environmental damage**, including any continuation, change or resumption of such injury or damage, which occurs over a period of days, weeks, months or longer caused by continuous or repeated exposure to the same, related, continuous or repeated **occurrence(s)** or **pollution condition(s)** shall be deemed to have occurred only on the date of first exposure to such **occurrence** or **pollution condition.**

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

2021-CV-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 70 of 136 PageID #: 75

However, if the date of first exposure cannot be determined and the **bodily injury, property damage** or **environmental damage** continues in fact during this **policy period**, all such injury or damage shall be deemed to have occurred during the policy period of the first policy issued to you by us or **our affiliate** providing substantially the same coverage as provided by this Policy for **bodily injury, property damage** or **environmental damage** that takes place during the **policy period.**

**b.** If the same, related, continuous or repeated **occurrence(s)** or **pollution condition(s)** take place over the periods of multiple policies issued by us or **our affiliate** to you providing substantially the same coverage as provided by this Policy for **bodily injury**, **property damage** or **environmental damage** that takes place during the **policy period**:

(1) all such **bodily injury**, **property damage** or **environmental damage** shall be deemed to have taken place only during the policy period of the first such policy in which any of the **bodily injury**, **property damage** or **environmental damage** took place; and

(2) all **loss** arising from all such **bodily injury**, **property damage** or **environmental damage** shall be deemed to have arisen from one **occurrence** or **pollution condition** and shall be subject to the limits of liability in effect for such first policy period.

**6. Extension of Policy Period**
The Limits of Liability apply to the entire **policy period**.  Any extension of the **policy period** that occurs after the **inception date** shall be deemed part of the preceding period for the purposes of determining the applicable Limits of Liability.

**7. Deductible**
We will pay **loss** in excess of the applicable Deductible set forth in Item 3 of the Declarations.  Deductible payments do not erode the Limits of Liability.

A separate Deductible will apply to:

**a.** each **occurrence**, **pollution condition** or **wrongful act**;

**b.** the same, related, continuous or repeated **occurrence(s)**, **pollution condition(s)** or **wrongful act(s)**; or

**c.** any combination of **a.** and **b.** above.

For Coverage 1B (Personal and Advertising Injury Liability), the Deductible applies to all **personal and advertising injury** sustained by any one person or organization.  For Coverage 2D and Coverage 3, the Deductible includes **legal defense costs**.  If the same, related, continuous or repeated **occurrence(s)**, **pollution condition(s)** or **wrongful act(s)** results in application of more than one Coverage, only the highest applicable Deductible shall apply.

Upon our request, the **first named insured** shall promptly reimburse us for advancing any portion of the Deductible we have paid.  In the event that the **first named insured** does not promptly reimburse us for any Deductible amount so advanced, any costs incurred by us in the collection of those amounts shall

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 71 of 136 PageID #: 76

be added to the Deductible amounts due to us including, but not limited to, collection agency fees, attorney fees and interest.

## XXII.  NOTICE, RIGHTS AND DUTIES

**1.    Your Duties in the Event of an Occurrence, Offense, or Wrongful Act**
It is a condition precedent to coverage that you give us written notice as soon as practicable of any **occurrence**, offense, or **wrongful act** which may result in a **claim.** To the extent practicable, such notice should include:

**a.**    How, when and where the **occurrence**, offense, or **wrongful act** took place;

**b.**    The names and addresses of any injured persons and witnesses; and

**c.**    The nature and location of any injury or damage arising out of the **occurrence**, offense, or **wrongful act**.

Notice of an **occurrence**, offense, or **wrongful act** is not notice of a **claim**.

**2.    Your Duties in the Event of a Pollution Condition**

**a.**    It is a condition precedent to coverage that you give us written notice of a **pollution condition** as soon as practicable.  Written notice shall contain all of the following information:

(1)    The cause of the **pollution condition**;

(2)    The address of the **location** where the **pollution condition** took place;

(3)    The circumstances under which and the date the insured first became aware of the **pollution condition**;

(4)    **Bodily injury**, **property damage, environmental damage** or **cleanup costs** which have resulted or may result from such **pollution condition**;

(5)    The name of all insureds that may be subject to a **claim** and all potential claimants;

(6)    All engineering information available relating to the **pollution condition**; and

(7)    Any other information that we deem reasonably necessary and is reasonably available to the insured.

**b.**    You shall have the duty to mitigate and clean up any **pollution condition** to the extent required by **environmental laws**, including retaining appropriate **environmental professionals**.  We may exercise our right to require that such **environmental professionals** have certain professional qualifications, including experience with similar **pollution conditions** and **cleanup costs**.  We shall have the right but not the duty to review and approve all aspects of any such cleanup.  You shall notify us of actions and measures taken pursuant to this Paragraph.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 72 of 136 PageID #: 77

3. **Our Rights in the Event of a Pollution Condition**
We shall have the right, but not the duty, to clean up or mitigate a **pollution condition** upon receiving notice as provided under Paragraph **2.** above.  Any sums we expend in taking such action shall be deemed incurred or expended by the insured and shall be applied against the Limits of Liability and Deductible of this Policy.  Further, we shall have the right, but not the duty, to participate in decisions regarding **cleanup costs** and to assume direct control over all aspects of the cleanup and the adjustment of any **claim** or **emergency expenses** up to the applicable Limits of Liability.  If we exercise this right, the insured shall promptly reimburse us for any element of **loss** falling within the Deductible.

4. **Your Duties in the Event of a Claim or Suit**
Without limiting the requirements of any insuring agreement in this Policy, you shall give us written notice of any **claim** made or **suit** brought against an insured as soon as practicable. Such written notice shall include the following:

    **a.** All reasonably obtainable information with respect to the circumstances of the **claim** or **suit**, and the names and addresses of the claimants and available witnesses;

    **b.** All demands, summonses, notices or other process or legal papers received in connection with the **claim** or **suit**; and

    **c.** Other information in the possession of the insured or its hired experts which we deem reasonably necessary.

5. **Your Duties with Respect to Emergency Expenses**
Within ten (10) days of the first discovery of the **pollution condition** for which **emergency expenses** have been incurred, you shall forward to us all information pertaining to the **emergency expenses** incurred.  Such information shall include, to the extent reasonably available, the cause and location of the **pollution condition**, costs incurred and all associated invoices, technical reports, laboratory data, field notes, expert reports, investigations, data collected, regulatory correspondence or any other documents relating to the **emergency expenses** incurred.

6. **Knowledge of an Occurrence**
Knowledge of an **occurrence**, offense, **pollution condition** or **wrongful act** by any of your agents, servants or **employees**, or any other person shall not it itself constitute knowledge by you unless a **responsible insured** or a manager or equivalent level employee in your Risk Management, Insurance or Law Department possesses such knowledge.

7. **Mistaken Notice**
If you mistakenly notify another insurer rather than us of an **occurrence**, offense, **pollution condition** or **wrongful act**, such mistaken failure to notify us shall not invalidate coverage so long as you notify us of the **occurrence**, offense, **pollution condition** or **wrongful act** within a reasonable time after you become aware of such error.

## XXIII.  CONDITIONS

1. **Action against Company**
No person or organization other than an insured has a right under this Policy:

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**a.** To join us as a party or otherwise bring us into a **suit** against any insured; or

**b.** To sue us, in connection with this insurance unless all of this Policy's terms have been fully complied with.

However, a person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for any **loss** that is not payable under the terms of this Policy or that is in excess of the applicable Limit of Liability.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**2. Appeals**

At our discretion, we may appeal any judgment that would result in a payment under this Policy.  When we appeal, we will pay all costs associated with the appeal in addition to the limits of liability.  Any such appeal will not increase our limits of liability.

**3. Bankruptcy**

Bankruptcy or insolvency of an insured or an insured's estate shall not relieve us of our obligations under this Policy.  However, any such insolvency or bankruptcy of an insured or an insured's estate shall not increase our obligations including, but not limited to, those with respect to any Deductible.

**4. Cancellation**

The **first named insured** may cancel this Policy by delivery thereof to us or our authorized agent, or by mailing to us written notice stating when thereafter the cancellation shall be effective.  We may cancel this Policy by mailing to the **first named insured** at the address shown in Item 1 of the Declarations, a notice stating when such cancellation shall be effective.  We may cancel this Policy for the following reasons only:

**a.** Non-payment of premium;

**b.** Fraud or material misrepresentation; or

**c.** A material change in the use of, or operations conducted at, any **scheduled site** that would materially increase the risk insured hereunder.

The time of delivery or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**.  Delivery of such written notice either by the **first named insured** or by us shall be equivalent to mailing.  Proof of mailing such notice shall be sufficient proof of notice.

We shall provide notice of cancellation not less than:

(1) ten (10) days prior to the effective date of cancellation for non-payment of premium; or

(2) sixty (60) days prior to the effective date of cancellation for fraud, material misrepresentation or a material change in the use of, or operations conducted at, any **scheduled site** that would materially increase the risk insured hereunder.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 74 of 136 PageID #: 79

5.  **Changes and Assignment**
    The terms, definitions, conditions, exclusions and limitations of this Policy shall not be waived or changed, and no assignment of any interest in this Policy shall bind us, except as provided by an endorsement issued by us and attached to this Policy.

6.  **Consent**
    Where our consent or your consent is required under this Policy, such consent shall not be unreasonably withheld, delayed, conditioned or denied.

7.  **Cooperation**
    The insured shall assist and cooperate with us in the investigation, adjustment, defense or settlement of any **claim** or **suit**, including participating in meetings, testifying at hearings, depositions and trials, securing evidence, assisting us with investigating the existence of and procuring access to any other applicable insurance coverage and providing any written statements as we may require.

8.  **Currency**
    Any reimbursement we make under this Policy will be made in U.S. currency at the prevailing exchange rate on the date the judgment is rendered, or the date the amount of the settlement is agreed upon, or the date any other reimbursable expenditure is made by the insured, whichever is most applicable.

9.  **Declarations and Representations**
    By acceptance of this Policy, you agree that:

    a.  The statements contained in the Declarations, the Application and any supplemental materials and information submitted in connection with the Application or any amendments to the policy during the **policy period**, are your statements and representations;

    b.  This Policy is issued in reliance upon the truth of such statements and representations;

    c.  The statements and representations provided to us contain no material omissions; and

    d.  This Policy embodies all agreements existing between you and us relating to the coverage provided hereunder.

10. **Economic and Trade Sanctions**
    This Policy shall not apply to any risk which would be in violation of the laws of the United States including, but not limited to, U.S. economic or trade sanction laws or export control laws administered by the U.S. Treasury, State, or Commerce Departments.

11. **Headings**
    The descriptions in the headings and sub-headings of this Policy are included solely for convenience and form no part of this Policy's terms and conditions.

12. **Independent Counsel**
    In the event an insured is entitled by law to select independent counsel to represent or defend an insured at our expense, the attorney's fees and all other litigation expenses incurred by us shall be limited to the rates we would pay to counsel normally retained by us in the ordinary course of business when defending similar **claims** in the jurisdiction

where the **claim** arose or is being defended. In addition, we may exercise our right to require that such counsel:

    **a.**    meet certain minimum qualifications with respect to competency, including possessing a minimum of five (5) years experience in defending **claims** similar to those asserted against the insured;

    **b.**    maintain suitable errors and omissions insurance coverage; and

    **c.**    agree, in writing, to respond in a timely manner to our requests for information regarding the **claim**.

    An insured may, at any time, waive any right it may have to select independent counsel.

**13.**    **Inspection and Audit**

With reasonable notice to you, we shall be permitted, but not obligated, to inspect, sample and monitor on a continuing basis your property, equipment and/or operations. Neither our right to make inspections, sample and monitor, nor the actual undertaking thereof, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of you or others, to determine or warrant that such property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with **environmental laws**, or any other law, rule or regulation. Further, the **first named insured** agrees on behalf of all insureds, to grant us both the right to interview, and access to, any insured whom we reasonably believe may have relevant information pertaining to any **claim** or **pollution condition** potentially covered under this Policy.

**14.**    **Other Insurance**

If other valid and collectible insurance is available for any **loss** subject to coverage under this Policy, our obligations are limited as follows:

    **a.**    **Primary Insurance**

    Except as provided in paragraph **b.** below, this insurance is primary. When this insurance is primary, our obligations are not affected unless any of the other insurance is also primary, in which case we will share with all other primary insurance by the method described in paragraph **c.** below. However, in the event that a written contract, written agreement or permit requires this insurance to be primary for any person or organization that you agreed to insure, and provided such person or organization is an insured under this Policy, this insurance will be primary and we will not seek contribution from any other insurance issued to such person or organization.

    **b.**    **Excess Insurance**

    This insurance is excess over:

    (1)    Any other insurance, whether primary, excess, contingent or on any other basis that is: (i) Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for **your work**; (ii) Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; (iii) insurance purchased by you to cover your liability as a tenant for **property damage** to premises rented to you or temporarily occupied by you with permission of the owner; or (iv) insurance applicable to **loss** arising out of the maintenance or use of aircraft, **autos** or watercraft;

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 76 of 136 PageID #: 81

(2) Notwithstanding the provisions of paragraph **a.** above, any other primary insurance available to you covering liability for damages arising out of the premises or operations, the **products-completed operations hazard**, **your work**, **transportation**, **waste disposal facility**, **non-owned location**, **scheduled site** or **unscheduled site** for which you have been added as an additional insured; or

(3) Any insurance:

    (a) available to the insured and issued, or applicable to, any territory outside the United States of America, its territories and possessions, Puerto Rico and Canada; or

    (b) required by law, regulation or other governmental authority in any country or jurisdiction outside the United States of America, its territories and possessions, Puerto Rico and Canada.

