AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Rhode Island

| | | |
|---|---|---|
| **Revity EPC, LLC, et al.** | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   1:21-cv-00136-JJM-LDA |
| **Colony Insurance Company** | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     **Mass. Electric Construction Co., 400 Totten Pond Road, Suite 400, Waltham, MA 02451-2051**

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

        **See Schedule A**

| Place: ATTN: Nicholas Nybo<br>117 Metro Center Blvd., Suite 1007<br>Warwick, RI 02886 | Date and Time:<br><br>**10/29/2021 10:00 am** |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _9/28/2021_

|  |  |  |
|---|---|---|
| _CLERK OF COURT_ | OR | |
| _____ | | _____ |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_  **Revity Energy EPC**
_____ , who issues or requests this subpoena, are:

**Nicholas L. Nybo, 117 Metro Center Blvd., Suite 1007, Warwick, RI 02886, nick@revityenergy.com, (508) 269-6433**

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:21-cv-00136-JJM-LDA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*   Mass. Electric Construction Co.

was received by me on *(date)*   09/28/2021   .

☑ I served the subpoena by delivering a copy to the named person as follows:   In hand to Chelsea Ellsworth

authorized to accept on behalf of Mass. Electric Construction, Co. at 400 Totten Pond Road, Suite 400,

Waltham, Ma. 02451-2051                                    on *(date)*   09/28/2021   ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $                    for travel and $                    for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   09/28/2021

_____
*Server's signature*

B. Keith Wheeler
*Printed name and title*
25 Walnut Street Suite 205
Wellesley Hills, Ma.02481

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

REVITY EPC LLC; SOLAR ENERGY
EPC, LLC,

*Plaintiffs and Counterclaim Defendants*,

v.

COLONY INSURANCE COMPANY,

*Defendant, Counterclaim Plaintiff and
Third Party Plaintiff*

v.

ENERGY EPC, LLC; SOUTHERN SKY
RENEWABLE ENERGY RI – ALTON
RD – HOPKINTON, LLC

*Third Party Defendants.*

**CIVIL ACTION**

**CASE NO. 1:21-cv-00136-JJM-LDA**

### SCHEDULE A

### DEFINITIONS

1.     The term Defendant refers to Defendant Colony Insurance Company, as well as its

present or former officers, directors, employees, agents, consultants, attorneys, representatives or

any other person or entity acting or purporting to act on their behalf.

2.     The term "Complaint" refers to Plaintiffs' Complaint filed in the above-captioned

action, and attached to this document as Exhibit A.

3.     "MECC" refers to Mass. Electric Construction Co., as well as its present or former

officers, directors, employees, agents, consultants, attorneys, representatives or any other person

or entity acting or purporting to act on their behalf.

1

4.      "Revity EPC" refers to Plaintiff and Counterclaim Defendant Revity EPC LLC, as well as its present or former officers, directors, employees, agents, consultants, attorneys, representatives or any other person or entity acting or purporting to act on their behalf.

5.      Solar Energy" refers to Plaintiff and Counterclaim Defendant Solar Energy EPC, LLC, as well as its present or former officers, directors, employees, agents, consultants, attorneys, representatives or any other person or entity acting or purporting to act on their behalf.

6.      "Energy EPC" refers to Counterclaim Defendant Energy EPC, LLC, as well as its present or former officers, directors, employees, agents, consultants, attorneys, representatives or any other person or entity acting or purporting to act on their behalf.

7.      "Southern Sky" refers to Third Party Defendant Southern Sky Renewable Energy RI – Alton Rd – Hopkinton, LLC, as well as its present or former officers, directors, employees, agents, consultants, attorneys, representatives or any other person or entity acting or purporting to act on their behalf.

8.      "PV Pros" refers to PV Pros, Inc. f/k/a Pure Power Systems, Inc. and Pure Power Engineering Inc., as well as their present or former officers, directors, employees, agents, consultants, attorneys, representatives or any other person or entity acting or purporting to act on their behalf.

9.      The term "include," or any variant thereof, means including without limitation.

10.     The terms "relating to," "concerning," "regarding," and "reflecting," and any variant thereof, mean referring to, with respect to, describing, involving, evidencing, pertaining to, containing, setting forth, showing, disclosing, or constituting.

11.     The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the terms "documents" and "electronically stored information"

("ESI") in Fed. R. Civ. P. 34(a), and include the terms "writings," "recordings," and "photographs." The terms "writings," "recording," and "photograph" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001. A draft or non-identical copy (whether different from the original by reason of any notation made on such copy or otherwise) or a copy of an original is a separate document within the meaning of the term "document." "Documents" include data, computer files and programs, tapes, cassettes, discs, recordings (including voicemail), and metadata.