When this insurance is excess:

    (a) We will have no duty to defend the insured against any **suit** if any other insurer has a duty to defend the insured against that **suit**; however

    (b) If no other insurer has a duty to defend, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

    When this insurance is excess over other insurance, we will pay only our share of the amount of **loss**, if any, that exceeds the sum of the: (i) total amount that all such other insurance would pay for the **loss** in the absence of this insurance; and (ii) total of all deductibles, retained and self-insured amounts under all that other insurance.  Then, we will share the remaining **loss**, if any, with any other insurance that is not described in this subparagraph (b) and was not bought specifically to apply in excess of the applicable Limits of Liability of this Policy.

**c.   Method of Sharing**
If all of the other insurance permits contribution by equal shares, we also will follow such method. Under this method, each insurer contributes equal amounts until it has paid its limit of liability or no **loss** remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its limit of liability to the total applicable limits of insurance of all insurers.

**15.   Separation of Insureds**
Except with respect to the Limits of Liability, Deductible, Insured versus Insured exclusion, and any rights and duties specifically assigned to the **first named insured**, this insurance applies:

**a.**   As if each Named Insured were the only Named Insured; and

**b.**   Separately to each insured against whom a **claim** is made.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 77 of 136 PageID #: 82

Misrepresentation or concealment by one insured shall not prejudice the interest or coverage for another insured under this Policy, except where such latter insured is a parent, subsidiary, or affiliate of the insured that committed such misrepresentation or concealment.  For the purposes of this condition, an "affiliate" means an entity that directly or indirectly is controlled by, or is under common control with, the insured that committed such misrepresentation or concealment. Notwithstanding the forgoing, nothing stated herein shall preclude us from seeking and obtaining rescission of this Policy in the event of a material misrepresentation in the application for insurance. In addition, nothing stated herein shall operate to increase the limit(s) of liability provided hereunder.

16. **Sole Agent**
The **first named insured** shall act on behalf of all insureds for the payment of the Deductible, payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation, and the exercise of the rights provided in section XXIV. EXTENDED REPORTING PERIODS.

17. **Subrogation**
In the event of any payments made pursuant to this Policy, we shall be subrogated to any insured's rights of recovery against any person, entity or organization.  The insured shall execute and deliver instruments and papers and do whatever is necessary to secure and perfect such rights.  No insured shall do anything to prejudice such rights.

Any recovery obtained as a result of subrogation, after such expenses incurred in the subrogation proceedings are deducted by us, shall accrue first to the insured to the extent of any payments in excess of the Limit of Liability; then us to the extent of any payments made under this Policy; and then to the insured to the extent of its Deductible.

However, solely with respect to Coverage Part 1 or Coverage Part 2, if the insured has waived rights of recovery against any person, entity or organization prior to a **loss** or **claim**, we waive any right to recovery we may have under the policy against such person, entity or organization.

18. **Voluntary Payments**
The insured shall not settle any **claim** or **suit** or, with the exception of **emergency expenses**, make any voluntary payments without our prior written consent.  If we recommend a settlement, the insured shall have the opportunity to consent to it, such consent not to be unreasonably withheld or delayed.  If we recommend a settlement that is acceptable to a claimant for a total amount in excess of the applicable Deductible and within the applicable Limits of Liability and the insured refuses to consent to such settlement, then our liability for **loss** shall be limited to that portion of the recommended settlement, and the **legal defense costs** incurred as of the date of the insured's refusal, which exceeds the Deductible and falls within the applicable Limit of Liability.

## XXIV.   EXTENDED REPORTING PERIODS

This section XXIV. applies to Coverages 2C, 2D and 3 only.

1. We will provide one or more Extended Reporting Periods, as described below, if this Policy is terminated for any of the following reasons:

    a. Cancellation by us for any reason other than failure to pay a premium when due or fraud or material misrepresentation;

**b.**   Non-renewal by us; or

**c.**   Cancellation by you and you had not purchased any other insurance to replace this insurance.

**2.**   Extended Reporting Periods apply only to **pollution conditions** and **wrongful acts** that commenced on or after any applicable **retroactive date** and before the end of the **policy period**.  Extended Reporting Periods do not extend the **policy period** or change the scope of coverage provided.  Once in effect, Extended Reporting Periods may not be canceled.  Neither the Automatic Extended Reporting Period nor the Optional Extended Reporting Period, if purchased, reinstates or increases any applicable Limit of Liability.

**3.**   Automatic Extended Reporting Period

**a.**   A ninety (90) day Automatic Extended Reporting Period is automatically provided without additional charge.  The Automatic Extended Reporting Period starts with the end of the **policy period**.

**b.**   A **claim** first made against an insured during the **policy period** and first reported to us during the Automatic Extended Reporting Period shall be deemed to have been first reported to us on the last day of the **policy period**.

**c.**   If the Optional Extended Reporting Period is purchased, the Automatic Extended Reporting Period shall not apply.

**4.**   Optional Extended Reporting Period

**a.**   The **first named insured** shall be entitled to purchase an Optional Extended Reporting Period of up to three (3) years in duration.  The Optional Extended Reporting Period starts with the end of the **policy period**.

The **first named insured** must make a written request to us for an Optional Extended Reporting Period Endorsement within thirty (30) days after the end of the **policy period**.  The Optional Extended Reporting Period will not go into effect unless the **first named insured** pays the additional premium within thirty (30) days of making the request for an Optional Extended Reporting Period Endorsement. The charge for the Optional Extended Reporting Period shall not exceed two hundred percent (200%) of the total premium for this Policy set forth in Item 4 of the Declarations, as modified by any premium adjustments during the **policy period**.

**b.**   A **claim** first made against an insured during the **policy period** or the Optional Extended Reporting Period, and first reported to us during the Optional Extended Reporting Period, shall be deemed to have been first made against an insured and first reported to us on the last day of the **policy period**.

**c.**   At the commencement of the Optional Extended Reporting Period, the entire additional premium shall be deemed fully earned.

**d.**   The Optional Extended Reporting Period Endorsement shall set forth the terms, not inconsistent with this section, applicable to the Optional Extended Reporting Period, including a provision to the effect that the insurance afforded for **claims**

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 79 of 136 PageID #: 84

first made and reported during such period is excess over any other valid and collectible insurance available under policies in force during or after the Optional Extended Reporting Period.

## XXV. DEFINITIONS

1.  **Administration** means:

    a.  providing information to **employees**, including their dependents and beneficiaries, with respect to eligibility for or the scope of **employee benefits programs**;

    b.  handling records in connection with the **employee benefits program**; or

    c.  effecting, continuing or terminating any **employee's** participation in any benefit included in the **employee benefits program**.

    **Administration** does not include handling payroll deductions.

2.  **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a.  published notices include material placed on the Internet or on similar electronic means of communication; and

    b.  only that part of a website that pertains to your goods, products or services for the purposes of attracting customers or supporters is an **advertisement**.

3.  **Auto** means:

    a.  a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    b.  any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

    **Auto** does not include **mobile equipment.**

4.  **Bodily injury** means the following injury(ies) sustained by any person, including, if applicable, death resulting therefrom:

    a.  physical injury, sickness, disease, or illness, including the cost of medical monitoring if resulting from any of the foregoing; and mental anguish, emotional distress, or shock.

5.  **Cargo** means your goods, products or wastes, or any goods, products or wastes for which you are legally liable.

6.  **Claim** means a written notice, demand or assertion of a legal right alleging liability or responsibility on the part of an insured for **loss**, and includes a **suit**.

**7.** **Cleanup costs** means reasonable and necessary expenses, including **restoration costs**, incurred with our prior written consent which shall not be unreasonably withheld or delayed, to investigate, remove, treat, remediate, neutralize or immobilize a **pollution condition**, including associated monitoring or disposal costs, to the extent:

    **a.** required by **environmental laws** or if no applicable laws exist, to the extent recommended in writing by an **environmental professional**; or

    **b.** actually incurred by the government or any political subdivision of the United States of America or any state thereof, or by third parties.

**8.** **Conveyance** means any **auto**, railcar, train, watercraft or aircraft, provided the person or entity transporting the goods, products or **waste** is both in the business of and is properly licensed to transport the materials being moved. **Conveyance** does not include pipelines.

**9.** **Coverage territory** means the following:

    **a.** The United States of America, its territories and possessions, Puerto Rico and Canada;

    **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in paragraph **a.** above; or

    **c.** Subject to paragraph **d.** below, anywhere in the world, with the exception of any country or jurisdiction listed in paragraph **a.** or **b.** above and any country in which this insurance would be in violation of the laws of the United States as set forth in section XXIII. CONDITIONS, paragraph 10. Economic and Trade Sanctions, but only if the injury or damage arises out of:

        **(1)**   **(a)** the activities of a person whose home is in the territory described in paragraph **a.** above, but is away for a short time on your business; or

            **(b)** **personal and advertising injury** offenses that take place through the internet or similar electronic means of communication, provided also that the insured's responsibility to pay any damages is determined in a **suit** on the merits, in the territory described in paragraph **a.** above or in a settlement we agree to in writing;

        **(2)** **your product**; or

        **(3)** a **pollution condition** resulting from **your work** performed for a third party at a **job site**.

    **d.** When paragraph **c.** above applies, the following conditions also apply:

        **(1)** Notwithstanding anything to the contrary in this Policy, we will have the right but not the duty to investigate and settle any **claim** and defend**,** investigate and settle any **suit** for damages. If we opt to defend any such **claim** or **suit**, subsequent to the satisfaction of any applicable deductible by you, we will pay **legal defense costs**. If we opt not to exercise the right to defend, then, notwithstanding anything to the contrary in this Policy, the following additional provisions will apply:

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 81 of 136 PageID #: 86

(a)   the insured, under our supervision and as is reasonably necessary, will arrange for investigation and defense of any such **claim** or **suit**;

(b)   the insured may, subject to our prior written consent, settle any such **claim** or **suit** as we and the insured deem expedient; and

(c)   subject to any applicable deductible or retention, we will reimburse the insured for the reasonable costs of:

(i)   the investigation and defense of such **claim** or **suit** to the extent that we would have paid such costs as **legal defense costs** had we exercised the right to defend; and

(ii)   any damages other than **legal defense costs** to which this insurance applies that the insured becomes legally obligated to pay as a result of any judgment rendered against the insured, or by a settlement effectuated in accordance with paragraph (b) above.

Any such reimbursement we make under subparagraph (i) or (ii) above is subject to section XXIII. CONDITIONS, paragraph 8. Currency.

The rules that fix both (i) the treatment of **legal defense costs** with respect to reducing the applicable Limits of Liability, and (ii) our duty to defend or to continue defending any **claim** or **suit** as applicable to any particular coverage or coverage part will apply for that particular coverage or coverage part in the same manner as outlined in this Policy, or as amended by endorsement hereto.

(2)   Any insuring agreement, coverage, or coverage part applicable to such **claim** or **suit** is hereby amended by deleting the phrase "will pay on behalf of the insured" and replacing it with "will reimburse the insured for".

(3)   This insurance shall not serve as proof of insurance: (i) in any country where non-admitted insurance is prohibited by local applicable law; or (ii) without our prior written consent.

(4)   The insured must fully maintain any coverage required by law, regulation or other governmental authority during the **policy period,** except for reduction of the limits due to payments of **claims**, damages, **loss**, or other judgments or settlement.  Failure to maintain such coverage required by laws, regulation or other governmental authority will not invalidate this insurance.  However this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

(5)   Any disputes between you and us as to whether there is coverage under this Policy must be filed in the courts of the United States, its territories or possessions.

**10.   Crisis management consultant** means a professional firm or consultant that provides crisis management services and has been approved in writing by us, the approval for which shall not be unreasonably withheld.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 82 of 136 PageID #: 87

11. **Crisis management costs** mean those reasonable and necessary fees and expenses:

    **a.** incurred by you within ninety (90) days after the **crisis management event** is discovered by you, or thereafter as approved by us in writing; and

    **b.** for services provided to you by a **crisis management consultant** for the sole purpose of assisting you with:

        (1) managing the media in direct response to a **crisis management event** to which this insurance applies; or

        (2) minimizing the economic harm to you caused by a **crisis management event** to which this insurance applies by consulting with you with respect to maintaining and restoring your company's public image or reputation.

        The insured must take reasonable steps to minimize **crisis management costs**.

12. **Crisis management event** means the public announcement or accusation by a third party that **your product**, or a **pollution condition** for which you are alleged to be legally responsible, has caused:

    **a.** **bodily injury** involving multiple third parties; or

    **b.** **property damage**, but only to the extent resulting in actual physical damage, or **environmental damage** to real properties owned by multiple third parties, provided that one of your **executive officers** has proffered, in our sole discretion, a good faith opinion that the public announcement or accusation has caused or is reasonably likely to cause economic harm to, or a material adverse effect on, your company's image or goodwill.

13. **Emergency expenses** means reasonable and necessary expenses incurred within the first ninety-six (96) hours of discovery of a **pollution condition** to abate or respond to an imminent and substantial threat to human health or the environment resulting from such **pollution condition**.

    **Emergency expenses** includes, **legal defense costs** incurred in connection with the foregoing expenses.

14. **Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**. Solely with respect to Coverage 1F (Employee Benefits Administration Liability), **employee** also means a person actively or formerly employed, on leave of absence, disabled or retired.