12.    "Communication" means, without limitation, the transmission of information, including without limitation, oral or written communication of any kind, such as electronic communications, e-mails, facsimiles, telephone communications, correspondence, exchanges of written or recorded information or face-to-face meetings.

13.    The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neuter shall include each of the other genders.

14.    To the extent not otherwise defined or specifically limited herein, all words used shall be given their most expansive and inclusive definition consistent with the context of the sentence in which they are used.

## INSTRUCTIONS

1.    All information, Communications, and Documents, including all Electronically Stored Information, Communications, and Documents, shall be produced.

2.      You shall produce requested Documents, Communications and things either as they are kept in the ordinary course of business, or as they are organized and labeled in a manner such that they are grouped separately for each of the requests.

3.      The collection of Documents, Communications and things from persons' files and other sources shall be performed in such a manner as to ensure that the source of each Document, Communication or thing may be determined.

4.      Absent unusual circumstances, Documents should be Bates-numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the document.

5.      If any portion of a Document, Communication or thing is responsive to a request, the entire Document, Communication or thing shall be produced.

6.      Each document requested herein should be produced in its entirety and without deletion, redaction, or excision, regardless of whether you consider the entire document or only part of it to be relevant or responsive to these document requests. If you have redacted any portion of the document, stamp the word "REDACTED" beside the redacted information on each page of the document which you have redacted.

7.      Documents attached to each other shall be produced together, and not separated.

8.      If any Document, Communication or thing requested herein was once in your possession, custody or control, but has been lost, discarded, destroyed, transferred, or removed from your possession, custody or control, with respect to each such Document, Communication or thing, please state: (a) the identity and the description of each such Document, Communication or thing by its date, title, and nature; (b) when each such Document, Communication or thing has most recently been in your possession, custody or control and the circumstances by which you no

longer have possession, custody or control of such Document, Communication or thing, including an identification of the Person or Persons, if any, presently in possession, custody or control of such Document, Communication or Thing; (c) the identity of the Person or Persons who discarded, destroyed, transferred or removed such Document, Communication or thing, the Person or Persons who know about the discarding, destruction, transfer or removal of such Document, Communication or thing, as well as the reasons why such Document, Communication or thing was discarded, destroyed, transferred or removed; and (d) the identity of all Persons having knowledge of the contents of such Document, Communication or thing.

9. These discovery requests are continuing in nature under the terms of Fed. R. Civ. P. 26. In the event that any Document, Communication, information, and/or thing responsive to one or more of these requests comes to your attention, or into your possession, custody, or control, after the filing of your responses to these requests, you must promptly produce such Document, Communication, information and/or thing to Plaintiffs.

10. If you object to or otherwise refuse to comply with any portion of a document request, you shall (i) state with specificity the objection or reason for such refusal; (ii) provide all information called for by that portion of the document request to which you do not object or to which you do not decline to answer; and (iii) identify with specificity the documents or category of documents that are being withheld on the basis of the objection:

    a. If you object to a document request on the grounds that it is overly broad (i.e., that you believe calls for information or documents some of which will not lead to discovery of relevant subject matter), you shall answer that document request and produce documents in response to that document request by producing all documents that you

admit are relevant and discoverable, and you shall state with specificity the documents or categories of documents that are being withheld;

b. If you object to a document request of the ground that to produce documents would constitute an undue burden, then you shall produce as many of the requested documents as can be provided without undertaking such asserted undue burden, you shall state with specificity the documents or categories of documents that are being withheld, and you shall identify the volume of documents, costs of producing those documents, or other basis for asserting undue burden; and

c. If you object to any portion of a document request on the ground that it is vague or indefinite, then you shall set forth your good faith understanding of the allegedly vague or indefinite term and you shall then answer the document request and produce document request and produce documents based upon that stated understanding.

11.     If you contend that any document containing information which is requested by any of the following requests is exempt from discovery by the attorney-client privilege, work-product immunity, or any other ground of privilege or immunity, you shall identify each such document, including the nature of the document (e.g., letter, memorandum, e-mail), its title and subject matter, date, author, and all recipient(s) and/or addressee(s), state the specific grounds(s) for each privilege or immunity claimed, and provide a summary statement of the subject matter(s) of such document in sufficient detail to permit an analysis to reach a determination of any claim of privilege or exclusion and shall answer the request to the extent to which there is no objection.

12.     Whenever necessary to bring within the scope of any Document request that which might otherwise be construed to be outside its scope: (a) the use of any verb in any tense shall be

construed as the use of that verb in all other tenses; and (b) the use of a word in its singular form shall be deemed to include within its use the plural form and vice versa.

13.     Each of these requests shall be construed independently and shall not be limited by any other request.

14.     Except where otherwise indicated, each document request covers the time-period from January 1, 2019 through the present.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     Any documents or communications in the possession, custody, and control of MECC regarding any of the allegations set forth in Paragraphs 19 through 37 of the Complaint (Exhibit A).