15. **Employee benefit program** means a program providing some or all of the following benefits to **employees**, whether provided through a plan authorized by applicable law to allow **employees** to elect to pay for certain benefits with pre-tax dollars or otherwise:

    **a.** Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an **employee** may subscribe to such benefits and such benefits are made generally available to those **employees** who satisfy the plan's eligibility requirements;

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 1:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

2:21-CV-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 83 of 136 PageID #: 88

    **b.**    Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an **employee** may subscribe to such benefits and such benefits are made generally available to all **employees** who are eligible under the plan for such benefits;

    **c.**    Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

    **d.**    Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

**16.** **Environmental damage** means (i) physical damage to biota, soil, groundwater, surface water or the atmosphere caused by a **pollution condition**, or (ii) the presence of **microbial matter**; in either case giving rise to **cleanup costs** or **emergency expenses. Environmental damage** does not include **property damage**.

**17.** **Environmental laws** means any federal, state, provincial, commonwealth, municipal or other local law, statute, directive, ordinance, rule, guidance document, regulation, and all amendments thereto, including voluntary cleanup or risk-based corrective action guidance, governing the liability or responsibilities of the insured with respect to a **pollution condition**.

**18.** **Environmental professional** means an individual designated by us or by you with our prior written consent who is currently certified or licensed in a recognized field of applicable environmental science as required by a state board or professional association and who maintains errors and omissions coverage acceptable to us.

**19.** **Executive officer** means a person holding any of the officer positions created by the insured in its charter, constitution, by-laws or any other similar governing document.

**20.** **First named insured** means the first person or entity identified in Item 1 of the Declarations.

**21.** **Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

**22.** **Illicit abandonment** means the intentional placement, abandonment or disposal on, or into a **job site**, **unscheduled site** or **scheduled site** by a person or entity that:

    **a.**    is not an insured;

    **b.**    is not affiliated by common ownership with an insured; and

    **c.**    has never maintained an ownership or operational interest in the **job site**, **unscheduled site** or **scheduled site**.

**23.** **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

    **a.**    it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 1:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 84 of 136 PageID #: 89

      **b.**    you have failed to fulfill the terms of a contract or agreement; if such property can be restored to use or rendered useful by the repair, replacement, adjustment or removal of **your product** or **your work** or your fulfilling the terms of such contract or agreement.

**24.**    **Inception date** means the first date set forth in Item 2 of the Declarations.

**25.**    **Insured contract** means:

      **a.**    With respect to all coverages other than Coverage 2D (Pollution Liability for Your Sites):

          (1)    A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **insured contract**;

          (2)    A sidetrack agreement;

          (3)    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

          (4)    An elevator maintenance agreement;

          (5)    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury**, **property damage** or **environmental damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

              Paragraph (5) does not include that part of any contract or agreement:

              (a) That indemnifies an architect, engineer, or surveyor, his agents or **employees**, for injury or damage arising out of preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; or giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

              (b) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (a) above and supervisory, inspection, architectural or engineering activities.

      **b.**    With respect to Coverage 2D (Pollution Liability for Your Sites):

          A written contract or agreement with your customer that indemnifies them for **loss** arising from the storage, handling, treatment, processing, recycling or disposal of their **waste** by you at any **scheduled site** or **unscheduled site**.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-CV-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 85 of 136 PageID #: 90

      **c.**   A written contract or agreement listed on a Schedule of Insured Contracts endorsement to this Policy.

**26.** **Job site** means a **location** where you perform **your work** other than any:

      **a.**   **scheduled site**, **unscheduled site**, **waste disposal facility** or **non-owned location**; or

      **b.**   **location** owned, operated, leased, rented, or managed by an insured, or any subsidiary or affiliate of an insured, at any time.

          However, paragraph **b.** above, does not apply to a **location** rented or leased for a short time in support of a project.

**27.** **Legal defense costs** means:

      **a.**   reasonable and necessary costs, charges and expenses including expert charges, incurred in the investigation, adjustment, defense or settlement of any **claim** or **suit**;

      **b.**   all reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the **claim** or **suit**, including actual loss of earnings up to $750 a day because of time off from work;

      **c.**   all court costs taxed against the insured in the **suit**; however, these payments do not include attorneys' fees or attorneys' expenses or sanctions taxed to, awarded against or imposed upon the insured;

      **d.**   prejudgment interest awarded against the insured on that part of the judgment we pay; if we make an offer to pay the applicable Limit of Liability, we will not pay any prejudgment interest based on that period of time after the offer;

      **e.**   all interest on the full amount of any judgment within the applicable Limit of Liability that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Liability; and

      **f.**   reasonable and necessary costs, charges and expenses including expert charges, incurred with our prior written consent, in representing the insured in an action brought by a regulatory agency with jurisdiction over **environmental laws**.

**28.** **Leased worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  **Leased worker** does not include a **temporary worker.**

**29.** **Loading or unloading** means the handling of property:

      **a.**   after it is moved from the place where it is accepted for movement into or onto an **auto**, railcar, train, watercraft or aircraft;

      **b.**   while it is in or on an **auto**, railcar, train, watercraft or aircraft; or

      **c.**   while it is being moved from an **auto**, railcar, train, watercraft or aircraft to the place where it is finally delivered.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 86 of 136 PageID #: 91

**Loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the **auto**, railcar, train, watercraft or aircraft.

30. **Location** means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

31. **Loss** means:

   a. monetary awards or settlements of compensatory damages; and

   b. solely with respect to Part 2 Coverages (Special Pollution Coverages):

      (1) civil fines, civil penalties and civil assessments for **bodily injury**, **property damage** or **environmental damage**; and

      (2) where insurable by law, punitive, exemplary or the multiplied portion of multiplied damages;

   c. solely with respect to Coverage 1C, medical expenses;

   d. solely with respect to Coverages 2C and 2D, **clean-up costs**;

   e. solely with respect to Coverages 2A, 2B, and 2D, **emergency expenses**;

   f. solely with respect to Coverages 1G and 2E, **crisis management costs**;

   g. solely with respect to Coverages 2D and 3, **legal defense costs**.

32. **Low-level radioactive waste** means waste that is radioactive but is not spent nuclear fuel, byproduct material (as defined in 10 C.F.R. § 20.1003), uranium mill tailings, transuranic radioactive waste, or classified as high-level radioactive waste by the U.S. Nuclear Regulatory Commission.

33. **Microbial matter** means mold, fungus or legionella on or within any building or structure whether or not the substance is living.

34. **Mixed waste** means **waste** containing some levels of both **low-level radioactive waste** and hazardous waste as defined in the Resource Conservation and Recovery Act, as amended.

35. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 87 of 136 PageID #: 92

    **d.**   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1)   Power cranes, shovels, loaders, diggers or drills; or

        (2)   Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.**   Vehicles not described in paragraphs **a.** through **d.** above that are not self-propelled and are maintained primarily to provide mobility to     attached equipment of the following types:

        (1)   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2)   Cherry pickers and similar devices used to raise or lower workers;

    **f.**   Vehicles not described in paragraphs **a.** through **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but are **autos**:

        (1)   Equipment designed primarily for:

            (a) Snow removal;

            (b) Road maintenance, but not construction or resurfacing; or

            (c) Street cleaning;

        (2)   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (3)   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

           **Mobile equipment** does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **autos**.

**36.**   **Natural resource damage** means injury to, destruction of, or loss of value of, fish, wildlife, biota, land, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States of America (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C § 1801 et. seq.)), any state or local government, or foreign government, or any Native American Tribe, or, if such resources are subject to a trust restriction on alienation, any members of any Native American Tribe, including the reasonable costs of assessing such injury, destruction or loss resulting therefrom.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 88 of 136 PageID #: 93

37. **Non-owned location** means any **location** where your goods or materials are legally stored on your behalf by a third party, provided the **location** is not and never was owned, operated or leased by you, your parent, subsidiary or affiliate, and the **location** is:

    **a.**    not and never was listed, or proposed to be listed, on the U.S. Environmental Protection Agency's (EPA's) Final National Priorities List (NPL), or on the Superfund or Comprehensive Environmental Response, Compensation, and Liability Information System (CERCLIS) database, or any state or provincial equivalent to the federal NPL, Superfund or CERCLIS database; and

    **b.**    listed in a Schedule of Non-Owned Locations endorsement attached to this Policy.

38. **Occurrence** means an accident, including conditions or repeated exposure to substantially the same general harmful conditions.

39. **Our affiliate** means any parent, subsidiary, affiliate, division, related company, holding company, merged company, acquired company, predecessor-in-interest or successor-in-interest of the Company, listed in the Declarations, issuing this Policy.

40. **Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

    **a.**    false arrest, detention or imprisonment;

    **b.**    malicious prosecution;

    **c.**    wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lesser;

    **d.**    oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**    use of another's advertising idea in your **advertisement**; or

    **g.**    infringing upon another's copyright, trade dress or slogan in your **advertisement**.

41. **Policy period** means the period set forth in Item 2 of the Declarations or any shorter period resulting from cancellation of this Policy.

42. **Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, toxic or hazardous substances, electromagnetic fields, chemicals, **waste**, and **microbial matter**.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

43. **Pollution condition** means:

    **a.**    the discharge, dispersal, release, or escape; or

    **b.**    **illicit abandonment**;

        of any **pollutant** into or upon land or any structure on land, the atmosphere, or any watercourse or body of water, including  groundwater, in concentrations or at levels in excess of those naturally present in the environment.

44. **Products-completed operations hazard**:

    **a.**    Includes all **bodily injury**, p**roperty damage** and **environmental damage** occurring away from premises you own or rent and arising out of **your product** or **your work,** except:

        (1)    Products that are still in your physical possession; or

        (2)    **Your work** that has not yet been completed or abandoned.  **Your work** will be deemed completed at the earliest of the following times:

            (a)    when all of **your work** called for in your contract has been completed;

            (b)    when all of the work to be done at the **job site** has been completed if your contract calls for **your work** at more than one **job site**; or

            (c)    when that part of **your work** done at a **job site** has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or placement, but which is otherwise complete, will be treated as completed.

    **b.**    Does not include **bodily injury**, **property damage** or **environmental damage** arising out of:

        (1)    **Transportation** of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the **loading or unloading** of that vehicle by any insured; or

        (2)    The existence of tools, uninstalled equipment or abandoned or unused materials.

45. **Professional services** means services the insured performs for a third party, but only in the capacity as an architect, engineer, consultant, laboratory service provider, inspector, surveyor, construction manager, LEED accredited professional, or as otherwise specifically described in a Professional Services Endorsement attached to this Policy.  **Professional Services** includes recommendations made for the site selection, transportation, disposal or treatment of **pollutants** generated by third parties.

    **Professional services** does not include:

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.
1:21-CV-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 90 of 136 PageID #: 95

    **a.**   Services for or associated with the management or operation of any facility by you or on your behalf;

    **b.**   Any evaluation, consultation, option or advice given by you, or others for whom you are legally liable in connection with **your product;** or

    **c.**   Any actual construction, erection, demolition, dismantling, assembly, fabrication, installation or remediation service performed by you or on your behalf, including the means, methods, techniques, sequences and procedures employed in the performance of those operations by you or on your behalf.

**46.**  **Property damage** means:

    **a.**   With respect to Part 1 Coverages:

        (1)  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        (2)  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

    **b.**   With respect to Part 2 Coverages (Special Pollution Coverages):

        (1)  Physical injury to or destruction of tangible property owned by third parties, including all resulting loss of use and diminution in value of such property;

        (2)  Loss of use of tangible property owned by third parties that has not been physically injured or destroyed; or

        (3)  **Natural resource damage**.

            **Property damage** does not include **environmental damage**, **clean-up costs** or **emergency expenses**.

            Electronic data is not tangible property.  As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**47.**  **Responsible insured** means your **executive officers**, managers and supervisors of **scheduled sites** and **unscheduled sites**, your corporate risk manager, and your managers and supervisors responsible for environmental affairs, control or compliance.

**48.**  **Restoration costs** mean reasonable and necessary costs, charges and expenses, incurred with our prior written consent which shall not be unreasonably withheld or delayed, required to restore, repair, replace or rebuild real or personal property to substantially its condition immediately prior to damage that resulted from **cleanup costs**.  **Restoration costs**, however, shall not exceed the lesser of: (i) such costs, charges and expenses incurred to restore, repair, replace or rebuild the property, or (ii) the actual cash value of the property, immediately prior to incurring **cleanup costs.**

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 1:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

CV-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 91 of 136 PageID #: 96

**Restoration costs** do not include costs, charges or expenses for improvements or betterments.

49.   **Retroactive date** means the applicable date set forth in Item 3 of the Declarations.

50.   **Scheduled site** means any **location** owned, operated, managed under a written contract, leased or rented by you during the **policy period** and listed in Item 3 of the Declarations.

51.   **Suit** means a civil proceeding in which damages because of **bodily injury, property damage, environmental damage, personal and advertising injury**, **cleanup costs** or a **wrongful act** to which this insurance applies are alleged.

   **Suit** includes an arbitration proceeding or any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured must submit or does submit with our written consent.

52.   **Temporary worker** means a person who is furnished to you to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

53.   **Transportation** means the movement by **conveyance** by the insured, or on behalf of the insured by a properly licensed third-party carrier, of goods, products or **wastes** beyond the boundaries of any **scheduled site**, **unscheduled site**, **waste disposal facility**, **non-owned location** or **job site**, and includes any **loading or unloading** of such goods, products or **waste**.  **Transportation** also includes the delivery of a liquid product or **waste** into the wrong receptacle, or to the wrong address, or the mistaken delivery of one liquid product or **waste** for another.

54.   **Underground storage tank** means any tank and associated piping and appurtenances connected thereto, that has at least ten percent (10%) of its volume below ground.

55.   **Unscheduled site** means any **location** owned, operated, managed under a written contract, leased or rented by you during the **policy period** other than a **scheduled site**.

56.   **Volunteer worker** means a person who is not your **employee**, and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

57.   **Waste** means materials to be disposed, recycled, reconditioned or reclaimed.  **Waste** includes medical, infectious and pathological waste, and radioactive waste but only if it qualifies as **low-level radioactive waste** or **mixed waste**.