2.     Any communications that MECC has had with the Defendant regarding the circumstances alleged in the Complaint (Exhibit A).

3.     Any communications that MECC has had with PV Pros regarding the circumstances alleged in the Complaint (Exhibit A).

4.     Any communications that MECC has had with any subcontractors which assisted MECC with the installation and related work at the 17.55 MWdc fixed tilt, ground mounted solar photovoltaic electric generation facility on a parcel of land on Alton Bradford Road in Hopkinton, Rhode Island.

5.     Any documents in the possession, custody and control of MECC regarding the Revity EPC, Solar Energy, Energy EPC and/or Southern Sky.

6.     Any documents, reports, invoices in the possession, custody and control of MECC regarding MECC's installation and related work at the 17.55 MWdc fixed tilt, ground mounted

solar photovoltaic electric generation facility on a parcel of land on Alton Bradford Road in Hopkinton, Rhode Island.

7.     Any documents and communications in the possession, custody and control of MECC regarding the June 12, 2019 Solar System Electrical Installation Subcontract between Solar Energy and MECC.

8.     Any and all policies, procedures, operating manuals and/or other operating guidance imposed or required by MECC for its employees and/or subcontractors for any solar panel installation project since January 1, 2016.

# EXHIBIT A

**STATE OF RHODE ISLAND**                                    **SUPERIOR COURT**
**KENT, SC**

_____
                                              :
**REVITY EPC, LLC;**                          :
**SOLAR ENERGY EPC, LLC,**                    :
                                              :
        *Plaintiffs,*                         :
                                              :
        **v.**                                :        **C.A. No. KC-** 2021-0144
                                              :
**COLONY INSURANCE COMPANY,**                 :
                                              :
        *Defendant.*                          :
_____              :

## **COMPLAINT**

Plaintiffs, Revity EPC, LLC ("Revity EPC") and Solar Energy EPC, LLC ("Solar EPC")
hereby file this Complaint against Defendant, Colony Insurance Company ("CIC" or "Defendant")
and allege as follows:

## **INTRODUCTION**

1.      This action for declaratory judgment, breach of contract and violation of Rhode
Island's bad faith insurance practices statute arises out of Plaintiffs' claim for insurance coverage
under a commercial general liability policy sold to Plaintiffs by CIC.

2.      Commercial general liability policies cover costs and damages incurred by a
policyholder as a result of property damage and bodily injury.

3.      Revity EPC is in the engineering, procurement and construction business and,
through 2019 and 2020, served as the general contractor to Southern Sky Renewable Energy RI-
Alton Rd-Hopkinton, LLC ("Southern Sky") to provide design, engineering, procurement,
installation and related services for an approximately 17.55 MWdc (megawatt direct current) fixed

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 27-1   Filed 09/22/21   Page 14 of 31 PageID #: 878

tilt, ground mounted solar photovoltaic electric generation facility located in Hopkinton, Rhode Island.

4.      Prior to Revity EPC, in 2019, Solar EPC served as the general contractor for Southern Sky to provide those same design, engineering, procurement, installation and related services for the Hopkinton facility until Solar EPC assigned its duties and responsibilities to Revity EPC.

5.      During the relevant period of time, the Plaintiffs maintained a General Liability Bodily Injury and Property Damage Policy with CIC which provides coverage for sums that the insureds become legally obligated to pay as damages due to "bodily injury or property damage that takes place during the policy period and is caused by an occurrence in the coverage territory." (Emphasis omitted).

6.      An electrical subcontractor, Mass. Electric Construction Co. ("MECC"), was engaged by the Plaintiffs to, *inter alia*, construct, install and test the solar panels and supporting equipment to be used in Southern Sky's solar photovoltaic electric generation facility.

7.      Following MECC's work, Plaintiffs discovered that a significant portion of the panels had sustained backside scratches causing damage to the solar cells, lower panel output and hot spots, significant safety hazard, and risk serious long-term issues like ground faults. The damage is estimated to cost at least $3.1 million to repair, not including third party fees in connection with Plaintiffs' investigation of the damage.

8.      On September 21, 2020, Plaintiffs, through their insurance brokers, filed a claim with CIC for coverage under its commercial general liability policy with CIC. In response, CIC has issued two reservation of rights letters citing numerous exclusions that it believes may apply to bar coverage for the claim.

## PARTIES AND JURISDICTION

9.      Revity EPC is a limited liability company organized under the laws of Rhode Island with its principal place of business located at 117 Metro Center Blvd., Suite 1007 in Warwick, Rhode Island.

10.     Solar EPC is a limited liability company organized under the laws of Rhode Island with its principal place of business located at 117 Metro Center Blvd., Suite 1007 in Warwick, Rhode Island.