58.   **Waste disposal facility** means any **location** where your **waste** is sent for treatment, storage, processing, recycling or disposal, provided the **location** is not and never was owned, operated or leased by you or your parent, subsidiary or affiliate, and provided such **location**:

   a.   is listed in a Schedule of Waste Disposal Facilities endorsement attached to this Policy; or

    **b**.   as of the date any **waste** or materials are delivered by you or on your behalf, meets all of the following criteria:

        (1)   It is properly licensed, as applicable, by state, federal, municipal or provincial authority to conduct waste treatment, storage, processing, recycling or disposal; and

        (2)   It is not listed, or proposed to be listed, on the U.S. Environmental Protection Agency's (EPA) Final National Priorities List (NPL), or on the Superfund or Comprehensive Environmental Response, Compensation, and Liability Information System (CERCLIS) database, or any state or provincial equivalent to the federal NPL, Superfund or CERCLIS database.

**59.**   **Wrongful act** means an act, error, or omission.

**60.**   **Your product** means:

    **a**.   Goods or products, other than real property, manufactured, sold, handled, distributed, altered or repaired by you or others trading under your name; or

    **b**.   Containers (other than a **conveyance**), materials, parts or equipment furnished in connection with such goods or products.

   **Your product** includes:

    **a**.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

    **b**.   The providing of or failure to provide warnings or instructions.

**61.**   **Your work** means:

    **a**.   Work or operations performed by you or on your behalf; and

    **b**.   Materials, parts or equipment furnished in connection with such work or operations.

   **Your work** includes:

    **a**.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

    **b**.   The providing of or failure to provide warning or instructions.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANCELLATION

This endorsement modifies insurance provided under the following:

CONTRACTORS POLLUTION LIABILITY INSURANCE POLICY
CONTRACTORS POLLUTION LIABILITY PLUS INSURANCE POLICY
EnviroPACE Insurance Policy
PREMISES ENVIRONMENTAL AND REMEDIATION LIABILITY

The **Cancellation** condition is deleted and replaced with the following:

**Cancellation**

The **first named insured** may cancel this Policy by delivery thereof to us or our authorized agent, or by mailing to us written notice stating when thereafter the cancellation shall be effective. If the **first named insured** cancels, any unearned premium will be paid to the **first named insured** calculated on the customary short rate basis.

We may cancel this Policy by mailing to the **first named insured** at the address shown in Item 1 of the Declarations written notice of cancellation at least:

a.   10 days prior to the effective date of cancellation if we cancel for one or more of the following reasons:

   (1)   Non-payment of premium;

   (2)   Fraud or material misrepresentation;

   (3)   Conviction of an insured of a crime arising out of acts increasing the hazard insured against under the policy;

   (4)   Violation of any local fire, health, safety, building or construction regulation or ordinance which increases the hazard insured against under the policy;

   (5)   Any willful or reckless act or omission by an insured increasing the hazard insured against under the policy;

   (6)   Omission or concealment of fact relating to an insurance application, rating, claim or coverage under this policy;

   (7)   Failure or refusal of an insured to:

      (a)  Provide information necessary to confirm exposure or determine the policy premium; or

      (b)  Comply with underwriting requirements;

   (8)   A substantial change in the risk covered by the policy;

   (9)   Loss of reinsurance or substantial decrease in reinsurance;

ENVCNR-0916            Includes copyrighted material of Insurance Services Office, Inc.,            Page 1 of 2

with its permission.

(10)   The cancellation is for all insureds under such policies for a given class of insureds; or

(11)   Any reason determined by the insurance commissioner; or

**b.** 30 days prior to the effective date of cancellation if we cancel for any other reason.

If we cancel, any premium refund will be calculated on a pro rata basis.

The time of delivery or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**.  Delivery of such written notice either by the **first named insured** or by us shall be equivalent to mailing.  Proof of mailing such notice shall be sufficient proof of notice.

We will tender any premium refund due upon cancellation to the **first named insured** as soon as practicable after cancellation is effective, but tender of such premium refund is not a condition of cancellation.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

EnviroPACE Insurance Policy

**SCHEDULE**

| Named Insured(s): |
| --- |
| SOLAR ENERGY EPC LLC |

The Policy is amended to include the person(s) or organization(s) described in the SCHEDULE above as a Named Insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

EnviroPACE Insurance Policy

Section **XXIII. CONDITIONS** is amended by the addition of the following:

**Policy Premium**

Policy premium means the premium that is calculated as follows:

**1.** The total annual premium as shown in the Policy Declarations, plus

**2.** Any premium adjustment by endorsements, plus

**3.** Any additional premium developed by audit.

**Cancellation and Minimum Earned Premium**

**1.** If you cancel this Policy, the return premium will be 90% of the unearned premium. However, as a minimum earned premium, we will retain no less than 25% of the policy premium.

**2.** If we cancel the Policy:

    **a.** for non-payment of premium, the earned premium will be computed pro rata based on the length of the cancelled policy term; however, as a minimum earned premium, we will retain no less than 25% of the policy premium; or

    **b.** for any reason other than non-payment of premium, the earned premium will be computed pro rata based on the length of the cancelled policy term and the minimum earned premium as stated in Paragraph **2. a.** above shall not apply.

Any unearned premium will be returned as soon as practicable.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDED GENERAL AGGREGATE ENDORSEMENT

This endorsement modifies insurance provided under the following:

EnviroPACE Insurance Policy

A. Section **XXI. LIMITS OF LIABILITY AND DEDUCTIBLE**, Paragraphs **1.**, **2.** and **3.** are deleted in their entirety and replaced with the following:

**XXI. LIMITS OF LIABILITY AND DEDUCTIBLE**

Regardless of the number of **claims**, **suits**, claimants or insureds, the following limits of liability apply:

**1. Limits Applicable to Part 1 Coverages, Part 2 Coverages and Coverage 3**

**a. General Aggregate Limit and General Aggregate Cap**

The General Aggregate Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** under all Part 1 Coverages, Part 2 Coverages and Coverage 3 except: (i) damages because of **bodily injury**, **property damage** or **environmental damage** included in the **products-completed operations hazard**, and (ii) **crisis management costs** that result from a **crisis management event** arising directly from **your product**.

**b.** Subject to Paragraph **1.c.** below, the General Aggregate Limit applies separately to: (i) **loss** covered under Coverages 1A and 1E arising from **occurrences** at any one **location** that you own or rent; and (ii) **loss** covered under Coverages 1A and 1E arising from your ongoing operations at any one **job site**.

**c.** Regardless of the number of **locations** or **job sites**, the General Aggregate Cap set forth in Item 3 of the Declarations is the most we will pay for all **loss** under all Part 1 Coverages except: (i) damages because of **bodily injury**, **property damage** or **environmental damage** included in the **products-completed operations hazard**, and (ii) **crisis management costs** that result from a **crisis management event** arising directly from **your product**.

**d. Products – Completed Operations Aggregate Limit**

The Products-Completed Operations Aggregate Limit set forth in Item 3 of the Declarations is the most we will pay for all: (i) damages under Coverages 1A and 1D because of **bodily injury**, **property damage** or **environmental damage** included in the **products-completed operations hazard**, and (ii) **crisis management costs** that result from a **crisis management event** arising directly from **your product**.

**e. Each Occurrence Limit**

Subject to Paragraph **1.a.** or **1.d.** above, whichever applies, the Each Occurrence Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** under Coverages 1A, 1C, 1D and 1E arising out of the same, related, continuous or repeated **occurrence(s)** or **pollution condition(s)**.

**f. Personal and Advertising Injury Limit**

Subject to Paragraph **1.a.** above, the Personal and Advertising Injury Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** under Coverage 1B sustained by any one person or organization.

EPACE110-0714

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

CV-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 98 of 136 PageID #: 103

**g. Employee Benefits Administration Limit**

Subject to Paragraph **1.a.** above, the Employee Benefits Administration Limit of Liability set forth in Item 3 of the Declarations is the most we will pay under Coverage 1F for all **loss** sustained by any one **employee**, including **loss** sustained by such **employee's** dependents and beneficiaries, arising out of the same, related, continuous or repeated **wrongful act(s)**.

However, the amount paid under this Policy shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the **employee benefits program**.

**h. Crisis Management Costs Limit – Coverage 1G**

Subject to Paragraph **1.a.** or **1.d.** above, whichever applies, the Crisis Management Costs Limit set forth in Item 3 of the Declarations is the most we will pay for all **crisis management costs** under Coverage 1G.

**i. Damage to Premises Rented to You Limit**

Subject to Paragraph **1.e.** above, the Damage to Premises Rented to You Limit set forth in Item 3 of the Declarations is the most we will pay under Coverage 1A for all **loss** because of **property damage** to any one premises, while rented to you, or in the case of damage by fire while rented to you or temporarily occupied by you with permission of the owner.

**j. Medical Expense Limit**

Subject to Paragraph **1.e.** above, the Medical Expense Limit set forth in Item 3 of the Declarations is the most we will pay under Coverage 1C for all **loss** because of **bodily injury** sustained by any one person.

**k. Part 2 Coverages – Special Pollution Coverages – Individual Coverage Limits**

Subject to Paragraph **1.a.** above, the applicable Coverage Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** under the applicable Part 2 – Special Pollution Coverage.

**l. Part 2 Coverages – Special Pollution Coverages – Each Pollution Condition Limit**

Subject to Paragraphs **1.a.** and **1.k.** above, the Each Pollution Condition Limit set forth in Item 3 of the Declarations is the most we will pay for all **loss** arising out of the same, related, continuous or repeated **pollution condition(s).**

**m. Coverage 3 – Professional Liability – Each Wrongful Act Limit**

Subject to Paragraph **1.a.** above, the Each Wrongful Act Limit set forth in Item 3 of the Declarations is the most we will pay under Coverage 3 for all **loss** arising out of the same, related, continuous or repeated **wrongful act(s)**.

B. All references in the Declarations and the Policy to Pollution Liability Aggregate Limit and Professional Liability Aggregate Limit are deleted.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

2:21-CV-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 99 of 136 PageID #: 104

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NON-OWNED AUTO LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

EnviroPACE Insurance Policy

This Endorsement is subject to all of the provisions applicable to Coverage 1A – General Liability Bodily Injury And Property Damage, except as otherwise provided in this Endorsement. All numbers and letters used to designate paragraphs in this Endorsement are specific to this Endorsement only. They do not reference paragraphs in Coverage 1A. Insurance is provided only with respect to those coverages for which a specific Limit of Liability and Premium are shown:

**SCHEDULE**

| Coverage | Limits Of Liability | Premium |
|---|---|---|
| **Hired Auto Liability Insurance** | $1,000,000  Each Occurrence Limit | $ 250.00 |
| **Non-owned Auto Liability Insurance** | $1,000,000  Each Occurrence Limit | $ 250.00 |
|  | $1,000,000  Aggregate Limit |  |

A. **Hired Auto Liability**

The insurance provided under section **II. COVERAGE 1A – GENERAL LIABILITY BODILY INJURY AND PROPERTY DAMAGE** applies to **bodily injury** or **property damage** arising out of the maintenance or use of a **hired auto** by you or your **employees** in the course of your business.

B. **Non-owned Auto Liability**

The insurance provided under section **II. COVERAGE 1A – GENERAL LIABILITY BODILY INJURY AND PROPERTY DAMAGE** applies to **bodily injury** or **property damage** arising out of the use of a **non-owned auto** by any person in the course of your business.

C. **Changes In Exclusions**

Solely as respects the coverage provided by this Endorsement:

1. The following exclusions under section **IX. COMMON EXCLUSIONS – PART 1 COVERAGES** do not apply:

   a. Aircraft, Auto or Watercraft;

   b. Contractual Liability;

   c. Damage to Impaired Property or Property Not Physically Injured;

   d. Damage to Property;

   e. Damage to Your Product;

   f. Damage to Your Work;

   g. Employer's Liability;

   h. Liquor Liability;

   i. Mobile Equipment; and

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 100 of 136 PageID #: 105

    **j.** Recall of Products, Work or Impaired Property.

**2.** Section **II. COVERAGE 1A – GENERAL LIABILITY BODILY INJURY AND PROPERTY DAMAGE, 2. Specific Exclusions** is amended by the addition of the following:

Coverage 1A does not apply to any **claim**:

**a.** Based upon or arising out of **bodily injury** or **property damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

    This exclusion does not apply to liability for damages:

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement.

**b.** Based upon or arising out of **bodily injury** to:

    **(1)** An **employee** of the insured arising out of and in the course of:

        **(a)** Employment by the insured; or

        **(b)** Performing duties related to the conduct of the insured's business; or

    **(2)** The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph **(1)** above.

    This exclusion applies:

    **(1)** Whether the insured may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

    This exclusion does not apply to:

    **(1)** Liability assumed by the insured under an **insured contract**; or

    **(2)** **Bodily injury** to domestic **employees** not entitled to workers' compensation benefits.

**c.** Based upon or arising out of **property damage** to:

    **(1)** Property owned or being transported by, or rented or loaned to the insured; or

    **(2)** Property in the care, custody or control of the insured.

D. **Who Is An Insured**

Solely as respects the coverage provided by this Endorsement, section **XX. WHO IS AN INSURED** is deleted and replaced with the following:

**WHO IS AN INSURED**

**1.** Each of the following is an insured under this insurance to the extent set forth below:

    **a.** You.

    **b.** Any other person using a **hired auto** with your permission in the course of your business.

    **c.** With respect to a **non-owned auto**, any partner or **executive officer** of yours, but only while such **non-owned auto** is being used in your business.