11.     Colony Insurance Company is a corporation organized under the laws of Virginia with its principal place of business at 8720 Stony Point Parkway, Suite 400 in Richmond, Virginia.

12.     This Court has jurisdiction over this action because Revity EPC is incorporated under the laws of Rhode Island, with its principal place of business in Rhode Island, and because, pursuant to Rhode Island General Laws § 8-2-14, the amount in controversy exceeds the sum of ten thousand dollars ($10,000).

13.     Venue is proper in this Court, pursuant to Rhode Island General Laws § 9-4-4, because Plaintiffs are located in Kent County.

14.     All conditions precedent to coverage and recovery by Plaintiffs have been performed and/or occurred.

## FACTS

15.     Southern Sky is a Rhode Island limited liability company in the business of owning and operating renewable energy (more specifically, solar energy) generation facilities located in Rhode Island. To that end, Southern Sky, in May of 2019, engaged Solar EPC to serve as a general contractor to provide design, engineering, procurement, installation and related services for the construction of an approximately 17.55 MWdc fixed tilt, ground mounted solar photovoltaic

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 27-1   Filed 09/22/21   Page 4 of 31 PageID #: 830

electric generation facility on a parcel of land on Alton Bradford Road in Hopkinton, Rhode Island (the "Project Site").

16.    On March 1, 2019, Solar EPC and Southern Sky executed the Solar System Engineering, Procurement and Construction Agreement ("EPC Agreement").

17.    On May 29, 2019, Solar EPC executed a Purchase Order for 43,650 solar panel modules to be manufactured and delivered to the Project Site by LG Electronics USA. The Purchase Order Sum was $9,192,690.

18.    Under the EPC Agreement, ownership of and title to the solar panels transferred immediately to Southern Sky.

19.    On June 12, 2019, Solar Energy executed a Solar System Electrical Installation Subcontract with MECC pursuant to which MECC was obligated to perform, *inter alia*, "the construction, installation and testing" of the solar panel modules at the Project Site as well as the supporting equipment to be used in Southern Sky's solar photovoltaic electric generation facility.

20.    Delivery of the solar panel modules to the Project Site began in the late summer of 2019 and MECC completed its installation in December of 2019.

21.    On November 12, 2019, Revity EPC and Southern Sky executed an Amended and Restated Solar System Engineering, Procurement and Construction Agreement ("Amended EPC Agreement") pursuant to which Revity EPC took over as the general contractor.

22.    The Amended EPC Agreement contained the following indemnification provision:

**Contractor's Indemnity**. Contractor shall fully indemnify, save, hold harmless and defend Owner, the Financing Parties and Landlord from and against any and all costs, claims, and expenses ("Indemnity Claims") incurred by Owner, the Financing Parties, or Landlord in connection with or arising from any claim by a Third Party for physical damage to or physical destruction of property, or death of or bodily injury to any Person, but only to the extent directly caused by the negligence or willful misconduct of Contractor or its agents, Subcontractors, or employees or others under Contractor's control; provided, however, that

4

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 27-1   Filed 09/28/21   Page 17 of 31 PageID #: 830

Contractor's obligations shall not extend to Indemnity Claims, demands, lawsuits or actions for liability to the extent attributable to the negligence or willful misconduct of Owner, the Financing Parties or Landlord. Notwithstanding the foregoing, the maximum aggregate liability of Contractor for the payment of claims for indemnification made pursuant to this <u>Section 14.1</u> shall be limited to fifty percent (50%) of the Contract Price.

Amended EPC Agreement at § 14.1 (emphases in original).

23.     On November 12, 2019, Revity EPC and Solar EPC executed an Assignment and Assumption Agreement which contained the following indemnification provision:

Assignee shall indemnify, defend, and hold Assignor harmless from any and all costs, claims, demands, liabilities, damages, and actions arising from or related to the EPC Agreement, or the failure of Assignee to comply with the terms and conditions thereof, from the Effective Date and at any time thereafter. Assignor shall indemnify, defend, and hold Assignee harmless from any and all costs, claims, demands, liabilities, and actions arising from or related to the EPC Agreement, or the failure of Assignor to comply with the terms and conditions thereof, prior to the Effective Date.

Assignment and Assumption Agreement at § 2.4.

24.     In late January of 2020, representatives of Southern Sky discovered issues with the solar module panels to include punctures and scratching in the backside of the panels appears as follows:



25.     On January 23, 2020, Acuity Power Group, Inc. ("Acuity") headquartered in Lawrence, Massachusetts, delivered an Issue Log Report, observing that "PV [photovoltaic]

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 271   Filed 09/28/21   Page 18 of 336 PageID #: 882

modules found exhibiting a 'snail trail' type phenomenon on front side; and with some modules this correlated with significant scratch on backsheet" which "seems to indicate cracked or broken cells from backsheet scratch * * *."