    **d.** Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under Paragraph **a.**, **b.** or **c.** above.

**2.** None of the following is an insured:

    **a.** Any person engaged in the business of his or her employer with respect to **bodily injury** to any co-**employee** of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-**employee** as a consequence of such **bodily injury**, or for

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

KC-2021-CV-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 101 of 136 PageID #: 106

any obligation to share damages with or repay someone else who must pay damages because of the injury;

**b.** Any partner or **executive officer** with respect to any **auto** owned by such partner or officer or a member of his or her household;

**c.** Any person while employed in or otherwise engaged in performing duties related to the conduct of an **auto business**, other than an **auto business** you operate;

**d.** The owner or lessee (of whom you are a sublessee) of a **hired auto** or the owner of a **non-owned auto** or any agent or **employee** of any such owner or lessee;

**e.** Any person or organization with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

E. **Limits Of Liability**

Solely as respects the coverage provided by this Endorsement, section **XXI. LIMITS OF LIABILITY AND DEDUCTIBLE** is amended by the addition of the following:

**LIMITS OF LIABILITY AND DEDUCTIBLE**

Regardless of the number of **hired autos**, **non-owned autos**, insureds, premiums paid, **claims** made or vehicles involved in the **occurrence**, the most we will pay for all damages resulting from any one **occurrence** is the applicable Limit of Liability indicated in the SCHEDULE above.

The Aggregate Limit indicated in the SCHEDULE above, subject to the Each Occurrence Limit indicated in the SCHEDULE above, is the most we will pay as damages for **bodily injury** or **property damage** sustained and **legal defense costs** incurred regardless of how many persons assert **claims** or **suits** against you.

The Each Occurrence and Aggregate Limits indicated in the SCHEDULE above are the most we will pay regardless of the number of insureds. These Limits of Liability are subject to and not in addition to the General Aggregate Limit shown in the Declarations. Payments under the Limits of Liability indicated in the SCHEDULE above are part of and erode the General Aggregate Limit shown in the Declarations.

F. **Changes In Conditions**

Solely as respects the coverage provided by this Endorsement, section **XXIII. CONDITIONS**, **14. Other Insurance** is deleted and replaced with the following:

**Other Insurance**

This insurance is excess over any primary insurance covering the **hired auto** or **non-owned auto**.

G. **Additional Definitions**

Solely as respects the coverage provided by this Endorsement, section **XXV. DEFINITIONS** is amended by the addition of the following:

**1.** **Auto business** means the business or occupation of selling, repairing, servicing, storing or parking **autos**.

**2.** **Hired auto** means any **auto** you lease, hire, rent or borrow. This does not include any **auto** you lease, hire, rent or borrow from any of your **employees**, your partners or your **executive officers**, or members of their households.

**3.** **Non-owned auto** means any **auto** you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes **autos** owned by your **employees**, your partners or your **executive officers**, or members of their households, but only while used in your business.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 102 of 136 PageID #: 107

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ACTION OVER EXCLUSION – NEW YORK

This endorsement modifies insurance provided under the following:

EnviroPACE Insurance Policy

Solely with respect to work or operations performed by or on behalf of the Named Insured within the State of New York, this Policy is amended as follows:

A. Section **IX. COMMON EXCLUSIONS – PART 1 COVERAGES, 1., k. Employer's Liability** is deleted and replaced with the following:

**k. Employer's Liability**
**Bodily injury** to:

(1) an **employee** or **temporary worker** of any insured arising directly or indirectly out of and in the course of:

(a) employment by any insured; or

(b) performing duties related to the conduct of any insured's business;

(2) the spouse, child, parent, brother or sister of that **employee** or **temporary worker** as a consequence of Paragraph (1) above;

This Exclusion applies:

(1) whether an insured may be liable as an employer or in any other capacity;

(2) to any obligation to share damages with or repay someone else who must pay damages because of the injury; or

(3) to any liability assumed under any contract or agreement.

B. Section **IX. COMMON EXCLUSIONS – PART 1 COVERAGES, 1.** is amended and the following is added:

**Subcontractors And Independent Contractors**

Based upon or arising out of **bodily injury**, **property damage**, or **personal and advertising injury**:

(1) arising directly or indirectly out of the acts of your independent contractors or subcontractors unless you:

(a) obtain certificates of insurance that evidence coverage and Limits of Insurance equal to or greater than the coverages and Limits of Insurance provided by this policy in force for the term of the work performed for you; and

(b) provide us upon our request copies of Certificates of Insurance that you shall require and have obtained from your subcontractors before any work performed on your behalf. You shall maintain copies of these Certificates during and for up to 5 years after the term of such work;

(2) sustained by any contractor, subcontractor or independent contractor or any of their **employees**, **temporary workers** or **volunteer workers**.

C. For the purposes of this endorsement only, section **XXV. DEFINITIONS, 52. Temporary worker** is deleted and replaced with the following:

**52. Temporary worker** means any person who is:

**a.** furnished to you to substitute for a permanent **employee**;

**b.** a short-term worker; or

**c.** not an **employee** or **volunteer worker**.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

CV-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 103 of 136 PageID #: 108

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

EnviroPACE Insurance Policy

A. Section **IX. COMMON EXCLUSIONS – PART 1 COVERAGES,** exclusion **1.a. Aircraft, Auto and Watercraft** is deleted and replaced with the following:

The following exclusions apply to all Part 1 Coverages except where indicated. Part 1 Coverages do not apply to:

**Aircraft, Auto Or Watercraft**

(1) **Unmanned Aircraft**

**Bodily injury, property damage**, **personal and advertising injury** or **environmental damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an **unmanned aircraft**. Use includes operation and **loading or unloading**.

This Paragraph (1) applies even if the **claims** against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the **occurrence** which caused the **bodily injury**, **property damage**, **personal and advertising injury** or **environmental damage** involved the ownership, maintenance, use or entrustment to others of any **unmanned aircraft**.

(2) **Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

**Bodily injury, property damage** or **environmental damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than **unmanned aircraft**), **auto** or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and **loading or unloading**.

This Paragraph (2) applies even if the **claims** against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the **occurrence** which caused the **bodily injury, property damage** or **environmental damage** involved the ownership, maintenance, use or entrustment to others of any aircraft (other than **unmanned aircraft**), **auto** or watercraft that is owned or operated by or rented or loaned to any insured.

Solely with respect to Coverage 1A, Paragraph (2) does not apply to:

(a) a watercraft while ashore on premises you own or rent;

(b) a watercraft you do not own that is:

    (i) less than 26 feet long; and

    (ii) not being used to carry persons or property for a charge;

(c) parking an **auto** on, or on the ways next to, premises you own or rent, provided the **auto** is not owned by or rented or loaned to you or the insured;

(d) liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft; or

(e) **bodily injury** or **property damage** arising out of:

    (i) the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 104 of 136 PageID #: 109

(ii) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of **mobile equipment**.

(f) the delivery of any solid or liquid product into a wrong receptacle or to a wrong address; or

(g) the erroneous delivery of one solid or liquid product for another by an **auto**.

Paragraphs (f) and (g) of this exclusion only apply if the **bodily injury** or **property damage** occurs after such operations have been completed or abandoned at the site of such delivery.

Operations which may require further service, maintenance, correction, repair or replacement at the wrong address or because of any error, defect or deficiency, but which are otherwise completed, will be deemed completed.

B.  Section **XVII. COMMON EXCLUSIONS – PART 2 – SPECIAL POLLUTION COVERAGES** is amended by the addition of the following:

The following exclusions apply to all Part 2 Coverages except where indicated. Part 2 Coverages do not apply to loss arising out of:

**Unmanned Aircraft**

**Bodily injury, property damage**, or **environmental damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an **unmanned aircraft**. Use includes operation and **loading or unloading**.

This Paragraph applies even if the **claims** against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the **pollution condition** which caused the **bodily injury**, **property damage** or **environmental damage** involved the ownership, maintenance, use or entrustment to others of any **unmanned aircraft**.

C.  Section **XIX. COVERAGE 3 – PROFESSIONAL LIABILITY – CLAIMS MADE AND REPORTED 2. Specific Exclusions, a. Aircraft, Auto or Watercraft** is deleted and replaced with the following:

The following exclusions apply to all Coverage 3 coverages except where indicated.  Coverage 3 does not apply to any **claim** arising out of:

**Aircraft, Auto Or Watercraft**

(1) **Unmanned Aircraft**

The ownership, maintenance, use or entrustment to others of any aircraft that is an **unmanned aircraft**. Use includes operation and **transportation**.

This Paragraph (1) applies even if the **claims** against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

(2) **Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

The ownership, maintenance, use or entrustment to others of any aircraft (other than **unmanned aircraft**), **auto** or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and **transportation**.

This Paragraph (2) applies even if the **claims** against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 105 of 136 PageID #: 110

D. Section **XXV. DEFINTIONS, 8. Conveyance** is deleted and replaced with the following:

**Conveyance** means any **auto**, railcar, train, watercraft or aircraft (other than **unmanned aircraft**), provided the person or entity transporting the goods, products or **waste** is both in the business of and is properly licensed to transport the materials being moved. **Conveyance** does not include pipelines or **unmanned aircraft.**

E. The following definition is added to the **DEFINITIONS** section:

**Unmanned aircraft** means an aircraft that is not:

**a.** Designed;

**b.** Manufactured; or

**c.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW

This endorsement modifies insurance provided under the following:

EnviroPACE Insurance Policy

Section **IX. COMMON EXCLUSIONS – PART 1 COVERAGES**, **1.u. Recording and Distribution of Material In Violation of Statutes** is deleted and replaced with the following:

Part 1 Coverages do not apply to:

**u.  Recording and Distribution of Material or Information in Violation of Law**

**Bodily injury**, **property damage**, **environmental damage** or **personal and advertising injury** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CYBER INJURY

This endorsement modifies insurance provided under the following:

EnviroPACE INSURANCE POLICY

A. Section **III. COVERAGE 1B – PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Specific Exclusions** is amended by the addition of the following:

In addition to the exclusions in section IX. COMMON EXCLUSIONS – PART 1 COVERAGES, Coverage 1B does not apply to **personal and advertising injury**:

**Cyber Injury**
(1) Arising out of **cyber injury**; or

(2) Any **claim** or **suit** arising out of any litigation, proceeding, or administrative action or hearing brought prior to or pending as of the inception date of this Policy, arising out of **cyber injury**.

B. Section **XIX. COVERAGE 3 – PROFESSIONAL LIABILITY – CLAIMS MADE AND REPORTED, 2. Specific Exclusions** is amended by the addition of the following:

Coverage 3 does not apply to:

**Cyber Injury**
(1) Any **claim** or **loss** arising out of **cyber injury**; or

(2) Any **claim** or **suit** arising out of any litigation, proceeding, or administrative action or hearing brought prior to or pending as of the inception date of this Policy, arising out of **cyber injury**.

C. Section **XXV. DEFINITIONS** is amended by the addition of the following:

**Cyber injury** means any actual or suspected, intentional or unintentional, breach of any data, software or hardware, wherever located, that results in:

**a.** loss, destruction, disclosure, disruption, inspection, modification, recording, release, review or use of **personal information**;

**b.** oral or written publication, in any manner, of material that violates a person's right of privacy;

**c.** inability to access any website or any electronic system;

**d.** release, introduction or facilitation of any **malicious code**;

**e.** forensic or investigative expenses;

**f.** extortion or terrorism acts or threats;

**g.** monitoring or notification costs or expenses;

**h.** crisis management or public relations expenses;

**i.** data or system recovery, repair, replacement or restoration expenses; or

**j.** business interruption expenses.

**Malicious code** means, but is not limited to, any virus, Trojan horse, worm, spyware, logic bomb, adware, malware or other similar software program.

**Personal information** means any personal or personally identifiable or identifying information, as defined by federal, state or local laws, statutes or regulations.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 108 of 136 PageID #: 113

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
CONTRACTORS POLLUTION LIABILITY COVERAGE PART
THIRD PARTY POLLUTION LIABILITY COVERAGE PART
CLEANUP COSTS – YOUR LOCATION COVERAGE PART
PREMISES ENVIRONMENTAL AND REMEDIATION LIABILITY (PEARL)
EnviroPACE Insurance Policy

A.  The following exclusion is added:

**TERRORISM AND PUNITIVE DAMAGES**

This Policy does not apply to any "claim" (**claim**) arising, directly or indirectly, out of:

**1.** A "certified act of terrorism" or an "other act of terrorism", including any action taken in hindering or defending against an actual or expected incident of a "certified act of terrorism" or an "other act of terrorism"; or

**2.** Any act of terrorism:

**a.** that involves the use, release or escape of nuclear materials ("nuclear materials"), or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**b.** that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**c.** in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in **1.** or **2.** above; including

**3.** Damages ("damages") arising, directly or indirectly, out of **1.** or **2.** above that are awarded as punitive damages.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss (**loss**) or damage that is otherwise excluded under this Policy.

C.  The **DEFINITIONS** section is amended and the following added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

EV165B-0115          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 1 of 2

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".  Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 111 of 136 PageID #: 116

# IMPORTANT POLICYHOLDER INFORMATION

In the event you need to contact someone about this policy for any reason, please contact your agent first.

If you have additional questions or need to report a claim, you may contact the insurance company issuing this policy at the following address, telephone number or email address:

General Counsel
Colony Insurance Company
Colony Specialty Insurance Company
P. O. Box 469011
San Antonio, Texas  78246

Toll Free: 1-877-474-8808

Electronic reporting:  claimreporting@colonyspecialty.com

When contacting your agent or insurance company, please have your policy number available.  This notice is for information only and does not become a part of or condition of this policy.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 2:21-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 112 of 136 PageID #: 117

# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURER'S LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

PLEASE ALSO BE AWARE THAT YOUR POLICY DOES NOT PROVIDE COVERAGE FOR ACTS OF TERRORISM THAT ARE NOT CERTIFIED BY THE SECRETARY OF THE TREASURY.