26.     In February of 2020, Southern Sky gave notice to the panel manufacturer (LG Electronics USA) of the panel damages and LG Electronics USA began investigating the damage.

27.     On July 7, 2020, LG Electronics USA issued a 44-page Report which concluded that the majority of the damage had occurred during the installation process.

28.     LG's Report explained that the microcracks occurred in modules with different pallet identification numbers and different production dates which LG Electronics USA opined indicated that the microcracks were not caused by an error occurring during any particular production run but rather the installation process.

29.     Acuity proceeded through a more exhaustive analysis of the panel field and, on September 3, 2020, issued a 108 page report ("Acuity Report") which concluded that 23.1% of the sampled modules had backside scratches which created microcracks on the panels and 14% had backside scratches that had resulted in cracked solar cells and posed significant risk of panel degradation and safety hazard.

30.     Acuity sampled 962 modules from each array in the field (A1, A2, B1, B2, C1 and C2) to determine the quantity and classification of the modules damaged by backside scratches and punctures and "to provide a rough frequency of occurrence and severity" of the damage.

31.     Acuity also analyzed several batches of the spare modules on Project Site that were not taken out of the box or handled. They discovered no scratches on any of those modules.

32.     Based on Acuity's conclusion that 23.1% of the panels studied have structural maladies, and extrapolating that figure across the 43,342 panels installed by MECC at the Project Site, the number of damaged panels may be approximately 10,012 panels.

33.     Each panel costs $212.19 with labor costs per panel estimated at $100 and so the costs associated with replacing the damaged panels approximately $3,125,646.28.

34.     On December 29, 2020, Acuity issued a supplemental correspondence regarding the implications of the solar panel module backsheet scratches for solar system safety and performance.

35.     In that correspondence, Acuity stated that "PV module backsheet scratches and cracks, as well as any associated PV cell cracks where impacts may have occurred, have the potential to cause both safety and energy performance issues, and the likelihood of experiencing these potential issues may increase over time."

36.     Acuity continued that "[s]ignificant penetration through the backsheet from a scratch may compromise the insulating effects of the backsheet, and allow electrical leakage to the module frame which could result in a safety hazard, particularly in wet conditions which occur frequently in New England" and "moisture ingress through compromised backsheets may also likely allow vapor inside the PV module, which can accumulate and cause leakage current to reach the module frame."

37.     Acuity further opined that "[i]n addition to safety hazards, inverter fault detection may also trip, causing downtime and energy production loss" and "[m]oisture ingress inside the PV module may have a corrosive effect in the metallic components within the module, such as the solder on the silver busbars and other metallic components."

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 171   Filed 09/28/21   Page 20 of 31 PageID #: 834

38.     Southern Sky issued a formal, written demand notice to Revity EPC citing Revity EPC's contractual and common law indemnity obligations on January 25, 2021.

39.     Revity EPC issued a formal, written demand notice to Solar EPC citing Solar EPC's contractual and common law indemnity obligations on January 25, 2021.

40.     CIC issued Energy EPC, LLC the EnviroPACE Environmental Pollution & Casualty Exposures Policy (Policy No. PACE306698) with an effective period from February 1, 2019 to February 1, 2020 (the "Policy" and attached hereto as **Exhibit A**).

41.     Solar EPC and Revity EPC are listed as Named Insureds on the Policy.

42.     Coverage Part 1A of the Policy (titled "General Liability Bodily Injury and Property Damage") provides that CIC "will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** that takes place during the **policy period** and is caused by an occurrence in the **coverage territory**." (Emphases in original).

43.     With respect to Coverage Part 1, the Policy defines "Property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured" and defines "coverage territory" to include the United States of America.

44.     Plaintiffs, through their insurance broker, made a claim on the Policy on September 21, 2020 by transmitting written notice to CIC representatives.

45.     On October 29, 2020, Jesse Russell, CIC's senior technical claims specialist, transmitted a correspondence to Plaintiffs stating that CIC was reserving its rights under the Policy pending further investigation (the "Russell Correspondence" and attached hereto as **Exhibit B**).

8

46.     In his correspondence, Mr. Russell cited a number of exclusions that CIC believed may apply to exclude coverage under the Policy for the damage to the solar panel modules.