### Acceptance or Rejection of Terrorism Insurance Coverage

You must accept or reject this insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act*, before the effective date of this policy. Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.

☐ **Coverage acceptance:**

I hereby elect to purchase coverage for certified acts of terrorism, *as defined in Section 102(1) of the Act* for a Prospective annual premium of 5% of the total policy premium, subject to $100 minimum. I understand that I will not have coverage for losses arising from any non-certified acts of terrorism.

**OR**

☒ **Coverage rejection:**

I hereby decline to purchase coverage for certified acts of terrorism, *as defined in Section 102(1) of the Act*. I understand that I will not have coverage for any losses arising from either certified or non-certified acts of terrorism.

| | |
|---|---|
| Signature On File | COLONY INSURANCE COMPANY |
| **Policyholder/Applicant's Signature-** **Must be person authorized to sign for all Insureds.** | **Insurance Company** |
| On File | PACE306698 |
| **Print Name** | **Policy Number** |
| ENERGY EPC, LLC | On File |
| | **Submission Number** |
| **Named Insured** | 18003 |
| On File | **Producer Number** |
| **Date** | CRC INSURANCE SERVICES, INC. - ME, SCARBOROUGH |
| | **Producer Name** |
| | 25 SPRING STREET, SUITE 100 |
| | **Street Address** |
| | SCARBOROUGH, ME 04074 |
| | **City, State, Zip** |

**The producer shown above is the wholesale insurance broker your insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before signing.**

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

# EXHIBIT B

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 114 of 136 PageID #: 119



October 29, 2020

**VIA EMAIL AND CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Ryan Palumbo
Energy EPC, LLC
117 Metro Center Blvd.
Warwick, RI 02886
ryan@revityenergy.com

| Re: | Named Insured.: | Energy EPC, LLC |
|-----|-----------------|-----------------|
|     | Insurer: | Colony Insurance Co. |
|     | Policy(ies): | PACE306698-2 (2/1/19-2/1/20) |
|     | Claim No.: | 287875 |

Dear Mr. Palumbo:

Thank you for your notice of claim. Colony Insurance Company ("CIC" or the "Insurer") previously acknowledged receipt of the above referenced claim from Energy EPC, LLC ("Energy EPC" or the "Insured"). This letter is being addressed to you as the representative of the Insured. The purpose of this letter is to advise you of CIC's determination regarding your tender under the Colony Specialty EnviroPACE Insurance Policy issued to Energy EPC for the policy period effective February 1, 2019 to February 1, 2020 (the "Policy"). As explained below, this letter is to advise you that CIC will continue investigating this matter subject to the reservation of rights discussed below.

## FACTUAL BACKGROUND AND ALLEGATIONS

The following is a summary of the facts, but the totality of the allegations were considered in reaching this determination. Based on the information provided to CIC, the Insured received a demand for indemnification from an unspecified amount of damages based upon issues with solar panels manufactured by LG Corporation for installation at a project in Hopkinton, Rhode Island on an 80-acre wooded site. Energy EPC specializes in the engineering, procurement, and construction of solar PV systems. We understand that Energy EPC/Revity Energy contracted Mass Electric to provide the installation at the project site. We have been advised that there were a total of 43 modules to be installed for this project and that an undetermined number of modules sustained scratches or punctures during the handling and installation process. We have received and are reviewing reports and contracts related to this project. This letter should not be construed as an admission of any of the facts and circumstances set forth in the claim/pleading.

## EXPLANATION OF COVERAGE

CIC issued Energy EPC a Colony Specialty Enviro**PACE** Insurance Policy, Policy No PACE306698-2 with a Policy Period of February 1, 2019 to February 1, 2020 (hereinafter the

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 115 of 136 PageID #: 120

Claim No.:  287875
October 29, 2020
Page 2

"Policy"). The Policy contains occurrence-based *General Liability Bodily Injury and Property Damage* coverage with a $1,000,000 each occurrence limit, a $2,000,000 products-completed operations aggregate limit, and a $2,000,000 general aggregate limit, subject to a $5,000 deductible each occurrence.

Your Policy contains the following Insuring Agreements, in the relevant part:

## II. COVERAGE 1A – GENERAL LIABILITY BODILY INJURY AND PROPERTY DAMAGE
### 1. Insuring Agreement
We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** that takes place during the **policy period** and is caused by an **occurrence** in the **coverage territory**.

Coverage 1A is subject to the following exclusions:

### g. Damage to Property
**Property damage** or **environmental damage** to:
 (5) That particular part of any real property on which you or any contractors or subcontractors, whether working directly or indirectly on your behalf, are performing operations, if the **property damage** or **environmental damage** arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraphs (3), (4), (5) and (6) of this Exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this Exclusion does not apply to **property damage** or **environmental damage** included in the **products-completed operations hazard**.

### h. Damage to Your Product
**Property damage** or **environmental damage** to **your product**, arising out of it or any part of it.

### i. Damage to Your Work
**Property damage** or **environmental damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**. This Exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor. (Section IX. Common Exclusions 1.i.)

### n. Internal Expenses
Any costs, charges or expenses incurred by any insured for goods supplied or services performed by any **temporary workers**, **volunteer workers**, staff or salaried **employees** of the insured, its parent, subsidiary or affiliate. (Section IX. Common Exclusions 1.n.)

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 116 of 136 PageID #: 121

Claim No.:  287875
October 29, 2020
Page 3

CIC would like to direct your attention to the following Policy definitions:

**6. Claim** means a written notice, demand or assertion of a legal right alleging liability or responsibility on the part of an insured for loss, and includes a suit. (Section XXV. Definitions 6.)

**38. Occurrence** means an accident, including conditions or repeated exposure to substantially the same general harmful conditions. (Section XXV. Definitions 38.)

**44. Products-completed operations hazard:**
    a. Includes all bodily injury, property damage and environmental damage occurring away from premises you own or rent and arising out of your product or your work, except:
        (1) Products that are still in your physical possession; or
        (2) Your work that has not yet been completed or abandoned. Your work will be deemed completed at the earliest of the following times:
            (a) when all of your work called for in your contract has been completed;
            (b) when all of the work to be done at the job site has been completed if your contract calls for your work at more than one job site; or
            (c) when that part of your work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
    Work that may need service, maintenance, correction, repair or placement, but which is otherwise complete, will be treated as completed.
    b. Does not include bodily injury, property damage or environmental damage arising out of:
        (1) Transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by any insured; or
        (2) The existence of tools, uninstalled equipment or abandoned or unused materials

**46. Property damage** means:
    **a.** With respect to Part 1 Coverages:
        (1) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
        (2) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it. (Section XXV. Definitions 46.)

**61. Your work** means:
    a.   Work or operations performed by you or on your behalf; and

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case Number: KC-2021-0144 1:21-CV-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 117 of 136 PageID #: 122

Claim No.:  287875
October 29, 2020
Page 4

    b. Materials, parts or equipment furnished in connection with such work operations.

**Your work** includes:
    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and
    b. The providing of or failure to provide warning or instructions. (Section XXV. Definitions 61.)

**EXPLANATION OF COVERAGE**

Here, Energy EPC has provided materials indicating that solar panels were damaged at some point prior to or during installation at a project site in Hopkinton, Rhode Island.

At this time, with the information currently available, this claim will be analyzed under *Coverage 1A – General Liability Bodily Injury and Property Damage*.  Please note that CIC reserves the right to address this claim under other coverage parts of the Policy as additional information becomes available.

*Coverage 1A General Liability Bodily Injury and Property Damage* provides, provides coverage, in part, for "loss" that the insured becomes legally obligated to pay because of "bodily injury" or "property damage" that takes place during the "policy period" and is caused by an "occurrence" in the coverage territory. "Property Damage" means physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it. "Occurrence" means an accident, including conditions or repeated exposure to substantially the same general harmful conditions. CIC must reserve its right to restrict or disclaim coverage to the extent that the facts do not satisfy the Insuring Agreement that "property damage" was caused by an "occurrence".

*Coverage 1A General Liability Bodily Injury and Property Damage* excludes coverage, in part, for "property damage" related to that particular part of any real property on which you are performing operations, if the "property damage" arises out of those operations. To the extent that the Energy EPC was performing operations on the damaged solar panels at issue, CIC must reserve its rights to disclaim coverage for such costs.

Likewise, coverage is unavailable under *Coverage 1A General Liability Bodily Injury and Property Damage*, for that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. To the extent that the claim concerning damaged solar panels includes any such damages, CIC must reserve its rights to disclaim coverage for such costs.

Further, coverage is unavailable under *Coverage 1A General Liability Bodily Injury and Property Damage*  for property damage or environmental damage to your product, arising out of it or any

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 118 of 136 PageID #: 123

Claim No.: 287875
October 29, 2020
Page 5

part of it. To the extent the damaged solar panels are determined to be the Insured's product, CIC must reserve its rights to disclaim coverage for such costs.

This letter is written to notify the Insured that CIC is reserving its rights and defenses under the terms, conditions, and provisions of the Policy. No action taken by CIC, its agents, representatives, or attorneys in the investigating, defending, evaluating, monitoring, or attempting to resolve this claim should be considered an estoppel or waiver of any rights or policy defenses that may be available now or at any time, or of CIC's right to assert that no coverage is available at a later time with regard to insurance coverage limitations described herein or later discovered in the course of handling this claim. CIC's determination is based on the information and allegations in the lawsuit it has received to date. CIC reserves the right to amend this letter and advise of further defenses as additional information becomes available. We reserve the right to file a declaratory relief action to determine its rights and duties under the Policy.

If you receive additional information regarding this incident that you would like CIC to consider, please contact me immediately by the fax, e-mail, or postal address below. It is important that we receive any such paperwork promptly.

|        |                                             |
|--------|---------------------------------------------|
| FAX:   | 303.773.7373                                |
| MAIL:  | P.O. Box 469012, San Antonio, TX 78246      |
| E-MAIL:| CommercialClaimsMail@argogroupus.com        |

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. If you have any questions or concerns regarding the contents of this letter, please feel free to contact the undersigned at (413) 773-6403. Thank you for your cooperation.

Sincerely,

*Jesse D. Russell*

Jesse D. Russell
Senior Technical Claims Specialist - Environmental
Colony Insurance Company
Direct Phone: 413-773-6403
Email: jesse.russell@argogroupus.com

Mailing Address: PO Box 469012 San Antonio, TX 78246

cc.     Peter Gibb, Cross Insurance, pgibb@crossagency.com

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. The lack of such a statement does not constitute a defense in any prosecution for a fraudulent insurance act.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 119 of 136 PageID #: 124

Claim No.:  287875
October 29, 2020
Page 6

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 120 of 136 PageID #: 125

# **EXHIBIT C**

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z



# Sugarman Rogers

**Sugarman, Rogers, Barshak & Cohen, P.C.**

WILLIAM L. BOESCH
BOESCH@SUGARMANROGERS.COM

December 23, 2020

**<u>Via Email</u>**

Energy EPC, LLC
Solar Energy EPC, LLC
Revity EPC, LLC
117 Metro Center Blvd., Suite 1007
Warwick, RI 02886

   Re: *Damage to Solar Panels at 100-106 Alton Bradford Road, Hopkinton,*
      *Rhode Island*
      Colony Insurance Co. Policy No. PACE306698
      Policy Period 02/01/19 to 02/01/20
      Colony Reference No. 287875

Dear Sir/Madam:

   This firm represents Colony Insurance Company, which issued the above-referenced Environmental Pollution and Casualty Exposures insurance policy to Energy EPC, LLC. Colony has asked us to assist in its ongoing analysis of your request for coverage under the policy for damage to solar panels at a facility in Hopkinton, Rhode Island.

   As you know, Energy EPC notified Colony of the matter on September 21, 2020. On October 29, Colony sent you a letter explaining that Colony was reserving its rights as to whether there would be coverage under the policy. Since that time, Colony has received some additional information about the matter, and has continued its coverage analysis. The purpose of this letter is to provide an updated explanation of Colony's assessment of the matter, and to request that you provide additional information needed to complete the coverage analysis.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

**Sugarman, Rogers, Barshak & Cohen, P.C.**

William Boesch to Energy EPC *et al.*
December 23, 2020
Page 2

 **Background – The Alton Bradford Road Project.** As Colony understands the pertinent history of this matter, it is as follows. Energy EPC, LLC is a Rhode Island business, organized in December 2016 as a limited-liability company, which provides engineering, procurement, and construction (EPC) services for the development of solar-energy facilities. In February 2017, Energy EPC obtained the first of a series of one-year liability-insurance policies with Colony. In October 2017, a related entity, Solar Energy EPC, LLC, was formed. Beginning in February 2018, Solar Energy EPC was included as a Named Insured under Energy EPC's series of insurance policies with Colony.

 In March 2019, Solar Energy EPC entered into an agreement to perform engineering, procurement, and construction services in connection with a solar-generation project at the 100-106 Alton Bradford Road site. The other party to the March 2019 agreement, identified as the site owner, was an entity named "Southern Sky Renewable Energy RI – Alton Road – Hopkinton LLC" (hereinafter, Southern Sky Alton Road). Both Solar Energy EPC and Southern Sky Alton Road operate from the same business address, which is also the address of Energy EPC. The Manager of both Southern Sky Alton Road and Solar Energy EPC is Ralph Palumbo.