47.     More specifically, Mr. Russell cited Exclusions (g), (h), (i) and (n).

48.     Exclusions (g), (h), (i), and (n) to Coverage Part 1 provide as follows:

The following exclusions apply to all Part 1 Coverages except where indicated. Part 1 Coverages do not apply to:

> * * *

> **g. Damage to Property**
> Property damage or environmental damage to:

> (1) Property you own, rent, occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
> (2) Premises you sell, give away or abandon, if the **property damage** or **environmental damage** arises out of any part of those premises;
> (3) Property loaned to you;
> (4) Personal property in the care, custody or control of the insured;
> (5) That particular part of any real property on which you or any contractors or subcontractors, whether working directly or indirectly on your behalf, are performing operations, if the **property damage** or **environmental damage** arises out of those operations; or
> (6) That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this Exclusions do not apply to **property damage** (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage to Premises Rented to You as described in section XXI. LIMITS OF LIABILITY AND DEDUCTIBLE.

Paragraph (2) of this Exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this Exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this Exclusion does not apply to **property damage** or **environmental damage** included in the **products-completed operations hazard.**

9

    **h. Damage to Your Product**
      **Property damage** or **environmental damage** to **your product**,
      arising or any part of it.

    **i. Damage to Your Work**
      **Property damage** or **environmental damage** to **your work** arising out
      of it or any part of it and included in the **products-completed operations**
      **hazard**.

      This Exclusion does not apply if the damaged work or the work out of
      which the damage arises was performed on your behalf by a subcontractor.

      * * *

    n. Internal Expenses
      Any costs, charges or expenses incurred by any insured for goods
      supplied or services performed by any **temporary workers, voluntary**
      **workers**, staff or salaried **employees** of the insured, its parent, subsidiary
      or affiliate.

**Exhibit A** (EPACE001-0415) at pp. 12-17 (emphases in original).

    49.    The Russell Correspondence stated that "CIC must reserve its right to restrict or disclaim coverage to the extent that the facts do not satisfy the Insuring Agreement that 'property damage' was caused by an 'occurrence'" and "[t]o the extent that the Energy EPC was performing operations on the damaged solar panels at issue, CIC must reserve its rights to disclaim coverage for such costs." **Exhibit B** at p. 4.

    50.    The Russell Correspondence continued that "[t]o the extent the damaged solar panels are determined to be the Insured's product, CIC must reserve its rights to disclaim coverage for such costs" and CIC "reserve[d] the right to file a declaratory relief action to determine its rights and duties under the Policy." **Exhibit B** at p. 5.

    51.    On December 1, 2020, Plaintiffs' representatives and CIC's representatives conducted a conference call to discuss the status of the claim investigation. During this call, CIC suggested that CIC would continue its investigation to determine the extent of coverage.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA    Document 1-1    Filed 03/22/21    Page 23 of 31 PageID #: 37

52.     On December 23, 2020, Attorney William L. Boesch of Sugarman, Rogers, Barshak & Cohen, P.C. transmitted a correspondence, on behalf of CIC, to the Plaintiffs "to provide an updated explanation of Colony's assessment of the matter, and to request that [Plaintiffs] provide additional information needed to complete the coverage analysis" (the "Sugarman Correspondence" and attached hereto as **Exhibit C**).

53.     The Sugarman Correspondence stated that "the policy's coverage would apply to a claim for damage to the solar panels only if the damage was caused by an 'occurrence'—that is, an accident" and that "[i]t is widely recognized in insurance law that 'a claim for faulty workmanship . . . is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the *fortuity* required to constitute an accident." **Exhibit C** at p. 4 (emphasis supplied).

54.     Attorney Boesch continued that "the policy makes clear that it does not apply to property damage 'for which the insured is obligated to pay damages by reason of the obligation to perform under, or the assumption of liability in, a contract or agreement'" and "[i]n the event Southern Sky Alton Road were to assert a claim that an insured was liable under the EPC agreement for the Alton Bradford Road facility for damage to the solar panels, there would be no coverage." **Exhibit C** at p. 4.

55.     The Sugarman Correspondence further stated that "[t]he policy also makes clear that it affords no coverage for property damage to an insured's own 'product.'—including any product that the insured 'distributed,' 'sold,' or 'handled'" and "[t]o the extent an insured was involved in procurement of the solar panels for the Alton Bradford Road project, this exclusion could bar coverage." **Exhibit C** at p. 5.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/23/21   Page 24 of 31 PageID #: 837

56.     The Sugarman Correspondence also emphasized that "[p]rocurement and installation of the solar panels on the Alton Bradford Road project appears to have been part of an insured's 'work' within the meaning of the policy, which defines 'your work' as 'works or operations performed by you or on your behalf'" and "[t]hus, any claim involving an alleged deficiency in the handling and/or installation of the panels would appear likely to fall outside the policy's coverage." **Exhibit C** at p. 5.

57.     Plaintiffs responded to the Russell Correspondence and the Sugarman Correspondence on January 28, 2021 refuting the exclusions cited in each, providing documents as requested by the Sugarman Correspondence, and requesting confirmation of coverage within fourteen (14) days of the correspondence. (January 28, 2021 correspondence attached hereto as **Exhibit D**).