 In June 2019, Solar Energy EPC entered into a subcontract with Massachusetts Electric Construction Company (MEC) to perform certain of the electrical-installation and procurement work, and related services, required for the Alton Bradford Road project. The solar panels or modules were delivered to the site in July 2019, and were installed by MEC between July and October 2019. Based on information you have provided, we understand that during this period, Solar Energy EPC discovered issues with scratching and/or cracking of the panels.

 In November 2019, Solar Energy EPC assigned all of its rights and obligations concerning the Alton Bradford Road project to a newly formed entity, Revity EPC, LLC. Revity EPC operates from the same business address as Energy EPC, Solar Energy EPC, and Southern Sky Alton Road. Revity EPC's Manager is Ralph Palumbo. Also in November 2019, Revity EPC and Southern Sky Alton Road executed an amended and restated agreement for the project, which Mr. Palumbo signed on behalf of both parties.

 **The Acuity/BrightSpot Investigation.** The Alton Bradford Road project was completed in or about December 2019. By June 2020, two firms, Acuity Power Group and BrightSpot Automation, had been retained to investigate problems with the solar-generation system. On September 3, 2020, Acuity and BrightSpot delivered a report, in the form of presentation slides, about their findings. A summary included in the report refers to a series of problems, including "bypass diode activation," "hot J-boxes that are not related to bypass diode activation," "a systematic problem with high contact resistance," and "cracked cells." Acuity and BrightSpot made various recommendations for further investigation and resolution of the problems. At some point, LG, the manufacturer of the panels, conducted its own investigation, and prepared a report.

**Sugarman, Rogers, Barshak & Cohen, P.C.**

William Boesch to Energy EPC *et al.*
December 23, 2020
Page 3

**Revity EPC's Claim Against MEC.** On September 11, 2020, Revity EPC sent a letter to MEC asserting a claim for breach of one or more warranties under the June 2019 subcontract. While this letter has not yet been provided to Colony, we understand the gist of Revity EPC's claim to have been that MEC followed improper methods for handling the panels during installation, that a number of the panels received "scratches" on their back sides, that these scratches in many cases produced "microcracks," and that the cracks interfere with the performance of the panels, requiring that they be replaced. Based on information from Acuity/BrightSpot, Revity EPC estimated that approximately 6,000 of the 43,000 panels needed replacement.

MEC denied Revity EPC's claim in a letter of October 19, 2020. MEC argued that Revity EPC failed to show (1) how MEC's installation work was deficient and fell below the standard required by the subcontract; (2) how MEC caused the scratching of the panels; (3) how the scratching caused the microcracks; and (4) the extent of the cracking problem.

**Revity EPC's Request for Coverage.** As Colony understands the current request, Revity EPC seeks coverage, under the 2019-20 Colony policy referenced above, for damage to solar panels that Revity EPC believes occurred during MEC's installation work between July and October 2019. Revity EPC has informed Colony that the owner of the Alton Bradford Road facility, Southern Sky Alton Road, is making a claim against Revity EPC for the damage.

The Colony policy provides, in relevant part, that Colony will pay sums that an "insured" becomes "legally obligated to pay as damages" because of "property damage that takes place during the policy period and is caused by an occurrence."[1] In the event of a "suit seeking damages to which this insurance applies," Colony has "the right and duty to defend the insured against" any such suit.[2] The policy also contemplates that Colony may agree to provide assistance in connection with a "claim" against an insured. The policy defines a "claim" as "a written notice, demand or assertion of a legal right alleging liability or responsibility on the part of an insured for a loss…."[3]

---

[1] Policy, Form EPACE 001-0415 at 7, ¶ II(1). For purposes of the discussion herein, some policy language may be quoted selectively, and some terms that appear in the policy in bold type, in capital letters, or with other forms of emphasis may be rendered here in plain text. This is for convenience only, and should not be understood as altering or characterizing the coverage afforded by the policy, or limiting the parties' rights or obligations. At all times, reference should be made to the policy itself for a complete statement of the coverage afforded.

[2] *Id.* at 19, ¶ X(1).

[3] *See id.* at 20, ¶ X(2); at 49, ¶ XXV(6).

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 124 of 136 PageID #: 129

**Sugarman, Rogers, Barshak & Cohen, P.C.**

William Boesch to Energy EPC *et al.*
December 23, 2020
Page 4

In this case, no suit has been brought, and no actual "claim," within the meaning of the policy, has yet been asserted against any insured. For this reason, Colony's assessment of the potential for coverage is necessarily preliminary.

**Coverage Limited to Insureds.** The coverage afforded by the policy applies only to a person or entity who is an "insured" under the policy. The Named Insured listed on the policy's declarations page is Energy EPC.[4] In an endorsement included at the time the policy was issued, on February 1, 2019, Solar Energy EPC is also included as a Named Insured.[5] The terms of the policy also include certain other categories of persons and entities as "insureds."[6]

Revity EPC, however, was not an insured under the policy between February 1, 2019 and November 22, 2019. Effective on the latter date, Revity EPC was included by endorsements as an "additional insured."[7] But this additional-insured status provided potential coverage only in the event of Revity EPC's liability for property damage caused by work performed by, or caused by the acts or omissions of, Energy EPC or Solar Energy EPC.[8] Further, these endorsements became effective only after the installation work and alleged damage at issue in this matter. Therefore, there would appear to be no basis for coverage of Revity EPC in connection with a claim involving the solar panels on the Alton Bradford Road project.

**Other Coverage Issues.** The policy's coverage would apply to a claim for damage to the solar panels only if the damage was caused by an "occurrence"—that is, an accident.[9] It is widely recognized in insurance law that "a claim for faulty workmanship... is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the *fortuity* required to constitute an accident."[10] Thus, to the extent the alleged damage to the solar panels resulted from MEC's failure to comply with required standards in handling the panels, there would be no coverage.

Further, coverage under the policy is subject to specified exclusions. To begin with, the policy makes clear that it does not apply to property damage "for which the insured is obligated to pay damages by reason of the obligation to perform under, or the assumption of liability in, a contract or agreement."[11] In the event Southern Sky Alton Road were to assert a claim that an insured was liable under the EPC agreement for the

---

[4] Declarations, Item 1.
[5] Schedule of Forms and Endorsements; Form EPACE 104-0714.
[6] Form EPACE 001-0415 at 34-35, ¶ XX ("Who is an Insured").
[7] Policy Change No. 2, Form EPACE 100-0814, EPACE 101-0814.
[8] *Id.*
[9] Form EPACE 001-0415 at 58, ¶ XXV(38).
[10] Couch on Insurance, § 129:4 (Dec. 2020) (emphasis added).
[11] Form EPACE 001-0415 at 13, ¶ IX(1)(c).

**Sugarman, Rogers, Barshak & Cohen, P.C.**

William Boesch to Energy EPC *et al.*
December 23, 2020
Page 5

Alton Bradford Road facility for damage to the solar panels, there would be no coverage.[12]

The policy also makes clear that it affords no coverage for property damage to an insured's own "product."—including any product that the insured "distributed," "sold," or "handled."[13] To the extent an insured was involved in procurement of the solar panels for the Alton Bradford Road project, this exclusion could bar coverage.

The policy provides no coverage for damage to property "that must be restored, repaired or replaced because your work was incorrectly performed on it."[14] Procurement and installation of the solar panels on the Alton Bradford Road project appears to have been part of an insured's "work" within the meaning of the policy, which defines "your work" as "work or operations performed by you or on your behalf."[15] Thus, any claim involving an alleged deficiency in the handling and/or installation of the panels would appear likely to fall outside the policy's coverage.

**Notice.** As indicated above, we understand that issues with scratching and/or cracking of the solar panels were observed during the period of their installation between July and October 2019. The policy requires, as a "condition precedent to coverage," that an insured give Colony notice "as soon as practicable" of any "occurrence… which may result in a claim."[16] To the extent there was a delay in this case in providing notice to Colony, this may preclude coverage.

**Application.** The policy makes clear that its issuance was "in reliance upon all the statements made in the Application" submitted to Colony. The application for the 2019-20 policy asked a variety of questions on topics including the applicant's relationship and work with affiliated companies and subcontractors. Colony is seeking to ensure, in connection with this matter, that the responses provided on the application were indeed accurate.

**Additional Information Needed.** To further assist Colony in its assessment of this matter, we ask that you please provide, within 14 days, the following documents and information:

---

[12] Neither of the exceptions to this exclusion appears to apply. The EPC agreement is not an "insured contract" within the meaning of the policy. *See* Form EPACE 001-0415 at 54, ¶ XXV(25). And the putative claim would not involve liability that an insured would have in the absence of a contract.

[13] Form EPACE 001-0415 at 15, ¶ IX(h); at 62, ¶ XXV(60).

[14] *Id.* at 15, ¶ IX(g)(6).

[15] *Id.* at 62, ¶ XXV(61).

[16] *Id.* at 41, ¶ XXII(1).

**Sugarman, Rogers, Barshak & Cohen, P.C.**

William Boesch to Energy EPC *et al.*
December 23, 2020
Page 6

1. The March 1, 2019 agreement between Southern Sky Alton Road and Solar Energy EPC.

2. Details as to the procurement of the solar panels for the Alton Bradford Road project, including the date(s) of and parties to each purchase and sale of panels, and the date(s) of delivery of panels to the site.

3. Details as to the dates of MEC's work on the project, including the date on which the work began and the date on which MEC last performed work on the project.

4. The assignment agreement dated on or about November 12, 2019, between Solar Energy EPC and Revity EPC.

5. An explanation of the circumstances that led to the November 2019 assignment.

6. Any amendments to the June 2019 subcontract between Solar Energy EPC and MEC resulting from or related to the November 2019 assignment.

7. The date(s) of, and all reports of, any inspections of the solar panels installed at the site from the time of installation to the present, including without limitation inspections by LG, Acuity, and BrightSpot.

8. All communications between Southern Sky Alton Road and any insured or other person or entity (including anyone acting on their behalf) concerning any claim or potential claim concerning the solar panels at the site.

9. All documents concerning any insurance maintained by MEC in connection with the Alton Bradford Road project, and all communications concerning naming of additional insureds on such insurance.

10. All communications between any insured and MEC (including anyone acting on their behalf) with respect to any scratching, cracking, or other problem or deficiency in the solar panels at the site, or any issue with MEC's installation work, including without limitation the letter dated on or about September 11, 2020 from Attorney William Dolan to MEC.

11. As to each of the following entities, identification of (a) all members of the LLC, (b) all other persons or entities who own, directly or indirectly, any interest in the entity, and (c) all other persons or entities involved, directly or indirectly, in controlling the activities of the entity:

    a. Energy EPC, LLC

    b. Solar Energy EPC, LLC

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 127 of 136 PageID #: 132

**Sugarman, Rogers, Barshak & Cohen, P.C.**

William Boesch to Energy EPC *et al.*
December 23, 2020
Page 7

      c.      Revity EPC, LLC

      d.      Southern Sky Renewable Energy RI – Alton Road – Hopkinton LLC

      e.      Southern Sky Renewable Energy Rhode Island, LLC

**Reservation of Rights.** For the reasons given above, and subject to its ongoing analysis and evaluation, Colony reserves all its rights with respect to the potential for coverage of a claim involving the solar panels at the Alton Bradford Road site. Naturally, this letter is not intended to explore all conceivable coverage issues that may arise if and when a claim is presented and pursued, and one right that Colony reserves, therefore, is the right to amend and supplement its coverage assessment in the future.

The explanation provided in this letter is, furthermore, based on the information available to Colony at this time. If you believe that Colony has misunderstood any of the material facts, or if you believe that Colony should consider additional matters as to the potential claim or the matter of coverage, please bring these to our attention as soon as possible. Colony remains ready and willing to consider any such new information, and to alter its position if and when warranted. Likewise, if you should have any questions about this letter or the positions outlined herein, please feel free to contact me.

We look forward to receiving the materials and information requested, and will contact you further following our review.

Very truly yours,

*/s/ William L. Boesch*

William L. Boesch

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

# **EXHIBIT D**

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

ADLER POLLOCK & SHEEHAN P.C.

One Citizens Plaza, 8th floor
Providence, RI  02903-1345
Telephone 401-274-7200
Fax 401-751-0604 / 351-4607

175 Federal Street
Boston, MA  02110-2210
Telephone 617-482-0600
Fax 617-482-0604

www.apslaw.com

January 28, 2021

**VIA EMAIL**

William L. Boesch
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, Suite 900
Boston, MA 02114
boesch@sugarmanrogers.com

> **Re:    *Policy PACE306698-2; Claim No. 287875***

Dear Attorney Boesch:

This law firm represents Revity EPC, LLC ("Revity EPC") and its affiliates with respect to Claim No. 287575 (the "Claim") made by Revity EPC under Policy PACE306698-2 (the "Policy") for indemnification for losses incurred as a result of damage sustained to solar modules located at the photovoltaic project constructed at 53D Alton Bradford Road in Hopkinton, Rhode Island (the "Property"). More specifically, I am responding to your December 23, 2020 correspondence (the "Sugarman Correspondence") as well as the October 29, 2020 correspondence of Jesse Russell (the "Russell Correspondence") through which Colony Insurance Company ("Colony") has reserved its rights with respect to the Claim. The purpose of this correspondence is to articulate the basis for coverage for the Claim and to respond to the exclusions pursuant to which Colony has reserved its rights through the Sugarman Correspondence and the Russell Correspondence.