58.     Plaintiffs' January 28 letter advised CIC that there are "safety hazards posed by the backside scratches include[ing] an increased risk of personal injury to personnel working at the Property" and that the Plaintiffs "have advised all such personnel of the issue and are undertaking a safety taping regime (as recommended by the engineers) to limit any risk; however, Colony's continued refusal to replace these panels increases the risk of a serious personal injury at the Property."

59.     The Plaintiffs' letter explained that "Coverage 1A of the Policy entitled 'General Liability Bodily Injury and Property Damage' provides coverage for losses for which the insured becomes legally obligated to pay in connection with property damage caused by an occurrence" and that third party analysis concluded that "a significant portion of the panels installed at the Property in 2019 have microcracks resulting from backside scratches caused during the installation of the panels by MECC."

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA    Document 1-7    Filed 03/23/21    Page 25 of 31 PageID #: 339

60.     The Plaintiffs further stated that the "damage to the solar panels is property damage that occurred on premises that the insureds do not own or rent and, moreover, Revity EPC's work had been completed when the products were damaged during MEC's installation" and further, the "solar panels are not products that were manufactured, sold, handled, distributed, altered or repaired by the insureds or 'others trading in' the insureds' name" and thus the exclusions cited in the Russell Correspondence and the Sugarman Correspondence do not apply.

61.     CIC has not confirmed coverage as requested.

### CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT

62.     Revity EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Count, as if fully set forth herein.

63.     Pursuant to Rule 57 of the Rhode Island Superior Court Rules of Civil Procedure and the Rhode Island Uniform Declaratory Judgment Act (Rhode Island General Laws § 9-30-1, *et seq.*), a person with an interest in a written contract whose rights, status or other legal relations are affected may seek relief from the Superior Court to have determined any question of construction or validity arising under the contract and obtain a declaration of rights, status and other legal relations thereunder.

64.     An actual and justiciable controversy has arisen between Revity EPC and CIC regarding the availability of coverage under the Policy for Revity EPC's claim.

65.     Accordingly, Revity EPC seeks a declaration from the Court that:

a.     Revity EPC is an Insured under the Policy;

b.     The various coverage provisions identified herein are triggered by Revity EPC's claim;

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 26 of 31 PageID #: 840

c.   No Policy exclusion applies to bar or limit coverage for Revity EPC's claim; and

d.   The Policy covers Revity EPC's claim.

**COUNT II**
**BREACH OF CONTRACT**

66.     Revity EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Court, as if fully set forth herein.

67.     The Policy is a valid and enforceable contract between Revity EPC and CIC.

68.     In the Policy, CIC agreed to cover sums that Revity EPC becomes legally obligated to pay as damages because of bodily injury or property damage that takes place during the policy period and is caused by an occurrence within the coverage territory.

69.     Southern Sky has notified Revity EPC that Revity EPC is legally obligated to pay damages as a result of backside scratches to the solar panels at the Project Site.

70.     No exclusions apply to bar coverage.

71.     Revity EPC complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

72.     Nonetheless, CIC has unjustifiably refused to indemnify Revity EPC for Revity EPC's legal obligation in connection with damages to the solar panels at the Project Site.

73.     Revity EPC has suffered and continues to suffer damages as a result of CIC's breach of the Policy.

74.     Revity EPC is entitled to damages as a result of CIC's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 27 of 31 PageID #: 41

## COUNT III
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

75.     Revity EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Count, as if fully set forth herein.

76.     CIC has denied Revity EPC's claim for coverage under the Policy relating the losses associated with the damage to the solar panel modules.

77.     CIC failed to conduct a reasonable investigation of Revity EPC's claim under the Policy and, therefore, CIC's basis for its denial is unreasonable.

78.     CIC knew or was actually or implicitly aware of the lack of any reasonable basis to deny coverage.

79.     CIC acted with reckless disregard as to the unreasonableness of its denial.

80.     CIC breached its duty of good faith and fair dealing by failing to reasonably investigate Revity EPC's claim and provide coverage.

81.     CIC's denial of coverage constitutes bad faith.

82.     As a direct and proximate result of CIC's bad faith, Revity EPC has suffered and continues to suffer damages.

83.     Revity EPC is entitled to an award of damages as a result of CIC's bad faith in an amount to be determined at trial, including attorney's fees, pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## COUNT IV
## DECLARATORY JUDGMENT

84.     As an alternative to Count I, Solar EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Count, as if fully set forth herein.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/22/21   Page 28 of 31 PageID #: 42

85.     Pursuant to Rule 57 of the Rhode Island Superior Court Rules of Civil Procedure and the Rhode Island Uniform Declaratory Judgment Act (Rhode Island General Laws § 9-30-1, *et seq.*), a person with an interest in a written contract whose rights, status or other legal relations are affected may seek relief from the Superior Court to have determined any question of construction or validity arising under the contract and obtain a declaration of rights, status and other legal relations thereunder.