> **A.   *The Claim is covered under Coverage 1A of the Policy entitled "General Liability Bodily Injury and Property Damage."***

The Russell Correspondence acknowledges that Coverage 1A of the Policy entitled "General Liability Bodily Injury and Property Damage" provides coverage for losses for which the insured becomes legally obligated to pay in connection with property damage caused by an occurrence, as later defined in the Policy. The insureds have become legally responsible for damages arising from the installation of 43,342 solar modules at the Property. The solar panel installation was subcontracted by the insureds to Mass. Electric Construction Co. ("MECC"), located in Waltham, Massachusetts, pursuant to a June 12, 2019 Solar System Electrical

**January 28, 2021**
**Page 2**

Installation Subcontract. The solar panels are owned by Southern Sky Renewable Energy RI – Alton Road – Hopkinton, LLC ("Southern Sky") which entity is the project owner. The Property has been leased to Southern Sky for the purpose of operating the photovoltaic solar farm. Following the discovery of the damage in January of 2020, Southern Sky had the panels studied by Acuity Power Group ("Acuity") which concluded (in a comprehensive report issued in September of 2020) that 23.1% of the panels studied exhibit backside scratches which pose a significant risk of panel degradation and safety hazard. Extrapolated over the entire solar field of 43,342 panels, these defects are likely to be present in approximately 10,012 panels. Acuity further determined that these backside scratches were caused by manual handling of the modules after the pallet was opened in the field or from handling during the installation by MECC. Lastly, it must be emphasized that the safety hazards posed by the backside scratches include an increased risk of personal injury to personnel working at the Property. The insureds have advised all such personnel of the issue and are undertaking a safety taping regime (as recommended by the engineers) to limit any risk; however, Colony's continued refusal to replace these panels increases the risk of a serious personal injury at the Property.

Based on the Acuity analysis, it is apparent that a significant portion of the panels installed at the Property in 2019 have microcracks resulting from backside scratches caused during the installation of the panels by MECC. Again, Acuity's estimates reflected that there are likely as many as 10,012 panels damaged by backside scratches resulting from installation defects. Each panel costs $212.19 and labor cost per panel is estimated at $100 and, thus, replacement of these 10,012 panels is estimated to cost $3,125,646. This figure is, of course, an estimate and does not include third party consultant expenses that Revity has incurred to address this Claim. This firm transmitted a letter to MECC on September 11, 2020 demanding that MECC compensate Revity EPC for the losses resulting from the installation errors. Southern Sky issued notice to Revity EPC on January 25, 2021 demanding that Revity EPC honor its common law and contractual indemnification obligations.

### B. The Exclusions cited in the Russell Correspondence do not apply to exclude coverage of the Claim.

The October 29, 2020 Russell Correspondence cites to several exclusions to Coverage 1A under which Colony is reserving its rights under the Policy. First, the Letter cites Exclusions (g)(5) and (g)(6) which provide, in relevant part, as follows:

**g. Damage to Property**
   **Property damage** or **environmental damage** to:

   . . .

   (5) That particular part of any real property on which you or any contractors
   or subcontractors, whether working directly or indirectly on your behalf, are

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 131 of 136 PageID #: 136

ADLER POLLOCK @ SHEEHAN P.C.

One Citizens Plaza, 8th floor
Providence, RI  02903-1345
Telephone 401-274-7200
Fax 401-751-0604 / 351-4607

175 Federal Street
Boston, MA  02110-2210
Telephone 617-482-0600
Fax 617-482-0604

www.apslaw.com

performing operations, if the **property damage** or **environmental damage** arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

. . .

Paragraphs (3), (4), (5) and (6) of this Exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this Exclusion does not apply to **property damage** or **environmental damage** included in the **products-completed operations hazard.**

EPACE001-0415 at p. 15.[1] The Letter states that Exclusion (g) applies to "'property damage' related to that particular part of any real property on which you are performing operations, if the 'property damage' arises out of those operations" and thus "[t]o the extent that Energy EPC was performing operations on the damaged solar panels at issue, CIC must reserve its rights to disclaim coverage for such costs." Exclusion (g)(5) only applies to property damage to real property and "real property" is legally defined as "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land." BLACK'S LAW DICTIONARY 574 (3d ed. 1933). Solar panels are not real property under this recognized legal definition and thus Exclusion (g)(5) does not apply to this Claim.

---

[1] With respect to Part 1 Coverage, the Policy defines "property damage" as follows:

**46. Property damage** means:

**a.** With respect to Part 1 Coverages:

(1) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

(2) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.
. . .

**January 28, 2021**
**Page 4**

Furthermore, Exclusion (g)(6) only applies to damage to "property that must be restored, repaired or replaced because **your work** was incorrectly performed *on it*." (second emphasis supplied). Again, this Exclusion only applies to property *upon* which work can be performed (*i.e.*, real property) but, even still, this Exclusion does not apply to any damage included in the products-completed operations hazard. The "products-completed operations hazard" provides as follows:

**44. Products-completed operations hazard:**

**a.** Includes all **bodily injury**, **property damage** and **environmental damage** occurring away from premises you own or rent and arising out of **your product** or **your work**, except:

(1) Products that are still in your physical possession; or

(2) **Your work** that has not been completed or abandoned. **Your work** will be deemed completed at the earliest of the following times:

(a) when all of **your work** called for in your contract has been completed;

(b) when all of the work to be done at the **job site** has been completed if the contract calls for **your work** at more than one **job site**; or

(c) when that part of **your work** done at a **job site** has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include **bodily injury**, **property damage** or **environmental damage** arising out of:

(1) **Transportation** of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the **loading or unloading** of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

EPACE001-0415 at p. 59. The damage to the solar panels is property damage that occurred on premises that the insureds do not own or rent and, moreover, Revity EPC's work had been completed when the products were damaged during MECC's installation. Thus, Exclusion (g)(6) does not apply by virtue of the products-completed operations hazard.

ADLER POLLOCK & SHEEHAN P.C.

One Citizens Plaza, 8th floor
Providence, RI  02903-1345
Telephone 401-274-7200
Fax 401-751-0604 / 351-4607

175 Federal Street
Boston, MA  02110-2210
Telephone 617-482-0600
Fax 617-482-0604

www.apslaw.com

Next, the Russell Correspondence cites to Exclusion (h) which excludes the following: "**h. Damage to Your Product. Property damage** or **environmental damage** to **your product**, arising out of it or any part of it." EPACE001-0415 at p. 15. The Policy defines "your product" as follows:

**60. Your product** means:

a.   Goods or products, other than real property, manufactured, sold, handled, distributed, altered or repaired by you or others trading under your name; or

b.   Containers (other than **conveyance**), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

b.   The providing of or failure to provide warnings or instructions.

EPACE001-0415 at p. 62. The solar panels are not products that were manufactured, sold, handled, distributed, altered or repaired by the insureds or "others trading in" the insureds' name and, accordingly, Exclusion (h) does not apply.

Lastly, the Russell Correspondence further cites to exclusion (i) which states as follows:

**i. Damage to Your Work.**

**Property damage** or **environmental damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

*This Exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

**January 28, 2021**
**Page 6**

EPACE001-0415 at p. 15 (last emphasis supplied). The property damage underlying the Claim was caused by insureds' subcontractor and, thus, Exclusion (i) does not apply, by virtue of its express limitations.

### C. The Exclusions cited in the Sugarman Correspondence do not apply to exclude coverage of the Claim.

Following Mr. Russell's October 29 correspondence, you transmitted a letter dated December 23, 2020 through which you echoed many of the exclusions cited in the previous letter but also identified additional reasons why Colony was reserving its rights under the Policy. For example, your correspondence asserts that "[t]he policy's coverage would apply to a claim for damage to the solar panels only if the damage was caused by an 'occurrence'—that is, an accident" and "[i]t is widely recognized in insurance law that 'a claim for faulty workmanship . . . is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the fortuity required to constitute an accident.'"

While that reasoning may have governed coverage under commercial general liability policies at one time, over the last four decades that reasoning has shifted and, "by 1986, insurance carriers and policyholders agreed that CGL policies should cover defective construction claims 'so long as the allegedly defective work had been performed by a subcontractor rather than the policyholder itself.'" *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 882 F.3d 952, 959 (10th Cir. 2018) (citing Christopher C. French, *Revisiting Construction Defects as "Occurrences" under CGL Insurance Policies*, 19 U. Pa. J. Bus. L. 101, 107 (2016)). This sea change arose from a revision to Insurance Services Office's standard form CGL policy in 1976 which "broadened coverage by no longer excluding damages arising from faulty subcontractor work" which revision responded to complaints from general contractors "who were increasingly reliant on subcontractor's work [and] had become dissatisfied with the lack of CGL policy coverage when the general contractor was not directly responsible for the defective work." *Black & Veatch Corp.*, 882 F.3d at 959 (citing Steve Plitt et al., 9A COUCH ON INS. § 129:19 (3rd ed. 2017)). "The majority of state supreme courts that have decided whether inadvertent faulty workmanship is an accidental 'occurrence' potentially covered under the CGL policy have ruled that it can be an 'occurrence.'" Thomas E. Miller, et al., § 6.02 *Third Party Coverage, Handling Construction Defect Claims: Western States* 123 (2018). Thus, with respect to damage to third party property resulting from a subcontractor's faulty workmanship, "the overwhelming trend among state supreme courts has been to recognize such damages as 'occurrences.'" *Black & Veatch Corp.*, 882 F.3d at 971.

With respect to the timing and notice issues that you raised in your letter, Solar Energy EPC, LLC was the general contractor on the project from March 1, 2019 until November 12, 2019 when its rights and obligations were assigned to Revity EPC. At all relevant times, Solar Energy EPC, LLC was an insured under the Policy and its contractual and common law indemnification obligations remained extant following the assignment. Revity EPC has issued a demand to Solar Energy EPC with respect to those obligations. Following the assignment, and as your

ADLER POLLOCK @ SHEEHAN P.C.

One Citizens Plaza, 8th floor
Providence, RI  02903-1345
Telephone 401-274-7200
Fax 401-751-0604 / 351-4607

175 Federal Street
Boston, MA  02110-2210
Telephone 617-482-0600
Fax 617-482-0604

www.apslaw.com

correspondence notes, Revity EPC was added as an insured on November 22, 2019 and MECC completed its installation in December of 2019. The damages to the solar panel modules were discovered in January of 2020 and there was extensive investigation of the damage conducted thereafter. The manufacturer, LG Electronics USA issued a report on July 7, 2020 and Acuity Power Group ("Acuity") released a 108 page report on September 3, 2020 which concluded that 23.1% of the sampled modules had backside scratches which had resulted in microcracking of the panel cells. Colony was put on notice on September 21, 2020. The suggestion that the insureds have not been diligent in their investigation and reporting of this matter is incorrect. Furthermore, other third parties who have been given notice of these damages (such as the manufacturer and the builder's risk insurer) undertook extensive engineering reviews of the solar modules before issuing their respective legal positions. Colony, on the other hand, has drawn its conclusion without so much as visiting the Property.

Lastly, your correspondence echoes many of the exclusions cited in the Russell Correspondence and asserts that the Claim would be excluded "[t]o the extent that an insured was involved in the procurement of the solar panel for the Alton Bradford Road project" and for "any claim involving an alleged deficiency in handling and/or installation of the panels . . . ." Like the Russell Correspondence, this conclusion is a fundamental misinterpretation and/or misapplication of Exclusions (h) and (i) and we strongly urge Colony to reconsider its position.

### D. The insureds hereby demand that Colony confirm that it will honor its indemnification obligations under the Policy.

Under Rhode Island law, where an insurer seeks to deny coverage under a policy exclusion, it carries the burden of proving that the exclusion applies. *Pickering v. American Employers Ins. Co.*, 109 R.I. 143, 148, 282 A.2d 584, 587 (1971). "[I]f the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied." *Jackson v. Quincy Mutual Fire Ins. Co.*, 159 A.3d 610, 614 (R.I. 2017). "If a policy contains ambiguous terms that are capable of more than one reasonable meaning, [the Court] will strictly construe the policy in favor of the insured and against the insurer." *Metro Properties, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 934 A.2d 204, 208 (R.I. 2007) (citing *Mallane v. Holyoke Mut. Ins. Co. in Salem*, 658 A.2d 18, 20 (R.I. 1995)). Additionally, R.I. Gen. Laws § 9-1-33(a) creates a cause of action in favor of the insured where an insurer "wrongfully and in bad faith refuse[s] to pay or settle a claim made pursuant to the provisions of the policy, or otherwise wrongfully and in bad faith refuse[s] to timely perform its obligations under the contract for insurance" and permits recovery of compensatory damages, punitive damages, and reasonable attorneys' fees.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 136 of 136 PageID #: 141

**January 28, 2021**
**Page 8**

        Your correspondence requested eleven categories of documents, some of which exceed the boundaries of the insureds' duty to reasonably cooperate with the insurer's investigation of a claim. Other of your requests seek documents disclosure of which would violate the insureds' various confidentiality covenants. With that said, I have enclosed with this letter documents that respond to your request. Please confirm within fourteen (14) days of the date of this correspondence that Colony will honor its obligations under the Policy to indemnify the insureds for the losses associated with the microcracks/back scratches that have been sustained to Southern Sky's solar modules located at Alton Bradford Road in Hopkinton, Rhode Island. Once you have confirmed coverage, we will continue to work with Colony to assemble any additional data needed to evidence the magnitude of the losses.


Regards.



WILLIAM M. DOLAN III
wdolan@apslaw.com




Copy:        Ryan Palumbo (ryan@revityenergy.com)
             Ralph Palumbo (ralph@revityenergy.com)
             Kyle Palumbo (kpalumbo@revityenergy.com)
             Peter Gibb (pgibb@crossagency.com)
             Chris Plympton (cplympton@crossagency.com)
             Peter Troy (pjtroy@crossagency.com)
             Chris Bignon (cbignon@englemartin.com)
             Jesse Russell (jesse.russell@argogroupus.com)




Enclosures (transmitted via secured Biscom message)