86.     An actual and justiciable controversy has arisen between Solar EPC and CIC regarding the availability of coverage under the Policy for Solar EPC's claim.

87.     Accordingly, as an alternative to Count I, Solar EPC seeks a declaration from the Court that:

   a. Solar EPC is an Insured under the Policy;

   b. The various coverage provisions identified herein are triggered by Solar EPC's claim;

   c. No Policy exclusion applies to bar or limit coverage for Solar EPC's claim; and

   d. The Policy covers Solar EPC's claim.

## COUNT V
## BREACH OF CONTRACT

88.     As an alternative to Count II, Solar EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Court, as if fully set forth herein.

89.     The Policy is a valid and enforceable contract between Solar EPC and CIC.

90.     In the Policy, CIC agreed to cover sums that Solar EPC becomes legally obligated to pay as damages because of bodily injury or property damage that takes place during the policy period and is caused by an occurrence in the coverage territory.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/23/21   Page 29 of 31 PageID #: 843

91.     Southern Sky has notified Solar EPC that it is legally obligated to pay damages as a result of backside scratches to the solar panels at the Project Site.

92.     No exclusions apply to bar coverage.

93.     Solar EPC complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

94.     Nonetheless, CIC has unjustifiably refused to indemnify Solar EPC for its legal obligation in connection to damages to the solar panels at the Project Site.

95.     Solar EPC has suffered and continues to suffer damages as a result of CIC's breach of the Policy.

96.     As an alternative to Count II, Solar EPC is entitled to damages as a result of CIC's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## COUNT VI
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

97.     As an alternative to Count III, Solar EPC repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation in this Count, as if fully set forth herein.

98.     CIC has denied Solar EPC's claim for coverage under the Policy relating the losses associated with the damage to the solar panel modules.

99.     CIC failed to conduct a reasonable investigation of Solar EPC's claim under the Policy and, therefore, CIC's basis for its denial is unreasonable.

100.    CIC knew or was actually or implicitly aware of the lack of any reasonable basis to deny coverage.

101.    CIC acted with reckless disregard as to the unreasonableness of its denial.

Case Number: KC-2021-0144
Filed in Kent County Superior Court
Submitted: 2/12/2021 11:16 AM
Envelope: 2958999
Reviewer: Lindsay Z.

Case 1:21-cv-00136-JJM-LDA   Document 1-1   Filed 03/23/21   Page 30 of 31 PageID #: 43

102.    CIC breached its duty of good faith and fair dealing by failing to reasonably investigate Revity's claim and provide coverage.

103.    CIC's denial of coverage constitutes bad faith.

104.    As a direct and proximate result of CIC's bad faith, Solar EPC has suffered and continues to suffer damages.

105.    As an alternative to Count III, Solar EPC is entitled to an award of damages as a result of CIC's bad faith in an amount to be determined at trial, including attorney's fees, pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## COUNT VII
## R.I. GEN. LAWS § 9-1-33

106.    Plaintiffs repeat and re-allege each and every allegation in this Complaint and incorporate each allegation in this Court, as if fully set forth herein.

107.    The acts and omissions of CIC as complained in this Complaint, and also yet to be discovered in this matter, constitute bad faith under R.I. Gen. Laws § 9-1-33.

108.    Plaintiffs have sustained damages due to the legal obligations to pay for losses associated with the backside scratches for which CIC has failed to comply with its contractual obligation and has failed to compensate Plaintiffs for their claims.

109.    Plaintiffs are entitled to compensatory damages and punitive damages as a result of CIC's bad faith.

110.    Plaintiffs have been required to retain the services of attorneys to commence this action and are further entitled to attorneys' fees and costs.

## REQUESTS FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against CIC as follows:

18

1.      A declaration from the Court that:

    a.  The various coverage provisions identified herein are triggered by Plaintiffs' claim;

    b.  No Policy exclusion applies to bar or limit coverage for Plaintiffs' claim; and

    c.  The Policy covers Plaintiffs' claim.

2.      An award for special and consequential damages against CIC in an amount to be proved at trial, in excess of $10,000;

3.      An award of pre- and post-judgment interest, as provided by law;

4.      An award of attorneys' fees and costs of suit incurred; and

5.      For other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.


Respectfully Submitted,

REVITY EPC, LLC; SOLAR EPC, LLC


*/s/ William M. Dolan III*
William M. Dolan III (#4524)
Nicholas L. Nybo (#9038)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Tel: (401) 274-7200
Fax: (401) 751-0604
wdolan@apslaw.com
nnybo@apslaw.com

1051315.v1